Charles S. LiMandri, SBN 110841
  cslimandri@limandri.com
Paul M. Jonna, SBN 265389
  pjonna@limandri.com
Jeffrey M. Trissell, SBN 292480
  jtrissell@limandri.com
LiMANDRI & JONNA LLP
P.O. Box 9120
Rancho Santa Fe, CA 92067
Telephone: (858) 759-9930
Facsimile: (858) 759-9938

Thomas Brejcha, *pro hac vice**
  tbrejcha@thomasmoresociety.org
Peter Breen, *pro hac vice**
  pbreen@thomasmorsociety.org
THOMAS MORE SOCIETY
309 W. Washington St., Ste. 1250
Chicago, IL 60606
Tel: (312) 782-1680
*Application forthcoming

*Attorneys for Plaintiff Culture of Life
Family Services, Inc.*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

CULTURE OF LIFE FAMILY
SERVICES, INC. a California nonprofit
corporation,

        Plaintiff,

   v.

ATTORNEY GENERAL ROB
BONTA, in his official capacity as the
California Attorney General,

        Defendant.

Case No.: 3:24-cv-1338-GPC-KSC

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR STAY**

Judge:     Hon. Gonzalo P. Curiel
Location:  Courtroom: 2D
Date:     November 8, 2024
Time:     1:30 p.m.

Action Filed: July 30, 2024

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................1

FACTUAL BACKGROUND ........................................................................3

LEGAL STANDARD .................................................................................. 6

   A.   Failure to State a Claim under Rule 12(b)(6) ....................................... 6

   B.   Lack of Subject Matter Jurisdiction under Rule 12(b)(1)..................... 6

ARGUMENT ............................................................................................... 8

   I.   *Younger* Abstention Does Not Apply .................................................. 8

      A.   *Younger* Abstention Does Not Apply Because COLFS Is Not Inextricably Intertwined with the *People v. Heartbeat* Defendants ................................................. 8

      B.   The Harassment and Extraordinary Circumstances Exceptions Apply ....................................................... 11

   II.   Neither *Brillhart* (Declaratory Relief) Abstention, Nor a *Colorado River* Stay, Is Appropriate.................................... 13

      A.   *Brillhart* Abstention Does Not Apply Because COLFS Seeks Injunctive Relief ............................................... 13

      B.   The Factors for a *Colorado River* Stay Do Not Support Abstention Pending the *People v. Heartbeat* Litigation............... 13

   III.   COLFS Has Standing to Pursue Its Claims for Pre-Enforcement Injunctive Relief ........................................... 17

      A.   Providing APR Treatment Arguably Raises Constitutionally Interests ......................................................18

      B.   COLFS Has Adequately Pleaded that the Attorney General Believes APR Treatment Is Proscribed by California Law .................................................................19

      C.   COLFS Has Adequately Pleaded a Credible Threat of Prosecution ............................................................21

   IV.   COLFS Has Adequately Pleaded Its Claims Under Rule 12(b)(6) ......................................................... 22

      A.   COLFS Has Adequately Pleaded Its Free Speech Claim ....................................................... 22

i

B.   COLFS Has Adequately Pleaded Its Free Exercise
Claim ................................................................................ 24

C.   COLFS Has Adequately Pleaded Its Patients' Right
to Receive Information Claim ............................................ 24

D.   COLFS Has Adequately Pleaded Its Patients'
Substantive Due Process Claim ........................................ 25

CONCLUSION ..................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*303 Creative LLC v. Elenis*
   600 U.S. 570 (2023) ........................................ 21

*Allen v. Wright*
   468 U.S. 737 (1984) ........................................ 17

*Am. Med. Ass'n v. Stenehjem*
   412 F. Supp. 3d 1134 (D.N.D. 2019) ................. 5

*Am. Med. Ass'n v. Wrigley*
   No. 1:19-cv-125, 2023 WL 8866596 (D.N.D. Oct. 18, 2023) ........................... 5

*Am.-Arab Anti-Discrimination Comm. v. Thornburgh*
   970 F.2d 501 (9th Cir. 1991) ........................... 20

*Arevalo v. Hennessy*
   882 F.3d 763 (9th Cir. 2018) ...................... 8, 11

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009) ......................................... 6

*Bean v. Matteucci*
   986 F.3d 1128 (9th Cir. 2021) ......................... 12

*Beeman v. TDI Managed Care Servs., Inc.*
   No. 5:02-cv-1327, 2007 WL 9780513 (C.D. Cal. Jan. 30, 2007) .................. 15

*Bell Atl. Corp. v. Twombly*
   550 U.S. 544 (2007) ......................................... 6

*Bella Health & Wellness v. Weiser*
   699 F. Supp. 3d 1189 (D. Colo. 2023) ...... 1, 2, 24

*Benavidez v. Eu*
   34 F.3d 825 (9th Cir. 1994) .............................. 9

*Betschart v. Oregon*
   103 F.4th 607 (9th Cir. 2024) .................... 11, 12

*Bigelow v. Virginia*
   421 U.S. 809 (1975) ....................................... 21

*Blanchette v. Conn. Gen. Ins. Corps.*
   419 U.S. 102 (1974) ....................................... 17

///

# TABLE OF AUTHORITIES

**Cases (Cont.)**

*Brillhart v. Excess Ins. Co. of Am.*
　　316 U.S. 491 (1942)................................................................. 13

*Calif. Chamber of Com. v. Becerra*
　　No. 2:19-cv-2019, 2020 WL 5074026 (E.D. Cal. Aug. 27, 2020) ................ 15

*Calif. Trucking Ass'n v. Bonta*
　　996 F.3d 644 (9th Cir. 2021) ............................................................ 21

*Cartwright v. Univ. of Calif., Davis*
　　No. 2:05-cv-725, 2006 WL 902568 (E.D. Cal. Apr. 5, 2006) ....................... 15

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*
　　447 U.S. 557 (1980) ...................................................................... 23

*Colo. River Conservation Dist. v. United States*
　　424 U.S. 800 (1976)................................................................*passim*

*Const. Party of Penns. v. Aichele*
　　757 F.3d 347 (3d Cir. 2014) ..............................................................7

*Courthouse News Serv. v. Planet*
　　750 F.3d 776 (9th Cir. 2014)...............................................................6

*Cullen v. Fliegner*
　　18 F.3d 96 (2d Cir. 1994)................................................................ 12

*DaVinci Aircraft, Inc. v. United States*
　　926 F.3d 1117 (9th Cir. 2019) .............................................................6

*Davis v. Passman*
　　442 U.S. 228 (1979) ........................................................................3

*Dittmer v. Cnty. of Suffolk*
　　146 F.3d 113 (2d Cir. 1998)............................................................. 16

*Dobbs v. Jackson Women's Health Org.*
　　597 U.S. 215 (2022) ..............................................................1, 5, 12

*Doran v. Salem Inn, Inc.*
　　422 U.S. 922 (1975).........................................................................9

*Eisenstadt v. Baird*
　　405 U.S. 438 (1972)..........................................................................1

///

# TABLE OF AUTHORITIES

**Cases (Cont.)**

*Ernest Bock, LLC v. Steelman*
76 F.4th 827 (9th Cir. 2023).................................................................16

*Est. of Bride v. Yolo Techs., Inc.*
112 F.4th 1168 (9th Cir. 2024) .............................................................6

*Fed. Election Comm'n v. Cruz*
596 U.S. 289 (2022) ..............................................................................19

*First Resort, Inc. v. Herrera*
860 F.3d 1263 (9th Cir. 2017) ..............................................................17

*Flowers v. Seki*
87 F.3d 1318 (9th Cir. 1996) ................................................................12

*Gentes v. Osten*
No. 21-2022-CV, 2022 WL 16984686 (2d Cir. Nov. 17, 2022) ........15

*Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Baltimore*
721 F.3d 264 (4th Cir. 2013)...........................................................17, 23

*Green v. Tucson*
255 F.3d 1086 (9th Cir. 2001) ...........................................................9, 11

*Herrera v. Palmdale*
918 F.3d 1037 (9th Cir. 2019) ..............................................................10

*Hicks v. Miranda*
422 U.S. 332 (1975) ..........................................................................10, 11

*Holder v. Holder*
305 F.3d 854 (9th Cir. 2002)................................................................15

*Isaacson v. Mayes*
84 F.4th 1089 (9th Cir. 2023)...............................................................18

*Italian Colors Rest. v. Becerra*
878 F.3d 1165 (9th Cir. 2018) ..............................................................17

*Khoja v. Orexigen Therapeutics, Inc.*
899 F.3d 988 (9th Cir. 2018) ................................................................7

*Kugler v. Helfant*
421 U.S. 117 (1975) ..........................................................................11, 12

///

# TABLE OF AUTHORITIES

**Cases (Cont.)**

*Leite v. Crane Co.*
749 F.3d 1117 (9th Cir. 2014)...................................................................7

*Lewellen v. Raff*
843 F.3d 1103 (8th Cir. 1988)................................................................ 12

*Lopez v. Candaele*
630 F.3d 775 (9th Cir. 2010)................................................................ 20

*Lowe v. City of Monrovia*
775 F.2d 998 (9th Cir. 1985)...................................................................7

