UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CULTURE OF LIFE FAMILY SERVICES, INC., a California nonprofit corporation,<br><br>                                     Plaintiff,<br><br>v.<br><br>ATTORNEY GENERAL ROB BONTA, in his official capacity as the California Attorney General,<br><br>                                     Defendant. | Case No. 3:24-cv-01338-GPC-KSC<br><br>**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>**[ECF No. 4]** |

Plaintiff Culture of Life Family Services, Inc. ("COLFS") brings a pre-enforcement action against California Attorney General Rob Bonta ("Bonta" or "Defendant"). COLFS alleges that its provision of abortion pill reversal treatment is constitutionally protected, and that Bonta's alleged "attack against APR [abortion pill reversal]" is unconstitutional and puts COLFS at risk of incurring enforcement actions by the State. ECF No. 1 ¶ 15.

Before the Court is Defendant's motion to dismiss the complaint, or alternatively stay the case, for reasons sounding in abstention, lack of constitutional standing, and

failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). ECF No. 4. Plaintiffs filed an opposition, and Defendant filed a reply. ECF Nos. 9, 10. Based on the reasons below, the Court GRANTS Defendant's motion to dismiss WITH LEAVE TO AMEND.

## BACKGROUND

### I. Abortion Pill Reversal treatment

COLFS is a Catholic community health clinic in San Diego County that provides free abortion pill reversal ("APR") treatment.[1] ECF No. 1 ("Compl.") ¶ 19, 21. APR is a medical procedure designed for pregnant women who have started the chemical abortion process by ingesting the first pill out of two[2] and who later decide to keep the unborn child. *Id.* ¶ 2. APR consists of taking the hormone progesterone in order to counteract mifepristone's blocking of the body's natural supply of progesterone. *See id.* ¶¶ 2, 3, 33-34.

COLFS alleges that "[s]upplemental progesterone itself is indubitably safe." *Id.* ¶ 30. The "first known attempt to reverse the effects of mifepristone using bioidentical progesterone" was in 2006, and the woman "went on to deliver a healthy baby." *Id.* ¶ 31. A few years later, COLFS's medical director, Dr. George Delgado "devised the APR protocol for reversing the effects of mifepristone and began to advise doctors on APR." *Id.* ¶ 32. In 2012 and 2017, two small human case studies on progesterone therapy were published, one of which was co-authored by Dr. Delgado. *Id.* ¶¶ 37, 38. Dr. Delgado

---

[1] The Court recognizes the term, "abortion pill reversal treatment," itself is contested, since Bonta alleges that "reverse" or "reversal" are in fact fraudulent statements for describing the supplemental progesterone treatment that is at issue here. Putting that aside, the Court will refer to this medical treatment as "abortion pill reversal treatment" or "APR treatment" because this is how the treatment is commonly labeled.

[2] The first pill contains mifepristone, the second misoprostol. Compl. ¶ 25.

then did a follow-up to his study in 2018, analyzing the charts of 547 women who had ingested mifepristone and then received progesterone therapy within 72 hours. *Id.* ¶ 39. The overall fetal survival rate was 48%, but was higher for the subgroup that received progesterone intramuscularly (64%) and the subgroup that received a high dose of oral progesterone followed by daily oral progesterone until the end of the first trimester (68%). *Id.* The study concluded that these were two viable APR protocols. *Id.*

Based on these studies and a "scoping review" published in July 2023 and "over a decade of widespread successful use of APR," COLFS alleges that APR has been endorsed by the American Association of Pro-Life Obstetricians & Gynecologist, the Catholic Medical Association, and Canadian Physicians for Life. *Id.* ¶ 42.