*Lowe v. Mills*
68 F.4th 706 (1st Cir. 2023) ............................................................... 24

*Lujan v. Defs. of Wildlife*
504 U.S. 555 (1992) ............................................................................ 18

*Lujan v. Nat'l Wildlife Fed'n,*
497 U.S. 871 (1990) ............................................................................ 18

*Marbury v. Madison*
5 U.S. 137 (1803) ................................................................................. 3

*Martinez v. Newport Beach City*
125 F.3d 777 (9th Cir. 1997) ............................................................... 14

*Masterpiece Cakeshop Inc. v. Elenis*
445 F. Supp. 3d 1226 (D. Colo. 2019)................................................ 12

*McCullen v. Coakley*
573 U.S. 464 (2014)............................................................................ 23

*MedImmune, Inc. v. Genentech, Inc.*
549 U.S. 118 (2007)...................................................................... 13, 22

*Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*
457 U.S. 423 (1982) ........................................................................... 11

*Mir v. Kirchmeyer*
No. 3:12-cv-2340, 2014 WL 2436285 (S.D. Cal. May 30, 2014) ..................... 12

*Montclair Parkowners Ass'n v. Montclair*
264 F.3d 829 (9th Cir. 2001)................................................................ 9

///

1

# TABLE OF AUTHORITIES

2

**Cases (Cont.)**

3

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*

4

    460 U.S. 1 (1983) ......................................................................... 14, 15

5

*Murthy v. Missouri*

    144 S. Ct. 1972 (2024) ...................................................................... 25

6

*NetChoice, LLC v. Bonta*

7

    113 F.4th 1101 (9th Cir. 2024) .......................................................... 23

8

*NIFLA v. Becerra*

9

    585 U.S. 755 (2018) ......................................................................... 23

10

*NIFLA v. Clark*

    No. 2:23-cv-229, 2024 WL 3027983 (D. Vt., June 14, 2024) ....................... 1, 2

11

*NIFLA v. James*

12

    No. 1:24-cv-514, 2024 WL 3904870 (W.D.N.Y. Aug. 22, 2024) ................ *passim*

13

*NILFA v. Raoul*

14

    685 F. Supp. 3d 688 (N.D. Ill. 2023) ................................................... 1, 2

15

*Peace Ranch, LLC v. Bonta*

    93 F.4th 482 (9th Cir. 2024) ............................................................. 19

16

*Peri Formwork Sys., Inc. v. Legendary Builders Corp.*

17

    No. 2:16-cv-7517, 2018 WL 5099704 (C.D. Cal. May 11, 2018) .................... 16

18

*Porter v. Martinez*

19

    68 F.4th 429 (9th Cir. 2023) ............................................................. 19

20

*R.R. St. & Co. Inc. v. Transp. Ins. Co.*

    656 F.3d 966 (9th Cir. 2011) ............................................................. 14

21

*ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*

22

    754 F.3d 754 (9th Cir. 2014) .............................................................. 8

23

*Ripplinger v. Collins*

24

    868 F.2d 1043 (9th Cir. 1989) ............................................................. 9

25

*Rynearson v. Ferguson*

    903 F.3d 920 (9th Cir. 2018) .............................................................. 8

26

*Safe Air for Everyone v. Meyer*

27

    373 F.3d 1035 (9th Cir. 2004) ............................................................. 7

28

///

# TABLE OF AUTHORITIES

**Cases (Cont.)**

*Schall v. Joyce*
    885 F.2d 101 (3d Cir. 1989) ............................................................... 10

*ScripsAmerica, Inc. v. Ironridge Glob. LLC*
    56 F. Supp. 3d 1121 (C.D. Cal. 2014) ............................................. 16

*Seattle Pac. Univ. v. Ferguson*
    104 F.4th 50 (9th Cir. 2024) ....................................................... 8, 19

*Seneca Ins. Co., Inc. v. Strangle Land, Inc.*
    862 F.3d 835 (9th Cir. 2017) ............................................. 14, 15, 16

*Skyline Wesleyan Church v. Calif. Dep't of Managed Health Care*
    968 F.3d 738 (9th Cir. 2020) ....................................................... 17, 22

*Snodgrass v. Provident Life & Acc. Ins. Co.*
    147 F.3d 1163 (9th Cir. 1998) ...................................................... 13

*Sorrell v. IMS Health Inc.*
    564 U.S. 552 (2011) ..................................................................... 23

*Steffel v. Thompson*
    415 U.S. 452 (1974) ..................................................................... 3, 9

*Susan B. Anthony List v. Driehaus*
    573 U.S. 149 (2014) ............................................................. 18, 19, 22

*Teter v. Lopez*
    76 F.4th 938 (9th Cir. 2023) ......................................................... 22

*Thomas v. Union Carbide Agr. Prod. Co.*
    473 U.S. 568 (1985) ..................................................................... 22

*Tingley v. Ferguson*
    47 F.4th 1055 (9th Cir. 2022) ................................................. 18, 19, 24

*Tovar v. Billmeyer*
    609 F.2d 1291 (9th Cir. 1979) ...................................................... 14

*Travelers Indem. Co. v. Madonna*
    914 F.2d 1364 (9th Cir. 1990) ...................................................... 15

*Union Gospel Mission of Yakima Wash. v. Ferguson*
    No. 23-2606, 2024 WL 3755954 (9th Cir. Aug. 12, 2024) ............... 18

///

# TABLE OF AUTHORITIES

**Cases (Cont.)**

*United States v. Alvarez*
    567 U.S. 709 (2012) ................................................................ 1

*United States v. Workinger*
    90 F.3d 1409 (9th Cir. 1996) ................................................ 7

*Vasquez v. Rackauckas*
    734 F.3d 1025 (9th Cir. 2013) ........................................ 9, 13

*Waln v. Dysart Sch. Dist.*
    54 F.4th 1152 (9th Cir. 2022) ............................................. 6

*We Are Am./Somos Am., Coal. of Arizona v. Maricopa Cnty. Bd. of Supervisors*
    386 F. App'x 726 (9th Cir. 2010) ...................................... 9

*Wiener v. Cnty. of San Diego*
    23 F.3d 263 (9th Cir. 1994) ............................................... 9

*Wilson v. Stocker*
    819 F.2d 943 (10th Cir. 1987) ......................................... 20

*Wooley v. Maynard*
    430 U.S. 705 (1977) ....................................................... 3, 9

*X Corp. v. Bonta*
    \_\_ F.4th \_\_, No. 24-271, 2024 WL 4033063 (9th Cir. Sept. 4, 2024) ........... 23

*Yelp, Inc. v. Paxton*
    No. 3:23-cv-4977, 2024 WL 413464 (N.D. Cal. Feb. 1, 2024) ...................... 12

*Younger v. Harris*
    401 U.S. 37 (1971) ....................................................... *passim*

**Statutes, Regulations & Rules**

28 U.S.C. § 2201(a) .......................................................... 13

Cal. Bus. & Prof. Code § 17200 ............................................. 5

Cal. Bus. & Prof. Code § 17500 ............................................. 5

Fed. R. Civ. P. 12(b)(1) ................................................... 6, 7

Fed. R. Civ. P. 12(b)(6) ................................................. *passim*

N.D. Cent. Code § 12.1-19.1-02 ............................................. 5

1

# TABLE OF AUTHORITIES

2 **Other Authorities**

3 1 Annals of Cong. 439 (1789) ........................................................................3

4 Clarke D. Forsythe & Donna Harrison, *State Regulation of Chemical Abortion*
5    *After Dobbs*, 16 Liberty U. L. Rev. 377, 406-08 (2022) ......................................5

6 Elec. Case Filing Admin. Policies & Proc. Manual, U.S. Dist. Court, S.D. Cal.
   (July 22, 2024) ..................................................................................7

7 George Delgado & Mary Davenport, *Progesterone Use to Reverse the Effects of*
8    *Mifepristone*, 46 Annals Pharmacotherapy 1723 (2012).....................................4

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# INTRODUCTION

As stated in the Complaint, the premises of the Abortion Pill and Abortion Pill Reversal ("APR") are quite simple. During pregnancy, every woman's body produces progesterone—a natural hormone needed to maintain a pregnancy. Progesterone is so key to maintaining a healthy pregnancy that supplemental progesterone is prescribed for 12% of all pregnancies. Mifepristone, the first pill of the Abortion Pill regimen, acts as an antiprogesterone to induce miscarriage. Abortion Pill Reversal means providing a woman with supplemental progesterone to counteract the effects of that mifepristone. ECF No. 1, Compl., ¶¶22-42.

Despite the simplicity of this treatment, and the constitutional right "to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child," *Eisenstadt v. Baird*, 405 U.S. 438, 453 (1972),[1] politically-minded attorneys general across the country are attempting to shut down APR. Thankfully, courts have already enjoined Colorado Attorney General Philip Weiser and New York Attorney General Letitia James from doing so. *Bella Health & Wellness v. Weiser*, 699 F. Supp. 3d 1189 (D. Colo. 2023); *NIFLA v. James*, No. 1:24-cv-514, 2024 WL 3904870 (W.D.N.Y. Aug. 22, 2024).