As COLFS acknowledges, there have been criticisms of APR, including one study that was performed by Dr. Mitchell Creinin and funded by Danco Laboratories, the principal manufacturer of mifepristone ("Danco/Creinin Study"), which looked at severe bleeding resulting from APR. *Id.* ¶ 52. The study involved twelve pregnant women who took mifepristone. Half then took progesterone, and the other half took a placebo. One woman who took progesterone went to the hospital with "severe bleeding" while two women who took the placebo experienced severe bleeding. *Id.* ¶ 54. COLFS argues that the Danco/Creinin study actually therefore lends support to the conclusion that administrating progesterone after mifepristone "gives a pregnant woman a better chance of avoiding severe bleeding over doing nothing." *Id.* ¶ 55.

## II. Heartbeat International and the Enforcement Action

In light of what were viewed as successful APR interventions, COLFS's medical director, Dr. George Delgado, set up a website and hotline in May 2012 to educate pregnant women seeking to counteract the effects of mifepristone and to connect them with licensed medical professionals. *Id.* ¶ 43. This became known as the "APR Network." *Id.* In 2018, to "ensure expansion of the APR Network and increased public

3

awareness of the APR protocol," COLFS transferred the Network for the nominal sum of $1 to Heartbeat International, a nationwide trade group that represents pro-life pregnancy resource organizations. *Id.* ¶ 44.

On September 21, 2023, Rob Bonta, the California Attorney General and the Defendant in this case, filed a complaint in California state court seeking a permanent injunction, civil penalties, and other equitable relief against Heartbeat International et al. for false and misleading advertising of APR treatment. ECF No. 4-2, Request for Judicial Notice ("RJN"), Ex. A.[3] Bonta's complaint against Heartbeat International et al. ("Enforcement Action" or "Action") alleges that there is no credible scientific evidence that supports the theory that progesterone counteracts mifepristone without harmful effects or that APR is safe. Ex. A ¶¶ 32, 33, 37, 40-45.

The Enforcement Action alleged two causes of action under California's Unfair Competition Law ("UCL"), Business and Professions Code section 17200 *et seq.*, and False Advertising Law ("FAL"), Business and Professions Code section 17500 *et seq.* Ex. A ¶¶ 96-101. The Action alleged that Heartbeat International et al. promulgated eight statements in their APR advertisements and communications that are false and

---

[3] Bonta's request for judicial notice will be fully addressed in the section below, but the Court briefly notes here that it takes judicial notice of the existence of the court filings attached to the request, including the original complaint brought against Heartbeat International (Exhibit A). The Court also incorporates by reference Exhibit A because COLFS's complaint "depends on the contents of" the original complaint, *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); COLFS's complaint also "extensively" references the original complaint, *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); and no party questions the authenticity of the copy attached. The Court therefore will take into account, and reference, the contents of this original complaint. *See Knievel*, 392 F.3d at 1076 (describing the judicial doctrine of incorporation-by-reference, which allows courts to consider documents that are not found within, or attached to, the plaintiff's pleading).

misleading because they are unsupported by credible scientific evidence: (1) the use of the terms "reverse" and "reversal"; (2) that APR "has been shown to increase the chances of allowing the pregnancy to continue"); (3) that APR has a success rate of 64-68%; (4) that the rate of birth defects following APR is "less or equal to the rate in the general population"; (5) that "thousands of lives have been saved" through APR; (6) that APR may be effective beyond a 72-hour window following mifepristone administration; (7) that APR may be effective following administration of misoprostol and methotrexate; and (8) that APR can cause only non-life-threatening side effects, even though it can cause severe bleeding. Ex. A. ¶¶ 97, 100.

Heartbeat International and the other defendant RealOptions, Inc. filed demurrers asking the state court to dismiss the action, based on constitutional grounds, and Heartbeat International filed a motion to quash. Exs. C, D, E. In June 2024, the state court denied the motion to quash and overruled the demurrers. Exs. F, G. The defendants filed their joint answer, including as part of their affirmative defenses that the Action is unconstitutional under the First Amendment's Free Exercise and Free Speech Clauses and under the Fourteenth Amendment's Substantive Due Process Clause. Ex. B at 31-33.