As explained by the district court that enjoined AG James, "our Constitution and Constitutional tradition stand 'against the idea that we need Oceania's Ministry of Truth'," because "[s]uppression 'of speech by the government can make exposure of falsity more difficult, not less so.'" *NIFLA v. James*, 2024 WL 3904870, at *1 (quoting *United States v. Alvarez*, 567 U.S. 709, 723, 728 (2012) (plurality)). Relying on this tradition, other courts have also recently enjoined other attorneys general for their similar attempts to regulate and thereby chill the pro-life speech of pregnancy resource organizations. *See NILFA v. Raoul*, 685 F. Supp. 3d 688 (N.D. Ill. 2023); *cf. also NIFLA v. Clark*, No. 2:23-cv-229, 2024 WL 3027983 (D. Vt., June 14, 2024).

---

[1] *See Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 295 (2022) ("It is hard to see how we could be clearer" that *Dobbs* does not "cast doubt" on *Eisenstadt*).

There is no evidence that bad-faith doctors are profiting by providing Abortion Pill Reversal. Especially in the context of pro-life pregnancy resource organizations, "there is no economic motivation of any kind." *NILFA v. Raoul*, 685 F. Supp. 3d at 705; *NIFLA v. Clark*, 2024 WL 3027983, at *9. Nor is there any evidence that any woman has been harmed by APR—let alone of any APR-related medical malpractice actions against healthcare providers. Thus, as explained by the district court that enjoined AG Weiser, although "[t]he State is right that it generally has the power to 'prophylactically' ban certain practices and uses of approved medicines even without evidence of prior complaints or harm," it must meet strict scrutiny (which it cannot do) when the practices are protected by First Amendment rights. *See Bella Health*, 699 F. Supp. 3d at 1216. Here, the only argument for "harm" that California Attorney General Rob Bonta can muster is a failed study which actually shows the dangers of the abortion pill *without* APR treatment. Compl., ¶¶52-55.

To date, APR has allowed an estimated 5,000 women to exercise their constitutional right to choose to continue their pregnancies, and Plaintiff Culture of Life Family Services, Inc. ("COLFS") has personally coordinated approximately 100 saved pregnancies. Compl., ¶51. That anybody would want to shut down a woman's right to choose this life-saving treatment is astounding.

Defendant Attorney General Bonta's motion to dismiss focuses almost exclusively on various abstention doctrines, *see* ECF No. 4-1, Memo. ISO Mot'n to Dismiss, pp.13:21-25:12[2]—although he later summarily raises pre-enforcement standing and failure to adequately plead claims for relief. *See* Mot'n pp.25:13-33:11. But the appeal to abstention and comity, and the argument that this court would "usurp the state court's role," Mot'n p.14:3, fundamentally misunderstands both precedent and the role of the federal courts.

Consider the Supreme Court's nonapplication of *Younger* abstention in *Steffel v. Thompson*, 415 U.S. 452 (1974). To protest the Vietnam War, Richard Steffel and a

---

[2] All page citations are to the ECF page stamp.

1  group of companions decided to handbill at a local shopping center in northern Georgia.

2  Police were summoned, and the handbillers were told to leave or else be arrested. Two

3  days later, Steffel returned with his friend Sandra Lee Becker and began handbilling

4  again. Police were summoned again. This time, Becker refused to leave and was

5  arrested; Steffel left and filed a federal civil rights action. The Supreme Court summarily

6  dismissed application of *Younger* abstention in a footnote. 415 U.S. at 471 & n.19.

7      In another case, Mr. George Maynard was given multiple traffic citations for

8  obscuring the New Hampshire state motto "Live Free or Die" from his license plate,

9  and eventually served fifteen days in jail after he refused to pay the fines. The Supreme

10  Court again easily dismissed the argument that his wife, Mrs. Maxine Maynard, could

11  not bring a pre-enforcement challenge to avoid being prosecuted herself. *Wooley v.*

12  *Maynard*, 430 U.S. 705, 710-12 & n.9 (1977).

13      These cases recognize that mere voluntary association, without a direct legal

14  relationship of ownership or control, is not enough to rob a plaintiff of his right to his

15  day in court. Rather, when rights are "incorporated into the Constitution," the federal

16  courts become "in a peculiar manner the guardians of those rights," and must stand as

17  "an impenetrable bulwark against every assumption of power in the Legislative or

18  Executive." *Davis v. Passman*, 442 U.S. 228, 241-42 (1979) (quoting 1 Annals of Cong.

19  439 (1789)). This Court must retain jurisdiction and eventually enjoin Defendant

20  Attorney General Bonta's attacks on Californians' constitutional rights because "[t]he

21  very essence of civil liberty certainly consists in the right of every individual to claim

22  the protection of the laws, whenever he receives an injury." *Id.* at 242 (cleaned up)

23  (quoting *Marbury v. Madison*, 5 U.S. 137, 163 (1803)).

24                          **FACTUAL BACKGROUND**

25      Plaintiff COLFS "is a 501(c)(3) religious non-profit and state licensed

26  community health clinic. In accordance with its Catholic mission, the 'primary mission

27  of COLFS is to ensure that Christ-centered medical care and pregnancy clinic services

28  are available to all women regardless of ability to pay.'" Compl., ¶21 (quoting website).

"Consistent with its underlying commitment to the dignity of every human life, COLFS provides life-affirming medical care to every woman at risk of miscarriage," regardless of the cause of the risk. *Id.*, ¶122.

In 2008, COLFS's medical director, Dr. George Delgado, treated a woman at risk of losing her pregnancy because she had taken mifepristone, the first pill in the Abortion Pill Regimen, but later decided that she wanted to keep her baby. To reverse the effects of mifepristone, Dr. Delgado administered progesterone to the woman, who successfully carried her pregnancy to term. A few years later, he published a small six-patient case series with four successful reversals and two failures, identifying the protocol(s) he had used. Compl., ¶37; George Delgado & Mary Davenport, *Progesterone Use to Reverse the Effects of Mifepristone*, 46 Annals Pharmacotherapy 1723 (2012).

Concluding from that case series that progesterone could successfully reverse the effects of mifepristone, in May 2012, Dr. Delgado set up a website and hotline to inform pregnant women about their option to reverse their chemical abortions, and connect them with healthcare practitioners in their local area. This website, hotline, and listing of practitioners was named the APR Network. Compl., ¶43. Since its inception, this effort was undertaken by COLFS as a purely charitable enterprise meant to offer women the ability to choose to maintain their pregnancies. Compl., ¶¶21, 51.

In early 2018, Dr. Delgado and five co-authors published a much larger case series, studying the results of 754 women who had attempted to reverse their chemical abortions using progesterone. After excluding some cases to create meaningful controls, the authors identified two protocols (oral capsule and intramuscular injection) with 64% and 68% success rates, respectively. Compl., ¶39. Also in early 2018, because of the growth of the APR Network, COLFS decided to transfer control of it for the nominal sum of $1 to Heartbeat International, Inc., a trade organization for pro-life pregnancy resource organizations that could manage it out of its call center. Compl., ¶44. Heartbeat then began preparing fact sheets and other best practice materials to educate its members about APR. This included continuing education courses. Under

political pressure, the California Board of Registered Nursing audited Heartbeat's APR courses but ultimately approved them. Compl., ¶¶45-50.

Since Dr. Delgado's case series, numerous independent researchers have produced their own case studies confirming his results or published literature reviews confirming its safety. Compl., ¶¶36-40. It was further discovered that when the FDA first approved mifepristone, it had studied the effect of progesterone and had concluded "the abortifacient activity of RU 486 is antagonized by progesterone allowing for normal pregnancy and delivery." Compl., ¶27 (emphasis omitted).

By 2022, "[a]t least twelve states that regulate chemical abortion require[d] physicians to inform their patients about the established medical process of reversing [mifepristone] with administration of natural progesterone." Clarke D. Forsythe & Donna Harrison, *State Regulation of Chemical Abortion After Dobbs*, 16 Liberty U. L. Rev. 377, 406-08 (2022). However, as noted in Defendant Bonta's motion to dismiss, beginning in 2019, a few of these informed consent statutes were enjoined as a violation of the physician's free speech rights. *Am. Med. Ass'n v. Stenehjem*, 412 F. Supp. 3d 1134 (D.N.D. 2019), *prelim. inj. terminated*, 2023 WL 8866596 (D.N.D. Oct. 18, 2023). All of these cases were mooted by *Dobbs*, after which the affected states prohibited abortion. *See, e.g.*, N.D. Cent. Code § 12.1-19.1-02.

Also due to *Dobbs*, Defendant Bonta began a pro-abortion campaign in which he investigated and publicly disparaged pro-life pregnancy resource organizations. Compl., ¶¶71-81. This culminated in his decision to file a lawsuit against Heartbeat International (based in Ohio) and RealOptions, Inc. (a series of pro-life community health clinics based in the Bay Area) for violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 and California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 for offering APR. Compl., ¶¶82-83; ECF No. 4-2, Req. for Jud. Not. Ex. A.