### III.   COLFS and the current complaint

There are significant ties between COLFS and Heartbeat International. Dr. Delgado, the medical director of COLFS who devised the APR protocol and published two articles studying APR's effectiveness, *see* Compl. ¶ 31-32, 37, 39, is on the Heartbeat International's Medical Advisory Board, *id.* ¶ 44. COLFS also sold to Heartbeat International the APR Network that Dr. Delgado created, which included a website, a hotline, and a network of providers willing to provide APR treatment. *Id.* ¶ 43-44. Heartbeat International et al. and COLFS have the same counsel representing them in these litigation matters. *Id.* at 1; Exs. B, C, D, E.

1    COLFS has characterized the Enforcement Action against Heartbeat International et al. as "lawfare," *id.* ¶ 1, or an "*in terrorem* lawsuit" that is "motivated by [Bonta's] retaliatory animus against pro-life speech and expressive association of *all* pro-life pregnancy help resource organizations," *id*. ¶ 83 (emphasis added).  COLFS alleges the Enforcement Action is an "attempt to restrict APR," *see id*. ¶¶ 114, 126, 137, 144, and alleges that "Bonta's attack on APR is chock full of constitutional implications" that infringe on COLFS's and their patients' rights.  *Id.* ¶ 56.  These "constitutional implications" involve violations of the free exercise of religion, the right to free speech, and the right to make reproductive decisions.  *Id.*

    Specifically, COLFS alleges that the Enforcement Action constitutes a content-based restriction on speech about APR and a prohibition on COLFS "from counseling patients in connection with APR," *id*. ¶ 104, and thus violates the Free Speech Clause. COLFS also alleges that the Enforcement Action violates the Free Speech Clause's protection of patients' "right to receive information."  COLFS alleges that doctors have "third-party standing to assert the interests of their patients so long as the physician has also suffered injury himself."  *Id*. ¶ 131 (citing *McCormack v. Herzog*, 788 F.3d 1017, 1027 (9th Cir. 2015)).

    Furthermore, COLFS alleges that the Enforcement Action violates the Free Exercise Clause because it is not a generally applicable policy, since the Action does not apply to off-label uses of progesterone.  *Id*. ¶ 123.[4]

    Finally, COLFS alleges that the Enforcement Action violates the Substantive Due Process Clause of the 14th Amendment, because "Bonta's assertion that APR must be

---

[4] COLFS feels "religiously obligated to offer Abortion Pill Reversal" by nature of its religious mission, so the provision of APR treatment, according to COFLS, is an exercise of religious freedom and expression that is protected under the First Amendment. *See id*. ¶ 122

restricted violates COLFS's patients' right to "procreation, reproductive privacy, and to reject unwanted medical treatment." *Id.* ¶ 145.

Bonta moves to dismiss or stay the case based on abstention principles, want of standing, and failure to state a claim. ECF No. 4 ("Motion to Dismiss").

## LEGAL STANDARDS

### I. Federal Rule of Civil Procedure 12(b)(1)

Under Rule 12(b)(1), a court must grant a motion to dismiss for lack of subject-matter jurisdiction, including lack of Article III standing. Fed. R. Civ. P. 12(b)(1); *see In re Apple iPhone Antitrust Litigation*, 846 F.3d 313, 319 (9th Cir. 2017). A motion to dismiss under Rule 12(b)(1) may be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In a facial attack, the movant asserts that the allegations in the complaint are insufficient on their face to invoke federal jurisdiction. For a factual attack, the movant disputes the truth of the allegations, which if true would otherwise invoke federal jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). This facial/factual distinction has certain implications for how the Court should approach the motion to dismiss: the "district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6)" (accepting plaintiff's allegations as true and drawing reasonable inferences in the plaintiff's favor), while factual attacks require the plaintiff to "support her jurisdictional allegations with 'competent proof.'" *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

### II. Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint and whether it has "state[d] a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See*

*Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

A complaint may survive a motion to dismiss only if, taking all well-pleaded factual allegations as true, it contains factual matter that "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible when the factual allegations allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

## DISCUSSION

### A. Defendant's Request for Judicial Notice

Generally, on a motion to dismiss, courts will limit their review to the contents of the complaint and may only consider extrinsic evidence that is properly presented as part of the complaint. *See Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001). However, under Federal Rule of Evidence 201, a district court may take notice of facts not subject to reasonable dispute that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b).