Nevertheless, "[c]onsistent with its underlying commitment to the dignity of every human life, COLFS [has continued to] provide[] life-affirming medical care to

every woman at risk of miscarriage—whether that risk arises biologically, due to physical trauma, or because she has willingly or unwillingly ingested the first abortion pill." Compl., ¶122. On July 30, 2024, COLFS commenced this pre-enforcement action to ensure that its provision of such medical care will not subject it also to a civil enforcement action by Defendant Bonta, who now moves to dismiss.

## LEGAL STANDARD

### A.    Failure to State a Claim under Rule 12(b)(6)

A complaint must provide "fair notice of the nature of the claim, but also grounds on which the claim rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n.3 (2007). Thus, to "survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

The standard for dismissal under Rule 12(b)(6) is quite strict. "Dismissal is improper unless 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *DaVinci Aircraft, Inc. v. United States*, 926 F.3d 1117, 1122 (9th Cir. 2019). The court "take[s] all factual allegations in the complaint as true and 'construe[s] the pleadings in the light most favorable to the nonmoving party.'" *Est. of Bride v. Yolo Techs., Inc.*, 112 F.4th 1168, 1175 (9th Cir. 2024). "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives." *Waln v. Dysart Sch. Dist.*, 54 F.4th 1152, 1160 (9th Cir. 2022).

### B.    Lack of Subject Matter Jurisdiction under Rule 12(b)(1)

A complaint over which there is a "lack of subject-matter jurisdiction" is subject to a motion to dismiss. Fed. R. Civ. P. 12(b)(1). Subject-matter jurisdiction can be challenged either "facially" or "factually," *i.e.*, based on the face of the complaint or

upon asking the court to make disputed factual determinations. *Courthouse News Serv. v. Planet*, 750 F.3d 776, 780 & n.3 (9th Cir. 2014); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial attack under Rule 12(b)(1) is treated similarly to a pleading challenge under Rule 12(b)(6). *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). In contrast, with a factual attack, the court is "free to hear evidence regarding jurisdiction, and to rule on that issue prior to trial, resolving factual disputes where necessary." *Lowe v. City of Monrovia*, 775 F.2d 998, 1003 (9th Cir. 1985).

Here, Defendant Bonta's motion to dismiss notes that "[t]he court is not limited to the allegations in the complaint but may also consider extrinsic evidence." Mot'n p.13:7-9 (cleaned up). Defendant Bonta also submits a declaration from the state court proceeding, *see* RJN Ex. I, Decl. of Jor-El Godsey, and cites it for the truth of the matter asserted, *i.e.*, that COLFS is an affiliate of Heartbeat International. Mot'n p.17:12. However, beyond that single undisputed evidentiary citation, the motion makes no factual assertions. Thus, the motion must be treated as essentially a facial attack. *Const. Party of Penns. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014).[3]

---

[3] Defendant Bonta's motion also cites to the answer filed in the state court action regarding Dr. Delgado's current relationship with Heartbeat International. *See* Mot'n p.11:28-12:2 (citing RJN Ex. B, *People v. Heartbeat* Answer, ¶49). The answer states: "Defendants admit that Dr. George Delgado is a member of Heartbeat's volunteer medical advisory team." However, the answer was not verified by the party, and so—as a general proposition—the court should not give evidentiary weight to the statement. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) ("court cannot take judicial notice of disputed facts contained in such public records"). However, COLFS does not dispute that Dr. Delgado volunteers with Heartbeat International which, as explained below, is an irrelevant fact. Defendant Bonta's motion also cites to the YouTube link of a speech given by Dr. Delgado at a pro-life fundraising dinner for Obria Medical Clinics. *See* Mot'n p.12 n.1. But this unauthenticated hyperlink has not been presented to this Court in an admissible manner. *See United States v. Workinger*, 90 F.3d 1409, 1415 (9th Cir. 1996) (Best Evidence Rule requires admission of actual recording through proper authentication); Elec. Case Filing Admin. Policies & Proc. Manual, U.S. Dist. Court, S.D. Cal., § 2(l) (July 22, 2024) ("A hyperlink reference is extraneous to any filed document and is not part of the court's record"). Although there is nothing of particular note in the video-recording, COLFS objects to the court considering it.

## ARGUMENT

Defendant AG Bonta raises three abstention doctrines—*Younger*, *Brillhart*, and *Colorado River*—before arguing that Plaintiff COLFS lacks pre-enforcement standing and has failed to adequately plead its claims for relief. Each of these arguments fails.

### I.    *Younger* Abstention Does Not Apply

Under *Younger* abstention, federal courts may not "stay or enjoin pending state court proceedings except under special circumstances." *Younger v. Harris*, 401 U.S. 37, 41 (1971). *Younger* abstention is an "extraordinary and narrow exception to the general rule" that "a federal court's obligation to hear and decide a case is virtually unflagging." *Arevalo v. Hennessy*, 882 F.3d 763, 765 (9th Cir. 2018) (cleaned up).

The Ninth Circuit uses a "five-prong test" to determine when abstention is appropriate. *Seattle Pac. Univ. v. Ferguson*, 104 F.4th 50, 63 (9th Cir. 2024). "*Younger* abstention is appropriate only when the state proceedings: (1) are ongoing, (2) are quasi-criminal enforcement actions or involve a state's interest in enforcing the orders and judgments of its courts, (3) implicate an important state interest, and (4) allow litigants to raise federal challenges." *Rynearson v. Ferguson*, 903 F.3d 920, 924 (9th Cir. 2018). "If these four threshold elements are established, we then consider a fifth prong: (5) 'whether the federal action would have the practical effect of enjoining the state proceedings and whether an exception to *Younger* applies.'" *Id.* (quoting *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 759 (9th Cir. 2014)).

Here, Defendant Bonta fails to satisfy the fourth and fifth prongs. That is, the *People v. Heartbeat* litigation does not allow Plaintiff COLFS to raise its federal rights because it is not a party to that litigation, and the *Younger* exceptions apply.

### A.    *Younger* Abstention Does Not Apply Because COLFS Is Not Inextricably Intertwined with the *People v. Heartbeat* Defendants

"*Younger*'s scope is closely circumscribed to parties actually involved in state litigation; even the presence of co-plaintiffs representing identical interests in state proceedings does not extend *Younger* to parties not actually involved in those

proceedings." *Benavidez v. Eu*, 34 F.3d 825, 832 (9th Cir. 1994). "Ordinarily, the state defendant's inability to bring a federal action because of a pending state prosecution does not affect other potential federal plaintiffs who are not themselves the subject of pending prosecutions." *Ripplinger v. Collins*, 868 F.2d 1043, 1049 n.5 (9th Cir. 1989). Nevertheless, there "may be some circumstances in which legally distinct parties are so closely related that they should all be subject to the *Younger* considerations which govern any one of them." *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 928 (1975); *accord Herrera v. Palmdale*, 918 F.3d 1037, 1046 (9th Cir. 2019).

"Such circumstances are present only when a federal plaintiff's interests are 'so intertwined with those of the state court party that ... interference with the state court proceeding is inevitable.'" *Vasquez v. Rackauckas*, 734 F.3d 1025, 1035 (9th Cir. 2013) (quoting *Green v. Tucson*, 255 F.3d 1086, 1100 (9th Cir. 2001) (en banc)). As explained by the Ninth Circuit, "[c]ongruence of interests is not enough, nor is identity of counsel," *Green*, 255 F.3d at 1100, "[n]or does due process permit the preclusion of a plaintiff's claim on the ground that he *could* have intervened in a state court litigant's action if he did not actually do so," *id*. at 1101, nor does the "mere potential for conflict in the results of adjudications," *id*. at 1097, nor is voluntary association enough, *Steffel v. Thompson*, 415 U.S. 452, 471 n.19 (1974), nor is a spousal relationship enough. *Wooley v. Maynard*, 430 U.S. 705, 712 n.9 (1977). Rather, the parties must be legally related "*in terms of ownership, control, and management*." *Doran*, 422 U.S. at 929 (emphasis added)

As reiterated by the Ninth Circuit, although a "federal court decision in such situations 'may, through claim or issue preclusion, influence the result in state court,' we held that this was not the sort of interference sufficient to trigger *Younger* abstention." *Montclair Parkowners Ass'n v. Montclair*, 264 F.3d 829, 831 (9th Cir. 2001) (quoting *Green*, 255 F.3d at 1093); *accord Wiener v. Cnty. of San Diego*, 23 F.3d 263, 267 (9th Cir. 1994) ("[T]here is no reason why the California state courts should mind if a federal court resolves his claim"); *see We Are Am./Somos Am., Coal. of Arizona v. Maricopa Cnty. Bd. of Supervisors*, 386 F. App'x 726 (9th Cir. 2010) (concluding that

district court erred in applying *Younger* abstention).