Bonta seeks judicial notice of nine documents: (1) the complaint by Bonta against Heartbeat International et al. (Ex. A); (2) Defendants' answer to the complaint (Ex. B); (3) Memorandum of Points and Authorities in support of Heartbeat International's demurrer to the complaint (Ex. C); (4) Memorandum of Points and Authorities in support of RealOptions, Inc.'s demurrer to the complaint (Ex. D); (5) Memorandum of Points and

Authorities in support of Heartbeat International's motion to quash for lack of personal jurisdiction (Ex. E); (6) the order denying the demurrers (Ex. F); (7) the order denying motion to quash (Ex. G); (8) a copy of the docket of the state court case (Ex. H); and (9) a rebuttal declaration of Jor-El Godsey (the President of Heartbeat International) filed in support of the motion to quash (Ex. I). RJN at 2-3.

Exhibits A, B, C, D, F, and H are relevant to the instant case and are matters of public record, so the Court may take judicial notice of them "without converting a motion to dismiss into a motion for summary judgment." *Lee*, 250 F.3d at 689 (quotations and citations omitted). But the Court will not take judicial notice of the truth of any disputed facts contained in those public records. *See id.*

As to Exhibits E, G, and I, the Court does not see its relevance to the present motion to dismiss, since personal jurisdiction over Heartbeat International is not at issue in this case. The Court therefore does not judicially notice these documents. *See Ruiz v. City of Santa Maria*, 160 F.3d 543, 548 n.13 (9th Cir. 1998) (judicial notice inappropriate where facts to be noticed are irrelevant to disposition of issues before the court).

**B. Standing**

1. <u>Driehaus test</u>

Bonta contends that COLFS has failed to demonstrate standing to bring this lawsuit. As a threshold matter, a plaintiff "bears the burden of establishing standing." *Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010). A plaintiff "must demonstrate standing for each claim he or she seeks to press and for each form of relief sought." *Washington Env't Council v. Bellon*, 732 F.3d 1131, 1139 (9th Cir. 2013) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). To establish Article III standing, an injury must be "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal quotation omitted). This is the

"irreducible constitutional minimum" of standing that Article III demands. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

An allegation of a future injury may suffice but the threatened injury must be "certainly impending to constitute injury in fact" and "[a]llegations of *possible* future injury are not sufficient." *Clapper*, 568 U.S. at 409 (internal quotations omitted). The "threatened enforcement of a law" is an example of a future injury, and pre-enforcement review is permitted when the threatened enforcement is "sufficiently imminent." *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014). For pre-enforcement challenges, plaintiffs must show three things: (1) "an intention to engage in a course of conduct arguably affected with a constitutional interest"; (2) that the conduct is "proscribed by a statute"; and (3) that there is a "credible threat of prosecution thereunder." *Arizona v. Yellen*, 34 F.4th 841, 849 (9th Cir. 2022) (citing *Driehaus*, 573 U.S. at 159). "[A]n actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law." *Driehaus*, 573 U.S. at 158. At the same time, "neither the mere existence of a proscriptive statute nor a generalized threat of prosecution" satisfies the standing requirement. *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc).

The Ninth Circuit has held that "First Amendment cases raise 'unique standing considerations,' that 'tilt[] dramatically toward a finding of standing." *Lopez*, 630 F.3d at 781 (cleaned up). And at the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan*, 504 U.S. at 561.

Despite the relaxed threshold that the First Amendment context and pleading stage may invite, the plaintiff COLFS has still failed to "demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Lopez*, 630 F.3d at 786. COLFS cannot show standing for the claims it brings. The Court will take each Driehaus factor one-by-one; the analysis applies to all causes of action.