Here, Defendant Bonta argues that COLFS, Heartbeat, and RealOptions are "inextricably intertwined" because: (1) COLFS's medical director, Dr. Delgado, devised an APR protocol and founded the APR Network; (2) COLFS is an affiliate of Heartbeat and transferred the APR Network to Heartbeat for the nominal sum of $1; (3) Dr. Delgado authored two of the approximately dozen APR studies, including one with six co-authors, one of whom is the medical director of RealOptions. Mot'n, p.17:9-18 (citing RJN Ex. B, *Heartbeat* Answer, ¶49; RJN Ex. I, Godsey Decl., ex. E, p.5). But none of this will cause "interference" with the *People v. Heartbeat* litigation other than through parallel lawsuits raising a similar subject matter—which is per se insufficient for *Younger* abstention to apply. *See Schall v. Joyce*, 885 F.2d 101, 112 (3d Cir. 1989) ("The presence of two parallel law suits … does not run afoul of *Younger*").[4]

Defendant Bonta only cites two illustrative cases as support, *Hicks v. Miranda*, 422 U.S. 332 (1975), and *Herrera v. Palmdale*, 918 F.3d 1037, 1047 (9th Cir. 2019). Both are radically different than the voluntary association "intertwining" at issue here. In *Herrera*, Bill and Mona Herrera founded Palmdale Lodging LLC to own the motel that they operate. In November 2016, the City of Palmdale obtained a civil warrant to investigate various code violations at the motel. The next month, the City closed the motel, and evicted both the owners and all the guests. *Herrera*, 918 F.3d at 1041. Bill and Mona and their LLC then filed a federal civil rights action. At the same time, the City filed a state-court nuisance action against only Bill and the LLC, seeking an order shutting down the motel. *Id.* at 1042. Looking at *Younger* abstention, the Ninth Circuit held that even though Mona—*an owner of the LLC*—was not named in the state court action, her interests were inextricably intertwined with the LLC. *Id.* at 1047.

In *Hicks*, the employees of an adult theater were charged with violating

---

[4] Although not a relevant fact, Defendant Bonta states that Dr. Delgado was COLFS's founder. Mot'n p.17:9. He is not. COLFS was founded in 2001. Compl. ¶4. Dr. Delgado was hired as COLFS's medical director in 2005.

California's obscenity statute and the theater's four copies of a pornographic film were seized. *Hicks*, 422 U.S. at 334-36. The theater's owners immediately filed an action in federal court, seeking a declaration that the obscenity statute was unconstitutional and an order requiring the return of the four copies of the film. *Id*. at 337-38. The Supreme Court held that the interests of the owners and the employees were intertwined *because of the employment relationship* and because the *owners' property* had been seized in the state court action. *Id*. at 348-49.

Here, COLFS, Heartbeat, and RealOptions are entirely separate entities. Their only relationships are associational and voluntary. *See* RJN Ex. B, *People v. Heartbeat* Answer, ¶49. At most, they share "a mere commonality of interest" which "is not sufficient to justify abstention." *Green*, 255 F.3d at 1100. Indeed, this exact argument was addressed and rejected by a federal court in New York. There, after AG James sued Heartbeat, a different trade association for pro-life pregnancy resource organizations (NIFLA) and several such organizations filed a federal suit to ensure that they too would not be sued. In rejecting *Younger* abstention, the district court held that "[t]his case instead aligns with those where Courts refused to apply *Younger* to third party claims." *NIFLA v. James*, 2024 WL 3904870, at *8.

**B.    The Harassment and Extraordinary Circumstances Exceptions Apply**

"[E]ven if *Younger* abstention is appropriate, federal courts do not invoke it if there is a 'showing of [1] bad faith, [2] harassment, or [3] some other extraordinary circumstances that would make abstention inappropriate.'" *Arevalo v. Hennessy*, 882 F.3d 763, 765-66 (9th Cir. 2018) (quoting *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 435 (1982)). First, bad faith "generally means that a prosecution has been brought without a reasonable expectation of obtaining a valid conviction." *Kugler v. Helfant*, 421 U.S. 117, 126 n.6 (1975). Second, "harassment" applies when the prosecution was brought to "discourage [the defendants] and their supporters from asserting and attempting to vindicate … constitutional rights." *Younger*, 401 U.S. at 48. Third, "extraordinary circumstances" exist where the plaintiff

can establish "irreparable injury." *Betschart v. Oregon*, 103 F.4th 607, 617 (9th Cir. 2024) (quoting *Kugler v. Helfant*, 421 U.S. 117, 124 (1975)). Here, the harassment and extraordinary circumstances exceptions apply.

*First*, the Complaint pleads lengthy and detailed allegations regarding Defendant Bonta's campaign of viewpoint-based retaliation against the pro-life community for the *Dobbs* decision. *See* Compl., ¶¶74-83. It then discusses Defendant Bonta's selective prosecution of only pro-life speech—while ignoring pro-choice speech that would be similarly "misleading advertising" under his interpretation of California law. *See id.*, ¶¶84-97. This type of viewpoint-discriminatory enforcement establishes bad faith for *Younger* purposes. At the pleading stage, the Court must accept these allegations as true, *Mir v. Kirchmeyer*, No. 3:12-cv-2340, 2014 WL 2436285, at *13 & n.2 (S.D. Cal. May 30, 2014), and as pleaded, the harassment exception applies. *See, e.g.*, *Cullen v. Fliegner*, 18 F.3d 96, 103 (2d Cir. 1994); *Lewellen v. Raff*, 843 F.3d 1103, 1109-10 (8th Cir. 1988); *Flowers v. Seki*, 87 F.3d 1318, at *2-3 (9th Cir. 1996) (unpublished); *Masterpiece Cakeshop Inc. v. Elenis*, 445 F. Supp. 3d 1226, 1240-41 (D. Colo. 2019).[5]

*Second*, the Ninth Circuit applies an "irreparable injury" exception to *Younger* when the circumstances are extraordinary. *Betschart*, 103 F.4th at 617-18 (failure to provide criminal detainees with counsel). For example, the Ninth Circuit recognized in *Bean v. Matteucci*, 986 F.3d 1128 (9th Cir. 2021), that *Younger* did not apply to a prisoner's challenge to forcible ingestion of antipsychotic drugs. The Court explained there that "the forcible injection of antipsychotic drugs constitutes a 'particularly severe' invasion of liberty" that "cannot be fully vindicated after trial." 986 F.3d at 1134-35. Here, COLFS seeks to vindicate its right to help women who have rescinded

---

[5] Defendant Bonta cites *Yelp, Inc. v. Paxton* for the proposition that "the Ninth Circuit has not" recognized retaliation for exercise of constitutional rights as a *Younger* exception. *See* Mot'n, p.10 n.5. But the case actually applied that exception after stating that "[w]hile the Ninth Circuit has not used the second exception [in a published opinion], district courts within the Ninth Circuit have. And *Younger* itself endorsed this second exception, at least implicitly." *Yelp, Inc. v. Paxton*, No. 3:23-cv-4977, 2024 WL 413464, at *4 (N.D. Cal. Feb. 1, 2024) (citations omitted).

their consent to abortion. Compl., ¶144. Forcing a woman to undergo an abortion is a particularly severe invasion of her liberty, and one that cannot be vindicated later.

**II.    Neither *Brillhart* (Declaratory Relief) Abstention, Nor a *Colorado River* Stay, Is Appropriate**

**A.    *Brillhart* Abstention Does Not Apply Because COLFS Seeks Injunctive Relief**

Under the Declaratory Judgment Act, federal courts "*may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). "[T]he very purpose of the Declaratory Judgment Act" is to resolve controversies among "parties having adverse legal interests" to avoid the coercion caused by making plaintiffs choose between "abandoning [their] rights or risking prosecution." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127-29 (2007).

Nevertheless, in cases seeking "purely declaratory relief," courts have limited discretion to abstain. *Snodgrass v. Provident Life & Acc. Ins. Co.*, 147 F.3d 1163, 1167-68 (9th Cir. 1998) (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494-95 (1942)). For the exception to apply, the first question is whether other "claims … would continue to exist if the request for a declaration [was] simply dropped from the case." *Snodgrass*, 147 F.3d at 1167-68. Here, the Complaint seeks injunctive relief (and damages), *see* Compl., Prayer ¶¶B-C, regardless of whether the court "declare[s] the rights" of the parties under 28 U.S.C. § 2201(a). Thus, *Brillhart* abstention does not apply, and abstention must only be "evaluate[d] under the *Colorado River* doctrine." *See Vasquez v. Rackauckas*, 734 F.3d 1025, 1040 (9th Cir. 2013) ("Other circuits have similarly rejected the argument that a request for an injunction is 'merely "ancillary"' to a request for declaratory relief."); *accord NIFLA v. James*, 2024 WL 3904870, at *9.

**B.    The Factors for a *Colorado River* Stay Do Not Support Abstention Pending the *People v. Heartbeat* Litigation**

Under the Supreme Court decision in *Colorado River*, federal courts should

1  abstain when "'considerations of wise judicial administration, giving regard to
2  conservation of judicial resources and comprehensive disposition of litigation' may
3  counsel in favor of abstention." *Seneca Ins. Co., Inc. v. Strangle Land, Inc.*, 862 F.3d 835,
4  841 (9th Cir. 2017) (quoting *Colo. River Conservation Dist. v. United States*, 424 U.S.
5  800, 817 (1976)). Importantly, "[a]bstention from the exercise of federal jurisdiction is
6  the exception, not the rule," *Colo. River*, 424 U.S. at 813, and only applies "under
7  'exceedingly rare' circumstances." *Seneca Ins.*, 862 F.3d at 841 (quoting *Colo. River*, 424
8  U.S. at 817). And the federal court's obligation to provide redress "is particularly
9  weighty when those seeking a hearing in federal court are asserting … their right to
10 relief under 42 U.S.C. § 1983." *Tovar v. Billmeyer*, 609 F.2d 1291, 1293 (9th Cir. 1979).