### 2. COLFS has not established that it intends to engage in conduct affected with a constitutional interest

The provision of APR treatment may be affected with constitutional interests, but the crucial point is that Bonta's Enforcement Action is not targeting Heartbeat International's provision of APR. The Enforcement Action is targeting Heartbeat International's allegedly false and misleading statements *about* APR. *See* Ex. A ¶¶ 97, 100. Like the state court found in overruling Heartbeat International's demurrer, "[t]he [Enforcement Action] complaint carefully avoids attacking advocacy relating to reproductive rights broadly or advocating against abortion more specifically. Rather, the complaint focuses on commercial speech concerning products and services." Ex. F at 5.

Of course, the determination of whether these statements by Heartbeat International are actually commercial speech, and whether they are indeed false and misleading, goes to the heart of the merits inquiry of the Enforcement Action. The Court here does not make any such determination; it abstains from reaching the merits of those claims in order to determine whether COLFS has standing or not. *See Arizona v. Yellen* (standing "in no way depends on the merits" of the claims) (citing *Warth v. Seldin*, 422 U.S. 490, 500 (1975)).

That being said, while the Court does not reach the merits of whether Heartbeat International's speech is constitutionally protected, it still stands that COLFS needs to establish a connection between its *own* speech and that of Heartbeat International. Only then can it argue that its speech is affected with constitutional interests that are targeted by the Enforcement Action.

However, COLFS does not allege that its APR-related speech is the same or similar to that being targeted by the Enforcement Action. Instead, COLFS has alleged broadly that it "counsel[s] patients in connection with APR," Compl. ¶¶ 104, 132, and "tells women about APR treatment," Opposition at 21:6-9. It does not make any

1  allegations on specific statements about APR, let alone that it promulgates or expresses
2  any of the eight statements about APR that Heartbeat International does. COLFS has
3  therefore not alleged a "concrete intent" to violate the UCL or FAL. *See Lopez*, 630 F.3d
4  at 787.
5      At the motion hearing, counsel for COLFS argued COLFS *has* promulgated the
6  terms "reverse" and "reversal," which are allegedly fraudulent according to the
7  Enforcement Action. Counsel for COLFS argued that while engaging in its activities,
8  COLFS necessarily conveys the terms "reverse" or "reversal" in connection with
9  progesterone treatment. While this may be true, the Court finds that this is not
10 adequately pled in the Complaint.
11     3. <u>COLFS has not established that its conduct is proscribed by a statute</u>
12     To the extent that COLFS argues the conduct at issue is not actually speech about
13 APR but the provision of APR treatment, it has pled that Bonta interprets California law
14 to prohibit the provision of APR treatment. Opposition at 20:1-2 (citing Compl. ¶¶ 10-
15 11, 82-83, 104). But the Enforcement Action makes it clear that eight specific
16 statements, rather than APR-related speech writ large is being challenged. Ex. A ¶¶ 97-
17 101. COLFS has not "plausibly alleged" that Bonta's interpretation of the UCL and the
18 FAL would prohibit the actual provision of APR treatment. *Cf. Peace Ranch, LLC v.*
19 *Bonta*, 93 F.4th 482, 489 (9th Cir. 2024). In *Peace Ranch*, the Attorney General argued
20 that the law at issue did not apply, and thus there was no standing, because the relevant
21 land tract was composed of two parks, not one. The Ninth Circuit found that the plaintiff
22 "plausibly alleged" that it believed the Attorney General would view the land tract as a
23 single park (and thus that the law would apply to it). *Id.* at 488-89. In the instant case,
24 the two interpretations of the Attorney General are far more distant in logic and reason:
25 Bonta's interpretation of the UCL and FAL to proscribe false and misleading statements
26 about APR is several steps removed from an interpretation of the UCL and FAL to

proscribe APR treatment altogether. Again, this is where a difference makes a distinction. COLFS alleged that it is engaging in conduct (providing APR treatment) that Bonta is not actually prosecuting. There is no future injury here.

At the motion hearing, counsel for COLFS repeated the argument that Bonta's Enforcement Action against the eight fraudulent statements "essentially" amounted to a prohibition on APR treatment itself. The Court finds that again, this is a leap of inference that is unsupported by the facts and allegations before it.