11     The court must evaluate eight factors to determine when a stay or dismissal is
12 appropriate. *Seneca Ins.*, 862 F.3d at 841-42. These factors are to be examined in a
13 "pragmatic, flexible manner with a view to the realities of the case at hand." *Moses H.*
14 *Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983). "The underlying
15 principle guiding this review is a strong presumption *against* federal abstention." *Seneca*
16 *Ins.*, 862 F.3d at 842 (emphasis added). "Any doubt as to whether a factor exists should
17 be resolved against a stay, not in favor of one." *Id.* (cleaned up).

18     COLFS agrees that the first factor relating to *in rem* jurisdiction over property
19 does not apply. *See* Mot'n, p.13 n.6. Similarly, because this is a § 1983 civil rights action,
20 the third factor regarding inefficient piecemeal litigation does not apply. *See Martinez v.*
21 *Newport Beach City*, 125 F.3d 777, 782 (9th Cir. 1997) (citing *Tovar*, 609 F.2d at 1293).
22 Thus, the relevant factors are:

23         (2) the inconvenience of the federal forum; … (4) the order in which the
24         forums obtained jurisdiction; (5) whether federal law or state law provides
           the rule of decision on the merits; (6) whether the state court proceedings
25         can adequately protect the rights of the federal litigants; (7) the desire to
26         avoid forum shopping; and (8) whether the state court proceedings will
27         resolve all issues before the federal court.

28 *Seneca Ins.*, 862 F.3d at 841-42; *see also R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d

966, 979 n.9 (9th Cir. 2011) (identifying origin of each factor).

Here, it is undisputed that (2) this "forum itself is not necessarily inconvenient for the Attorney General," Mot'n p.21:10-11, and that (4) the *People v. Heartbeat* litigation was filed first. Compl., ¶82. However, "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone*, 460 U.S. at 21. Here, because the pleadings were only recently settled in the *People v. Heartbeat* litigation, this factor only weakly favors Defendant Bonta. *See* RJN Ex. H, Docket, p.193 (first case management conference scheduled for 9/10/2024).

Next, (5), the Supreme Court has advised that "the presence of federal-law issues must always be a major consideration weighing against surrender," and only "in some rare circumstances [will] the presence of state-law issues … weigh in favor of that surrender." *Moses H. Cone*, 460 U.S. at 26. Here, the rule of decision will be based on the U.S. Constitution, weighing heavily against abstention. *See, e.g.*, *Gentes v. Osten*, No. 21-2022-CV, 2022 WL 16984686, at *3 (2d Cir. Nov. 17, 2022); *Cartwright v. Univ. of Calif., Davis*, No. 2:05-cv-725, 2006 WL 902568, at *7-8 (E.D. Cal. Apr. 5, 2006).[6] Factor (6) primarily applies when federal courts have exclusive jurisdiction over certain claims, *Holder v. Holder*, 305 F.3d 854, 869 n.5 (9th Cir. 2002), and "is of little or no weight" unless it counsels in *favor* of federal jurisdiction. *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1370 (9th Cir. 1990). Thus, it is neutral here.

Turning to forum shopping (7), the Court evaluates whether "either side sought to manipulate the litigation or behaved vexatiously to wind up in the forum of its choosing." *Seneca Ins.*, 862 F.3d at 846. Moreover, "[i]t typically does not constitute forum shopping where a party acted within his rights in filing a suit in the forum of his choice, even where the chronology of events suggests that both parties took a

---

[6] *See also, e.g.*, *Calif. Chamber of Com. v. Becerra*, No. 2:19-cv-2019, 2020 WL 5074026, at *5 (E.D. Cal. Aug. 27, 2020); *Beeman v. TDI Managed Care Servs., Inc.*, No. 5:02-cv-1327, 2007 WL 9780513, at *4 (C.D. Cal. Jan. 30, 2007).

somewhat opportunistic approach to the litigation." *Id.* (cleaned up). Here, COLFS is located in San Diego County, within the Southern District of California, and Defendant Bonta maintains offices in San Diego County. Compl., ¶¶18-19. In the *People v. Heartbeat* litigation, the local defendant is primarily located in San Jose, Santa Clara County, with one remote clinic located in Oakland in Alameda County. *See* RJN Ex. A, *People v. Heartbeat* Compl., ¶11. Yet, Defendant Bonta chose to bring its lawsuit in Alameda County Superior Court. *Id.*, ¶19.

There is no reason why COLFS would possibly want to litigate its claims 500 miles away in the Bay Area when Defendant Bonta says it is perfectly "convenient" for him to litigate this case here. *See* Mot'n, p.21:10-11. Rather, in filing a motion for a *Colorado River* stay, and seeking to force COLFS to litigate in the Bay Area, "there is evidence that Defendants are improperly engaging in forum shopping by filing this Motion." *Peri Formwork Sys., Inc. v. Legendary Builders Corp.*, No. 2:16-cv-7517, 2018 WL 5099704, at *7 (C.D. Cal. May 11, 2018).

Lastly, factor (8) asks "whether the state court proceedings will resolve all issues before the federal court." *Seneca Ins.*, 862 F.3d at 841-42. "This inquiry [first] examines whether the suits involve the same parties and the same claims," *ScripsAmerica, Inc. v. Ironridge Glob. LLC*, 56 F. Supp. 3d 1121, 1147 (C.D. Cal. 2014), because if "none of the plaintiffs in the present action are parties to the state case," there is unlikely to be adequate parallelism. *Dittmer v. Cnty. of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998). Under this factor, the court must conclude that "the federal court will have *nothing further to do in* resolving any substantive part of the case." *Ernest Bock, LLC v. Steelman*, 76 F.4th 827, 841 (9th Cir. 2023). Abstention is inappropriate "[w]hen one possible outcome of parallel state court proceedings is continued federal litigation." *Id.*

Here, Defendant Bonta argues that "the claims brought by COLFS are *largely* encompassed by [Heartbeat's] defenses in the Enforcement Action." Mot'n, p.22:26-27 (emphasis added); *see* RJN Ex. B, *People v. Heartbeat* Answer. Defendant Bonta's hedging gives the argument away. It is definitely *possible* that the *People v. Heartbeat*

litigation would resolve in a manner where COLFS continues to need relief from this Court. For example, in his later Rule 12(b)(6) section, Attorney General Bonta's lead argument is the commercial speech exception to the First Amendment. *See* Mot'n, p.31:15-23 (citing *First Resort, Inc. v. Herrera*, 860 F.3d 1263 (9th Cir. 2017)). But this "analysis is fact-driven" and looks at "motiv[e]," *First Resort*, 860 F.3d at 1272, such that it is perfectly plausible that the result for COLFS, Heartbeat, and RealOptions would differ. *See Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Baltimore*, 721 F.3d 264, 285 (4th Cir. 2013) (remanding for discovery). In light of the above, a *Colorado River* stay is not appropriate. *See NIFLA v. James*, 2024 WL 3904870, at \*8.

### III.    COLFS Has Standing to Pursue Its Claims for Pre-Enforcement Injunctive Relief

"To satisfy the 'irreducible constitutional minimum' for standing, a plaintiff must establish 'three elements': (1) injury in fact (2) that is fairly traceable to the challenged conduct of the defendant and (3) that is likely to be redressed by a favorable decision." *Skyline Wesleyan Church v. Calif. Dep't of Managed Health Care*, 968 F.3d 738, 746 (9th Cir. 2020) ("*Skyline*"). The last two factors tend to merge. "[A]lthough traceability and redressability are separate inquiries, they were initially articulated as 'two facets of a single causation requirement.'" *Id.* at 749 n.8 (quoting *Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984)).

"The injury requirement does not force a plaintiff to 'await the consummation of threatened injury to obtain preventive relief.'" *Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1171 (9th Cir. 2018) (quoting *Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 143 (1974)). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)). Further, "[t]he unique standing considerations in the First Amendment context tilt dramatically toward a finding of

standing when a plaintiff brings a pre-enforcement challenge." *Tingley v. Ferguson*, 47 F.4th 1055, 1066–67 (9th Cir. 2022) (cleaned up).

In the First Amendment context, "the Supreme Court [has] provided a three-prong framework for determining when a plaintiff [can] bring a pre-enforcement suit: 'A plaintiff could bring a pre-enforcement suit when he has alleged (1) an intention to engage in a course of conduct arguably affected with a constitutional interest, but (2) proscribed by a statute, and (3) there exists a credible threat of prosecution thereunder.'" *Union Gospel Mission of Yakima Wash. v. Ferguson*, No. 23-2606, 2024 WL 3755954, at *2 (9th Cir. Aug. 12, 2024) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014)) (cleaned up). In addressing the third prong, the court further "consider[s]: [a] whether the plaintiff has a concrete plan to violate the law, [b] whether the enforcement authorities have communicated a specific warning or threat to initiate proceedings, and [c] whether there is a history of past prosecution or enforcement." *Isaacson v. Mayes*, 84 F.4th 1089, 1099 (9th Cir. 2023) (cleaned up).