4. COLFS has not established that there is a credible threat of prosecution

In analyzing this last prong, the Ninth Circuit has considered certain factors in its analysis: "(1) whether the plaintiff has a 'concrete plan' to violate the law, (2) whether the enforcement authorities have 'communicated a specific warning or threat to initiate proceedings,' and (3) whether there is a 'history of past prosecution or enforcement.'" *Isaacson v. Mayes*, 84 F.4th 1089, 1099 (9th Cir. 2003) (citing *Anchorage Equal Rts. Comm'n*, 220 F.3d at 1139).

COLFS has failed to demonstrate any clear connection between its speech and the eight statements that are at the center of the Enforcement Action. *See supra* Section B.2. Thus, there is no "concrete plan" to violate the law. *Isaacson*, 84 F.4th at 1099.

As to the second factor, COLFS does not allege that Bonta has engaged in past enforcement activity or issued any warning of enforcement against COLFS for its APR-related speech. *See generally* Compl.

Finally, COLFS argues that the Enforcement Action invokes a credible threat of prosecution. While the "history of past enforcement against parties similarly situated to the plaintiff[] cuts in favor of a conclusion that a threat is specific and credible," *Lopez*, 630 F.3d at 786-87, COLFS does not show how it is "similarly situated" to Heartbeat International. As already stated, COLFS fails to allege that it engages in the same or similar type of statements that is targeted by the Enforcement Action. While it is true

that both are pregnancy help organizations and that there are significant ties between Heartbeat International and COLFS, that is not, by itself, enough to bestow standing on COLFS.  COLFS must allege its own injury.

Recent cases tackling APR treatment, and speech about APR, cannot help Plaintiff here.  The key distinction is that plaintiffs in these other cases have actually alleged making statements that could become the focal point of enforcement, and courts therefore found the standing requirement to be met.  *See, e.g.*, *Nat'l Inst. for Fam. and Life Advocates v. James*, 2024 WL 3904870, at *6 (W.D.N.Y. Aug. 22, 2024) (plaintiffs made specific statements about APR that "mirror statements against which the Attorney General has already taken enforcement action"); *Nat'l Inst. for Fam. and Life Advocates v. Clark*, 2024 WL 3027983, at *4 (D. Vt. June 14, 2024) (plaintiffs "plausibly stated" that they "advertise their services in a way that could fall within the ambit of the advertising provision"); *Bella Health and Wellness v. Weiser*, 699 F. Supp. 3d 1189, 1199 (D. Colo. 2023) (plaintiffs' use of phrases, including "life-affirming health care," could make them vulnerable to enforcement action); *Nat'l. Inst. for Fam. and Life Advocates v. Raoul*, 685 F. Supp. 3d 688, 698-99 (N.D. Ill. 2023) (plaintiffs in their complaint "showed their intentions to engage in conduct that would arguably be affected by [the state law]").

For example, in *Raoul*, plaintiffs alleged five specific statements they made that were ostensibly proscribed by the state law.  Complaint ¶ 128, *Raoul,* 685 F. Supp. 3d 688 (N.D. Ill. 2023) (No. 23-cv-50279).  Here, again, COLFS does not identify any specific statements that it has made, or will make, that would suggest it is vulnerable to future enforcement actions.

**C. Abstention and failure to state a claim**

Because the Court has concluded that dismissal based on lack of standing is appropriate, it will not adjudicate the other grounds for stay and dismissal that were brought by the Defendant.

## CONCLUSION

Based on the foregoing reasons, the Court GRANTS Defendant's motion to dismiss with leave to amend. The Court finds that COLFS may be able to cure the above deficiencies by amending the Complaint. The Court therefore GRANTS COLFS leave to file an amended complaint within seven (7) days of the date of this order.

**IT IS SO ORDERED.**

Dated: November 12, 2024

Hon. Gonzalo P. Curiel
United States District Judge