Here, COLFS has pleaded that it provides Abortion Pill Reversal treatment, Compl., ¶¶4, 19, 21, that Defendant Bonta has sued a licensed community health clinic for offering APR treatment, *id.*, ¶¶10, 82-83, that providing APR treatment is required by COLFS's religious mission, *id.*, ¶¶21, 60-61, 116-27, and is protected by COLFS's free speech rights. *Id.*, ¶¶62-69, 98-115. Defendant Bonta argues that this is inadequate to establish pre-enforcement standing. Mot'n pp.25:13-31:7. Although Defendant Bonta splits the four causes of action into two different sections, *see id.*, the analysis is the same, and so all claims are addressed below together.

### A.    Providing APR Treatment Arguably Raises Constitutionally Interests

First, Defendant Bonta argues that COLFS cannot establish that providing APR treatment is arguably affected with a constitutional interest because "[f]alse and misleading commercial speech … is not protected by the First Amendment." Mot'n p.27:17-18. Defendant Bonta continues, stating that "false and misleading commercial

statements about APR [do not] protect[] patients' purported Substantive Due Process right 'to not be forced to undergo or continue an abortion'," *id.*, p.30:8-11, and the UCL and FAL do not violate the Free Exercise Clause because they are neutral laws of general applicability. *Id.*, pp.30:22-31:5.

This type of cart-before-the-horse reasoning has been rejected by the Ninth Circuit. *Tingley*, 47 F.4th at 1067 ("standing to bring First Amendment claims, however, 'in no way depends on the merits' of those claims"); *Seattle Pac. Univ.*, 104 F.4th at 62 ("We held that, although the plaintiff's claims were ultimately without merit, he had standing to seek injunctive relief"). Rather, "[f]or standing purposes, [the court must] accept as valid the merits of [plaintiffs'] legal claims." *Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 298 (2022); *accord Porter v. Martinez*, 68 F.4th 429, 438 (9th Cir. 2023) (standing "depend[s] on the relief that federal courts are *capable* of granting").

## B.  COLFS Has Adequately Pleaded that the Attorney General Believes APR Treatment Is Proscribed by California Law

Second, Defendant Bonta argues that COLFS cannot establish that it intends to engage in activity arguably proscribed by California law because "[t]o the extent that COLFS claims that *any* speech about APR satisfies the … *[Susan B. Anthony List v.] Driehaus* factors, that argument is belied by the UCL and FAL." Mot'n p.27:10-11; citing RJN Ex. A, *People v. Heartbeat* Compl., ¶¶96-101; *see also* Mot'n p.30:1-4. The Ninth Circuit has called this type of argument, where "the would-be enforcing party, the Attorney General, could defeat standing by conceding that the law does *not* apply," an "Alice in Wonderland" type argument. *Peace Ranch, LLC v. Bonta*, 93 F.4th 482, 489 (9th Cir. 2024). But the Ninth Circuit has equally warned lower courts to not go "further down this rabbit hole" of determining what California law truly requires— "an inquiry that [would] unavoidably tangle standing with the merits." *Id.* Rather, what matters is "whether [the plaintiff] plausibly alleged … the Attorney General's interpretation of [the law]." *Id.*

Here, COLFS specifically pleaded that Defendant Bonta interprets California law to prohibit the *provision of APR treatment*. Compl., ¶¶10-11, 82-83, 104. Notably, Defendant Bonta does not specifically disavow that APR treatment is permissible under California law.[7] Rather, he simply states that "the core of the Enforcement is false and misleading advertisements about APR" and "[t]he Enforcement Action challenged eight specific false and misleading statements in [Heartbeat's and RealOptions'] APR advertisements, rather than APR-related speech writ large." Mot'n pp. 27 n.10, 28:14-16 (citing RJN Ex. A, *People v. Heartbeat* Compl., ¶¶97-101); *see also* Mot'n p.29:14-16.

The reference to "core" again gives away the game. The *People v. Heartbeat* Complaint alleges that it is a misrepresentation to claim that APR "is 'safe' and 'effective' for 'reversing' a medication abortion," RJN Ex. A, *People v. Heartbeat* Compl., ¶20, and that the RealOptions clinics have engaged in a fraudulent business practice every time that an "[informed] consent form [was] provided to pregnant individuals" containing these claims. *Id.*, ¶101; *see also id.*, ¶94. It further asserts that Heartbeat engaged in a fraudulent business practice with respect to "each training kit [provided] to [APR Network members]," *id.*, ¶101, a kit which consists of model APR protocols, model website FAQs, model informed consent templates, and supporting scientific studies. *Id.*, ¶¶71-81.[8] None of this is about "false advertising," Mot'n p.29

---

[7] For a disavowal to be adequate, "the government's disavowal must be more than a mere litigation position," as shown through "the enforcing authority expressly interpret[ing] the challenged law as not applying to the plaintiffs' activities." *Lopez v. Candaele*, 630 F.3d 775, 788 (9th Cir. 2010) (merely "dropp[ing] charges" against a specific party is inadequate); *accord Am.-Arab Anti-Discrimination Comm. v. Thornburgh*, 970 F.2d 501, 508 (9th Cir. 1991); *see also Wilson v. Stocker*, 819 F.2d 943, 947 n.3 (10th Cir. 1987) (disavowal mentioning only some but not all of the plaintiff's desired activity is insufficient).

[8] Heartbeat's Answer denies that it *sells* the APR Healthcare Professional Kit. Rather, as a trade organization, it regularly creates fact sheets and other resources identifying best practices regarding a bevy of pro-life activities. One example of this is the APR Kit, which is not available online but is provided free of charge to any healthcare

n.11, and the distinction that Defendant Bonta is trying to make is nonsensical. If saying APR is "effective" at "reversing" an chemical abortion is a misrepresentation, it is a misrepresentation in all contexts, and "a State cannot foreclose the exercise of constitutional rights by mere labels." *Bigelow v. Virginia*, 421 U.S. 809, 826 (1975) (enjoining statute prohibiting advertising for abortion).

Here, to protect its constitutional rights, COLFS is seeking injunctive relief precluding Defendant Bonta from suing it for refusing to repeat false claims when it tells women about APR treatment—whether immediately in advance of providing it, counseling women about their options, or explaining its services on its website. *See* Compl., ¶¶10-11, 63, 104, 124.

### C.    COLFS Has Adequately Pleaded a Credible Threat of Prosecution

Third, Defendant Bonta argues that COLFS cannot establish a credible threat of prosecution because COLFS does not allege past enforcement against COLFS, threats of enforcement against COLFS, self-censoring by COLFS, Mot'n p.28:3-12, or even "any past enforcement actions relating to the provision of APR" because the *People v. Heartbeat* prosecution "targets only false and misleading advertising about APR; it does not target APR as a treatment." Mot'n p.29:5-19.

To begin, as stated above, the *People v. Heartbeat* prosecution does purport to apply the UCL and FAL to prohibit APR. RJN Ex. A, *People v. Heartbeat* Compl., ¶¶20, 71-81, 101. And specific threats *against COLFS* are not needed. A "history of past enforcement against parties similarly situated to the plaintiffs" is perfectly adequate. *Calif. Trucking Ass'n v. Bonta*, 996 F.3d 644, 654 (9th Cir. 2021); *accord 303 Creative LLC v. Elenis*, 600 U.S. 570, 583 (2023) (noting that "Colorado has a history of past enforcement against nearly identical conduct"). Further, as stated in Defendant Bonta's motion, COLFS is the *key player* in the development of APR—having

practitioner who wishes to provide APR treatment (regardless of whether he or she is associated with a Heartbeat affiliate). *See* RJN Ex. B, *Heartbeat* Answer, ¶¶71-81.

developed an APR protocol and authored the first studies addressing it. Mot'n p.11:26-28. Thus, the fact that COLFS has not been sued is particularly conspicuous. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) ("[H]is companion's prosecution showed that his 'concern with arrest' was not 'chimerical[.]'").

And contrary to Defendant Bonta's argument, COLFS's refusal to self-censor *favors standing*—it does not undermine it. Federal courts "do not *require* a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat—for example, the constitutionality of a law threatened to be enforced." *MedImmune*, 549 U.S. at 128-29 (emphasis added). But if the plaintiff *does* expose himself to liability, then "[t]here is no dispute that these standards would have been satisfied." *Id.*; *accord Teter v. Lopez*, 76 F.4th 938, 946 (9th Cir. 2023) (past engagement in activity deemed illegal is strong evidence of intent to engage in same conduct in the future). Here, like in other APR pre-enforcement cases, there unquestionably is standing. *See NIFLA v. James*, 2024 WL 3904870, at *5.[9]

## IV. COLFS Has Adequately Pleaded Its Claims Under Rule 12(b)(6)

Lastly, in a few pages, Defendant Bonta argues that COLFS has not adequately pleaded any of its four claims. For the reasons stated below, those arguments fail.

### A. COLFS Has Adequately Pleaded Its Free Speech Claim

COLFS's first claim for relief alleges violation of the Free Speech Clause of the U.S. Constitution through content and viewpoint discrimination. Compl., ¶¶98-115. Defendant Bonta argues that the Court should dismiss the claim because "the

---

[9] In a footnote, Defendant Bonta argues that COLFS's claims are not ripe for the same reasons as above—the lack of an "injury in fact." *See* Mot'n p.25 n.17. The justiciability doctrine of ripeness "is peculiarly a question of timing" whose "basic rationale is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Thomas v. Union Carbide Agr. Prod. Co.*, 473 U.S. 568, 580 (1985). As relevant here, ripeness requires a current "injury in fact" and is therefore indistinguishable from standing. *Skyline*, 968 F.3d at 747. This argument does indeed rise and fall on whether COLFS has pre-enforcement standing, and so need not be separately addressed.

Constitution affords no protection to false or misleading commercial speech." Mot'n p.31:22-23. This argument fails because COLFS has adequately pleaded that its APR-related speech is neither misleading nor commercial. Compl., ¶¶10-11, 29-42, 66-99.

In general, content-based restrictions on speech are subject to strict scrutiny. *X Corp. v. Bonta*, ___ F.4th ___, No. 24-271, 2024 WL 4033063, at *6 (9th Cir. Sept. 4, 2024). Commercial speech generally receives the lesser protection of intermediate scrutiny. *NetChoice, LLC v. Bonta*, 113 F.4th 1101, 1119 (9th Cir. 2024). But strict scrutiny applies when the government restricts speech "because of disagreement with the message it conveys," *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 566-67 (2011), or restricts politically "controversial issues." *NetChoice, LLC*, 113 F.4th at 1121. And if the commercial speech is false or misleading, it receives no protection. *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 563 (1980). None of these issues can be resolved on the pleadings.

To begin, COLFS has plainly pleaded adequate facts to establish that its APR-related speech is noncommercial. Compl., ¶¶1, 10, 21, 51, 66-69. Whether the speech is commercial cannot be resolved on the pleadings because the "commercial speech analysis is fact-driven, due to the inherent difficulty of drawing bright lines that will clearly cabin commercial speech in a distinct category." *X Corp.*, 2024 WL 4033063, at *7 (quoting *Greater Balt. Ctr. for Pregnancy Concerns*, 721 F.3d at 284). And even if it were commercial, "abortion" is perhaps the quintessential "[]controversial" topic requiring heightened scrutiny, *NIFLA v. Becerra*, 585 U.S. 755, 769 (2018); *cf. McCullen v. Coakley*, 573 U.S. 464, 476 (2014), and COLFS has pleaded ample facts establishing that Defendant Bonta's attempt to restrict APR is viewpoint based. Compl., ¶¶74-97. And, of course, for purposes of this motion to dismiss, the Court must accept that COLFS's statements regarding APR are true. *Est. of Bride*, 112 F.4th at 1175. Finally, regardless of whether intermediate scrutiny or strict scrutiny applies, COLFS has pleaded ample facts to show that neither standard could be met since Defendant Bonta seeks to compel the repetition of falsehoods. *See* Compl., ¶¶29-55.

**B.    COLFS Has Adequately Pleaded Its Free Exercise Claim**

COLFS's second claim for relief alleges violation of the Free Exercise Clause of the U.S. Constitution. Compl., ¶¶116-27. COLFS argues that restricting only the off-label use of progesterone to reverse an abortion, but not other off-label uses of progesterone (or other drugs such as misoprostol), makes Defendant Bonta's attempt to do so not generally applicable. *See Bella Health & Wellness v. Weiser*, 699 F. Supp. 3d 1189, 1212-14 (D. Colo. 2023) (endorsing this argument in action against AG Weiser).

Defendant Bonta argues that COLFS's claim fails because there is no actual burden on COLFS's religion since he is "not attempting to restrict APR." Mot'n p.32:1-13. As stated above, this is inaccurate. RJN Ex. A, *People v. Heartbeat* Compl., ¶¶20, 71-81, 101. Further, Defendant Bonta cites the Ninth Circuit's upholding of a conversion therapy ban to argue, without explanation, that the UCL and FAL are neutral and generally applicable. *See* Mot'n p.32:9-12 (citing *Tingley*, 47 F.4th at 1085-88). But *Tingley* held simply that the plaintiff could not identify comparable exemptions so as to trigger strict scrutiny. *Tingley*, 47 F.4th at 1089. Here, COLFS has identified comparable exemptions, Compl., ¶¶28, 95, 109, 123, and at the pleadings stage, the question is solely whether the complaint's assertion of comparability is plausible, *Lowe v. Mills*, 68 F.4th 706, 716 (1st Cir. 2023)—which it plainly is. *Bella Health & Wellness*, 699 F. Supp. 3d at 1212-14.

**C.    COLFS Has Adequately Pleaded Its Patients' Right to Receive Information Claim**

COLFS's third claim for relief alleges violation of the Free Speech Clause through its patients' right to receive information. Compl., ¶¶128-38. First, Defendant Bonta again raises his argument that not all APR-related speech is proscribed by the UCL. Mot'n p.32:18-22. This argument fails as stated above.

Second, Defendant Bonta argues that COLFS has not alleged the "the requisite 'concrete, specific connection' between speaker and listener that this claim mandates." Mot'n p.32:16-17 (quoting *Murthy v. Missouri*, 144 S. Ct. 1972, 1996 (2024)). This is

incorrect. Indeed, a "commercial advertisement" receives intermediate scrutiny, in part, because "the First Amendment … prohibit[s] government from limiting the stock of information from which members of the public may draw." *First Nat. Bank of Bos. v. Bellotti*, 435 U.S. 765, 783 (1978). Thus, the "specific connection" between COLFS and its patients is the physician-patient relationship. Compl., ¶¶4, 19, 51. This connection is far more "concrete" than the loose connection at issue in *Murthy*, where the plaintiff alleged harm when the government censored *anybody* on social media because of her alleged right to hear unfettered speech from *everybody*. *See Murthy*, 144 S. Ct. at 1996.

### D. COLFS Has Adequately Pleaded Its Patients' Substantive Due Process Claim

Lastly, COLFS's fourth claim for relief alleges violation of its patients' Substantive Due Process rights to privacy in having a child and to refuse unwanted medical care. Compl., ¶¶139-47. Like above, Defendant Bonta first raises his straw-man argument that COLFS can offer APR so long as it includes misrepresentations about it when speaking. Mot'n pp.32:27-33:3. This argument fails as stated above. Then Defendant Bonta argues that pregnant women have no right to false or misleading information about APR. *Id.*, p.33:4-11. But, on a Rule 12(b)(6), this Court must accept as true COLFS's claim that Defendant Bonta is the one seeking to tell women false information. *See* Compl., ¶11 ("None of this is anywhere near accurate" and Defendant Bonta offers "the false choice … to either not speak or spread an unscientific lie").

## CONCLUSION

For the foregoing reasons, COLFS respectfully requests that the Court deny Attorney General Bonta's motion to dismiss or stay in full.

Respectfully submitted,

LiMANDRI & JONNA LLP

Dated: September 26, 2024     By:

Charles S. LiMandri
Paul M. Jonna
Jeffrey M. Trissell
Attorneys for Plaintiff Culture of Life Family
Services, Inc.

## CERTIFICATE OF SERVICE

### *Culture of Life Services v. Attorney General Ron Bonta*

USDC Court Case No.: 3:24-cv-1338-GPC-KSC

I, the undersigned, declare under penalty of perjury that I am over the age of eighteen years and not a party to this action; my business address is P.O. Box 9120, Rancho Santa Fe, California 92067, and that I served the following document(s):

• **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR STAY.**

on the interested parties in this action by placing a true copy in a sealed envelope, addressed as follows:

Rob Bonta, Attorney General of California
Renu George, Senior Assistant Attorney General
Karli Eisenberg, Supervising Deputy Attorney General
Kathleen Boergers, Supervising Deputy Attorney General
Erica Connolly, Deputy Attorney General
Hayley Penan, Deputy Attorney General
1300 "I" Street, Suite 125
P.O. Box 944255
Sacramento, CA 94244-2550
Tel: (916) 210-7755
Fax: (916) 327-2319
E-Mail: Erica.Connolly@doj.ca.gov
E-Mail: karli.eisenberg@doj.ca.gov
E-Mail: kathleen.boergers@doj.ca.gov
E-Mail: hayley.penan@doj.ca.gov
**Attorney for Defendant Attorney General of California**
**Rob Bonta**

 X    **(BY ELECTRONIC MAIL)** I served a true copy, electronically on designated recipients via electronic transmission of said documents.

 X    **(BY ELECTRONIC FILING/SERVICE)** I caused such document(s) to be Electronically Filed and/or Service using the ECF/CM System for filing and transmittal of the above documents to the above-referenced ECF/CM registrants.

I declare under penalty of perjury, under the laws of the State of California, that the above is true and correct. Executed on September 26, 2024, at Rancho Santa Fe, California.

Kathy Denworth