Charles S. LiMandri, SBN 110841
  cslimandri@limandri.com
Paul M. Jonna, SBN 265389
  pjonna@limandri.com
Jeffrey M. Trissell, SBN 292480
  jtrissell@limandri.com
LiMANDRI & JONNA LLP
P.O. Box 9120
Rancho Santa Fe, CA 92067
Telephone: (858) 759-9930
Facsimile: (858) 759-9938

Thomas Brejcha, *pro hac vice*\*
  tbrejcha@thomasmoresociety.org
Peter Breen, *pro hac vice*\*
  pbreen@thomasmorsociety.org
THOMAS MORE SOCIETY
309 W. Washington St., Ste. 1250
Chicago, IL 60606
Tel: (312) 782-1680
\*Application forthcoming

*Attorneys for Plaintiff Culture of Life Family Services, Inc.*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CULTURE OF LIFE FAMILY SERVICES, INC. a California nonprofit corporation,<br><br>              Plaintiff,<br><br>     v.<br><br>ATTORNEY GENERAL ROB BONTA, in his official capacity as the California Attorney General,<br><br>              Defendant. | Case No.: 3:24-cv-1338-GPC-KSC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Judge:      Hon. Gonzalo P. Curiel<br>Location:  Courtroom: 2D<br>Date:      January 10, 2025<br>Time:      1:30 p.m.<br><br>Action Filed: July 30, 2024 |

# TABLE OF CONTENTS

INTRODUCTION .................................................................................. 1

FACTUAL BACKGROUND ................................................................ 1

    A.    Plaintiff Culture of Life Family Services ............................ 1

    B.    The Abortion Pill Regimen .................................................. 1

    C.    The Development of Abortion Pill Reversal ....................... 2

    D.    The Attacks Against Abortion Pill Reversal ...................... 3

    E.    The Chilling of COLFS's Constitutional Rights ................ 5

LEGAL STANDARD .......................................................................... 6

ARGUMENT ....................................................................................... 7

    I.    COLFS is Likely to Succeed on the Merits ....................... 7

        A.    Applying the UCL and FAL to COLFS's Provision of Abortion Pill Reversal Would Violate the Free Speech Clause........................................................... 8

            1.    Legal Background on the Free Speech Clause & the Commercial Speech Doctrine............................. 8

            2.    Legal Background on Permissible Restrictions Under the Commercial Speech Doctrine ...................... 9

                a.    Purely Fraudulent Speech.................................... 9

                b.    *Zauderer* Rational Basis Review...........................10

                c.    *Central Hudson* Intermediate Scrutiny. ............. 11

                d.    Strict Scrutiny.....................................................12

            3.    Application of the Free Speech Principles....................13

                a.    COLFS's Speech Is Noncommercial and Regulating It Fails Strict Scrutiny................13

                b.    COLFS's Speech Is Protected Regardless Under Both *Zauderer* and *Central Hudson*......................................................15

        B.    Applying the UCL and FAL to COLFS's Provision of Abortion Pill Reversal Would Violate the Free Exercise Clause........................................................ 17

i

1               1.    Legal Background on the Free Exercise Clause .............17

2               2.    Application of the Free Exercise Principles....................19

3       C.    Applying the UCL and FAL to COLFS's Provision
   of Abortion Pill Reversal Would Violate Substantive
4           Due Process. ...............................................................................21

5               1.    Legal Background on the Right of Procreation .............21

6               2.    Application of the Substantive Due Process
7                   Principles ...................................................................................23

8   II.    The Other Injunction Factors Favor Plaintiff................................... 24

9   III.    The Court Should Dispense with a Bond Requirement.....................25

10 CONCLUSION..................................................................................................25

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMO. OF POINTS & AUTHORITIES ISO
PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

1

# TABLE OF AUTHORITIES

2 **Cases**

3  *303 Creative LLC v. Elenis*,
4    600 U.S. 570 (2023) ......................................................................... 8

5  *44 Liquormart Inc. v. Rhode Island*,
     517 U.S. 484 (1996) ....................................................................... 16

6  *Akron v. Akron Ctr. for Reprod. Health, Inc.*,
7    462 U.S. 416 (1983) ....................................................................... 24

8  *All-Options, Inc. v. Att'y Gen. of Ind.*,
9    546 F. Supp. 3d 754 (S.D. Ind. 2021) ............................................... 3

10 *Am. Acad. of Pediatrics v. Lungren*,
     16 Cal. 4th 307 (1997) .................................................................. 23

11 *Am. Beverage Ass'n v. San Francisco*,
12   916 F.3d 749 (9th Cir. 2019) ........................................................ 10

13 *Am. Med. Ass'n v. Stenehjem*,
14   412 F. Supp. 3d 1134 (D.N.D. 2019) ............................................... 4

15 *Ariix, LLC v. NutriSearch Corp.*,
     985 F.3d 1107 (9th Cir. 2021) ........................................................ 8

16 *Bacon v. Woodward*,
17   104 F.4th 744 (9th Cir. 2024) ...................................................... 18

18 *Baird v. Bonta*,
19   81 F.4th 1036 (9th Cir. 2023) ................................................ 24, 25

20 *Bella Health & Wellness v. Weiser*,
     699 F. Supp. 3d 1189 (D. Colo. 2023) .................................. 4, 20, 21

21 *Berea Coll. v. Kentucky*,
22   211 U.S. 45 (1908) ....................................................................... 21

23 *Bernardo v. Planned Parenthood Fed'n of Am.*,
24   115 Cal. App. 4th 322 (2004) .................................................. 14, 16

25 *Bible Club v. Placentia-Yorba Linda Sch. Dist.*,
     573 F. Supp. 2d 1291 (C.D. Cal. 2008) .......................................... 25

26 *Bigelow v. Virginia*,
27   421 U.S. 809 (1975) ..................................................................... 14

28

# TABLE OF AUTHORITIES—Cont.

**Cases (Cont.)**

*Boardman v. Pac. Seafood Grp.*,
   822 F.3d 1011 (9th Cir. 2016) ................................................................. 7

*Boerne v. Flores*,
   521 U.S. 507 (1997) ............................................................................. 12

*Bolger v. Youngs Drug Prod. Corp.*,
   463 U.S. 60 (1983) ................................................................................. 9

*Brown v. Entm't Merchs. Ass'n*,
   564 U.S. 786 (2011) ................................................................12, 13, 15

*Cal. Chamber of Com. v. Council for Educ. & Rsch. on Toxics*,
   29 F.4th 468 (9th Cir. 2022) .......................................7, 10, 16, 17

*Cal. Med. Ass'n, Inc. v. Univ. of Cal.*,
   79 Cal. App. 4th 542 (2000) .............................................................. 19

*Carey v. Population Servs., Int'l*,
   431 U.S. 678 (1977) ...................................................................... 23, 24

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999) ....................................................................... 19

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*,
   447 U.S. 557 (1980) ...................................................... 8, 9, 11, 15, 16

*Chavez v. Citizens for a Fair Farm Lab. Law*,
   84 Cal. App. 3d 77 (1978) ................................................................. 19

*Church of Lukumi Babalu Aye, Inc. v. Hialeah*,
   508 U.S. 520 (1993) ........................................................................... 18

*Comm. to Def. Reprod. Rts. v. Myers*,
   29 Cal. 3d 252 (1981) ....................................................................1, 16

*Cruzan v. Mo. Dep't of Health*,
   497 U.S. 261 (1990) ........................................................................... 22

*CTIA-Wireless Ass'n v. Berkeley*,
   158 F. Supp. 3d 897 (N.D. Cal. 2016) ............................................. 10

*CTIA–Wireless Ass'n v. San Francisco*,
   494 Fed. Appx. 752 (9th Cir.2012) ................................................. 10

# TABLE OF AUTHORITIES—Cont.

**Cases (Cont.)**

*Dep't of State v. Muñoz,*
602 U.S 899 (2024) ........................................................................................... 23

*Diamontiney v. Borg,*
918 F.2d 793 (9th Cir. 1990) ............................................................................... 7

*Dobbs v. Jackson Women's Health Org.,*
597 U.S. 215 (2022) .............................................................................. 1, 4, 22

*Doe v. Bolton,*
410 U.S. 179 (1973) ......................................................................................... 23

*Does 1-11 v. Univ. of Colo.,*
100 F.4th 1251 (10th Cir. 2024) ........................................................................ 7

*Eisenstadt v. Baird,*
405 U.S. 438 (1972) ............................................................................. 13, 22, 23

*Emp. Div. v. Smith,*
494 U.S. 872 (1990) ......................................................................................... 18

*Erotic Serv. Provider Legal Educ. & Rsch. Project v. Gascon,*
880 F.3d 450 (9th Cir. 2018) ........................................................................... 15

*Express Oil Change, LLC v. Miss. Bd. of Licensure,*
916 F.3d 483 (5th Cir. 2019) ............................................................................. 9

*Farrington v. Tokushige,*
11 F.2d 710 (9th Cir. 1926) ............................................................................. 21

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.,*
82 F.4th 664 (9th Cir. 2023) ................................................... 6, 7, 18, 24, 25

*Frankel v. Univ. of Cal.,*
No. 2:24-cv-4702, 2024 WL 3811250 (C.D. Cal. Aug. 13, 2024) ................... 25

*Fulton v. Philadelphia,*
593 U.S. 522 (2021) ......................................................................................... 18

*Girouard v. United States,*
328 U.S. 61 (1946) ........................................................................................... 17

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal,*
546 U.S. 418 (2006) ........................................................................................... 7

1

## TABLE OF AUTHORITIES—Cont.

2 **Cases (Cont.)**

3  *Green v. Miss U.S.A., LLC*,
4        52 F.4th 773 (9th Cir. 2022) .............................................................. 12

5  *Griswold v. Connecticut*,
        381 U.S. 479 (1965) ........................................................ 13, 21, 22, 23
6
  *Health Freedom Def. Fund, Inc. v. Carvalho*,
7        104 F.4th 715 (9th Cir. 2024) ................................................... 22, 23

8  *Hunt v. Los Angeles*,
9        638 F.3d 703 (9th Cir. 2011) .................................................................. 9

10  *Illinois v. Telemarketing Assocs., Inc.*,
        538 U.S. 600 (2003) .......................................................................... 15
11
  *Italian Colors Rest. v. Becerra*,
12        878 F.3d 1165 (9th Cir. 2018) ............................................................ 11

13  *Jacobson v. Massachusetts*,
14        197 U.S. 11 (1905) .......................................................................... 22

15  *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*,
        585 U.S. 878 (2018) ................................................................... 13, 14
16
  *Johnson v. Calvert*,
17        5 Cal. 4th 84 (1993) ..................................................................... 1, 16

18  *Jorgensen v. Cassiday*,
19        320 F.3d 906 (9th Cir. 2003) ............................................................ 25

20  *Junior Sports Mags. Inc. v. Bonta*,
        80 F.4th 1109 (9th Cir. 2023) ................................................ 11, 16, 17, 24
21
  *Kennedy v. Bremerton Sch. Dist.*,
22        597 U.S. 507 (2022) .......................................................................... 18

23  *Lifchez v. Hartigan*,
24        735 F. Supp. 1361 (N.D. Ill. 1990) .................................................... 23

25  *Loffman v. Cal. Dep't of Educ.*,
        119 F.4th 1147 (9th Cir. 2024) .......................................................... 19
26
  *Masterpiece Cakeshop v. Colo. C.R. Comm'n*,
27        584 U.S. 617 (2018) .......................................................................... 20

28

vi

# TABLE OF AUTHORITIES—Cont.

**Cases (Cont.)**

*Meyer v. Nebraska*,
  262 U.S. 390 (1923)............................................................. 21

*Molko v. Holy Spirit Ass'n*,
  46 Cal. 3d 1092 (1988)........................................................ 19

*Nat'l Ass'n of Wheat Growers v. Bonta*,
  85 F.4th 1263 (9th Cir. 2023) .........................................10, 17

*Nat'l Comm. of Reform Party of U.S. v. Democratic Nat'l Comm.*,
  168 F.3d 360 (9th Cir. 1999)............................................... 20

*Nat'l Inst. of Fam. & Life Advocs. v. Becerra*,
  585 U.S. 755 (2018).....................................................*passim*

*Nat'l Inst. of Fam. & Life Advocs. v. Clark*,
  No. 2:23-cv-229, 2024 WL 3027983 (D. Vt., June 14, 2024)......................... 14

*Nat'l Inst. of Fam. & Life Advocs. v. James*,
  No. 1:24-cv-514, 2024 WL 3904870 (W.D.N.Y. Aug. 22, 2024) .......... 4, 14, 15

*Nat'l Inst. of Fam. & Life Advocs. v. Raoul*,
  685 F. Supp. 3d 688 (N.D. Ill. 2023)................................... 14

*Nat'l Rifle Ass'n of Am. v. Vullo*,
  602 U.S. 175 (2024)............................................................8

*NetChoice, LLC v. Bonta*,
  113 F.4th 1101 (9th Cir. 2024) ....................................*passim*

*O'Connor v. Superior Ct.*,
  177 Cal. App. 3d 1013 (1986) ............................................ 19

*Obergefell v. Hodges*,
  576 U.S. 644 (2015) ............................................................22

*ONY, Inc. v. Cornerstone Therapeutics, Inc.*,
  720 F.3d 490 (2d Cir. 2013) ............................................... 17

*Paul v. Watchtower Bible & Tract Soc. of N.Y., Inc.*,
  819 F.2d 875 (9th Cir. 1987).........................................12, 19

*Planned Parenthood Ariz., Inc. v. Humble*,
  753 F.3d 905 (9th Cir. 2014).............................................24

1

# TABLE OF AUTHORITIES—Cont.

2

**Cases (Cont.)**

3

*Planned Parenthood Ass'n of Utah v. Matheson*,

4

582 F. Supp. 1001 (D. Utah 1983) ................................................. 24

5

*Planned Parenthood of Central Mo. v. Danforth*,

428 U.S. 52 (1976) ........................................................................ 24

6

*Planned Parenthood of Tenn. & N. Miss. v. Slatery*,

7

523 F. Supp. 3d 985 (M.D. Tenn. 2021) ...................................... 3, 4

8

*Planned Parenthood of Wis., Inc. v. Schimel*,

9

806 F.3d 908 (7th Cir. 2015) ........................................................ 24

10

*Reed v. Town of Gilbert*,

576 U.S. 155 (2015) ........................................................................ 8

11

*Retail Digital Network, LLC v. Prieto*,

12

861 F.3d 839 (9th Cir. 2017) ........................................................ 11

13

*Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*,

14

487 U.S. 781 (1988) ........................................................................ 9

15

*Rochin v. California*,

342 U.S. 165 (1952) ...................................................................... 22

16

*Roman Cath. Diocese of Brooklyn v. Cuomo*,

17

592 U.S. 14 (2020) ........................................................................ 24

18

*San Francisco v. Sainez*,

19

77 Cal. App. 4th 1302 (2000) ......................................................... 5

20

*Save Our Sonoran, Inc. v. Flowers*,

408 F.3d 1113 (9th Cir. 2005) ...................................................... 25

21

*Skinner v. Oklahoma*,

22

316 U.S. 535 (1942) .......................................................... 21, 22, 23

23

*Snyder v. Phelps*,

24

562 U.S. 443 (2011) .................................................................. 8, 14

25

*Soos v. Cuomo*,

470 F. Supp. 3d 268 (N.D.N.Y. 2020) .......................................... 20

26

*Sorrell v. IMS Health Inc.*,

27

564 U.S. 552 (2011) ............................................................ 9, 12, 14

28

1

# TABLE OF AUTHORITIES—Cont.

2

**Cases (Cont.)**

3

*Tandon v. Newsom*,

4

593 U.S. 61 (2021) ...................................................................... 18, 19

*Tingley v. Ferguson*,

5

47 F.4th 1055 (9th Cir. 2022) ............................................................ 12

6

*Torrey v. Infectious Diseases Soc'y of Am.*,

7

86 F.4th 701 (5th Cir. 2023) ............................................................. 17

8

*Trinkle v. Cal. State Lottery*,

9

71 Cal. App. 4th 1198 (1999) ............................................................ 19

*United States v. Alvarez*,

10

567 U.S. 709 (2012) ......................................................................... 15

11

*United States v. Schiff*,

12

379 F.3d 621 (9th Cir. 2004) ............................................................. 9

13

*United States v. United Foods, Inc.*,

533 U.S. 405 (2001) ........................................................................... 8

14

*Valle Del Sol Inc. v. Whiting*,

15

709 F.3d 808 (9th Cir. 2013) ........................................................... 12

16

*Vidal v. Elster*,

17

602 U.S. 286 (2024) ........................................................................ 12

18

*Waln v. Dysart Sch. Dist.*,

54 F.4th 1152 (9th Cir. 2022) ........................................................... 18

19

*Washington v. Glucksberg*,

20

521 U.S. 702 (1997) ........................................................................ 22

21

*Whalen v. Roe*,

22

429 U.S. 589 (1977) ........................................................................ 23

23

*Winter v. Nat. Res. Def. Council*,

24

555 U.S. 7 (2008) .............................................................................. 6

25

*X Corp. v. Bonta*,

116 F.4th 888 (9th Cir. 2024) .................................................*passim*

26

*Yim v. Seattle*,

27

63 F.4th 783 (9th Cir. 2023) ...................................................... 11, 12

28

MEMO. OF POINTS & AUTHORITIES ISO
PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

1

# TABLE OF AUTHORITIES — Cont.

2

**Cases (Cont.)**

3

*Zablocki v. Redhail*,

4
    434 U.S. 374 (1978) ....................................................................... 22

*Zauderer v. Off. of Disciplinary Counsel of Supreme Ct. of Oh.*,

5
    471 U.S. 626 (1985) ........................................................ 9, 10, 15, 16

6

7

**Statutes, Rules & Constitutional Provisions**

8

Cal. Bus. & Prof. Code § 17200 ................................................... 4, 19, 20

9

Cal. Bus. & Prof. Code § 17201 ......................................................... 19

10

Cal. Bus. & Prof. Code § 17206(a) ....................................................... 5

11

Cal. Bus. & Prof. Code § 17500 ................................................. 4, 5, 19, 20

12

Cal. Bus. & Prof. Code § 17506 ......................................................... 19

13

Cal. Const. art. I, § 1.1 ................................................................... 1

14

Cal. Gov. Code § 811.2 .................................................................. 19

15

Cal. Health & Saf. Code § 123467(b) ................................................... 16

16

Fed. R. Civ. P. 65(c) .................................................................... 25

17

U.S. Const. amend. XIV, § 1 ............................................................. 21

18

19

**Other Authorities**

20

Clarke D. Forsythe & Donna Harrison, *State Regulation of Chemical Abortion*

21
    *After Dobbs*, 16 Liberty U. L. Rev. 377 (2022) ..................................... 3

22

23

24

25

26

27

28

# INTRODUCTION

California has been a defender of reproductive rights longer than nearly any other state. Enshrined at the beginning of its Constitution is the statement that "[t]he state shall not deny or interfere with an individual's reproductive freedom in their most intimate decisions." Cal. Const. art. I, § 1.1. This constitutional right "does not involve a weighing of the value of abortion as against childbirth, but instead concerns the protection of either procreative choice from discriminatory governmental treatment," *Comm. to Def. Reprod. Rts. v. Myers*, 29 Cal. 3d 252, 256 (1981), and extends to "the use of reproductive technology." *Johnson v. Calvert*, 5 Cal. 4th 84, 101 (1993).

Nevertheless, in retribution for the U.S. Supreme Court "blast[ing] our nation back into the dark ages" in the *Dobbs* decision, California Attorney General Rob Bonta has decided to undertake a crusade against the exercise of reproductive rights that he disfavors. Dkt.19, Verif. First Amend. Compl., ¶77 (quoting press release).[1] To protect its own constitutional rights, and the constitutional rights of its patients, Plaintiff Culture of Life Family Services ("COLFS") now moves for a preliminary injunction.

# FACTUAL BACKGROUND

## A.    Plaintiff Culture of Life Family Services

Plaintiff COLFS "is a 501(c)(3) religious non-profit and state licensed community health clinic. In accordance with its Catholic identity, the 'primary mission of COLFS is to ensure that Christ-centered medical care and pregnancy clinic services are available to all women regardless of ability to pay.'" Verif. FAC, ¶21 (quoting website). "Consistent with its underlying commitment to the dignity of every human life, COLFS provides life-affirming medical care to every woman at risk of miscarriage," regardless of the cause of the risk. Verif. FAC, ¶130.

## B.    The Abortion Pill Regimen

A pregnant woman's body produces the hormone progesterone, which creates

---

[1] The First Amended Complaint is verified by both the CEO and Medical Director. Thus, it serves as both a factual and expert declaration. *See* Verif. FAC, pp.47-48.

changes in her body needed to nurture the growing baby. Verif. FAC, ¶22; Kraus Decl., ¶¶27-29; Valley Decl., ¶14. In the 1980s, a French pharmaceutical firm developed a drug called RU-486, which was later given the generic name mifepristone and the brand name Mifeprex. Mifepristone acts as an antiprogesterone, blocking the hormone and leading to termination of pregnancy. Verif. FAC, ¶23; Kraus Decl., ¶¶17-19; Valley Decl., ¶¶12-17.

Although mifepristone was approved for use in Europe beginning as early as 1988, it was only approved by the FDA for use in termination of pregnancy in 2000. Verif. FAC, ¶27; Valley Decl., ¶12. In 2000, the FDA approved mifepristone for use in terminating pregnancy as part of a two-drug regimen, up to 49 days gestation (7 weeks). Within 24-48 hours after taking mifepristone to terminate the fetus, a pregnant woman takes misoprostol to induce contractions and expel any products of conception. Verif. FAC, ¶25; Kraus Decl., ¶¶18, 19-2; Valley Decl., ¶¶12-13, 17. Subsequently, in 2016, the FDA made modifications to the regimen, and approved the use of mifepristone and misoprostol to terminate pregnancy up to 70 days gestation (10 weeks). Kraus Decl., ¶¶18, 42; Valley Decl., ¶12.

### C.    The Development of Abortion Pill Reversal

In 2010, COLFS's medical director, Dr. George Delgado, treated a woman at risk of losing her pregnancy because she had taken mifepristone, but later decided that she wanted to keep her baby. To reverse the effects of mifepristone, Dr. Delgado administered progesterone to the woman, who successfully carried her pregnancy to term. Goyette Decl., ¶2. A few years later, he published a small six-patient case series with four successful reversals and two failures, identifying the protocol(s) he had used. Verif. FAC, ¶37. Concluding that progesterone could successfully reverse the effects of mifepristone, in May 2012, Dr. Delgado set up a website and hotline to educate pregnant women about their option to reverse their abortions, and connect them with healthcare practitioners in their local area who could treat them. This website, hotline, and listing of practitioners was named Abortion Pill Reversal or "APR." Verif. FAC,

1  ¶43. Since its inception, this effort was undertaken by COLFS as a purely charitable
2  enterprise meant to offer women the ability to choose to maintain their pregnancies.
3  Verif. FAC, ¶¶21, 51.

4  In early 2018, Dr. Delgado and five co-authors published a much larger case
5  series, studying the results of 754 women who had attempted to reverse their medical
6  abortions using progesterone. After excluding some cases to create meaningful
7  controls, the authors identified two protocols (oral capsule and intramuscular injection)
8  with 64% and 68% success rates. Verif. FAC, ¶39. Also in early 2018, because of the
9  growth of Abortion Pill Reversal, COLFS decided to transfer control of it for the
10  nominal sum of $1 to Heartbeat International, Inc., a trade organization for pro-life
11  pregnancy resource organizations that could manage it out of its call center. Verif. FAC,
12  ¶44. Heartbeat then began preparing fact sheets and other best practice materials to
13  educate its members about APR. Verif. FAC, ¶¶45-50.

14  Since Dr. Delgado first devised the Abortion Pill Reversal protocol, numerous
15  independent researchers have produced their own case studies confirming his results
16  or have published literature reviews confirming its safety. Verif. FAC, ¶¶36-40. It was
17  further discovered that when the FDA first approved mifepristone, it had studied the
18  effect of progesterone and concluded "the abortifacient activity of RU 486 is
19  antagonized by progesterone allowing for normal pregnancy and delivery." Verif.
20  FAC, ¶27 (emphasis omitted).

21  **D.  The Attacks Against Abortion Pill Reversal**

22  Following the development of Abortion Pill Reversal, twelve states passed
23  statutes requiring information about it be included in the informed consent process for
24  an elective abortion. *See* Clarke D. Forsythe & Donna Harrison, *State Regulation of*
25  *Chemical Abortion After Dobbs*, 16 Liberty U. L. Rev. 377, 406-08 (2022). Several of
26  these statutes were quickly challenged by abortion providers, who obtained Free
27  Speech-based preliminary injunctions against them. *See All-Options, Inc. v. Att'y Gen. of*
28  *Ind.*, 546 F. Supp. 3d 754 (S.D. Ind. 2021); *Planned Parenthood of Tenn. & N. Miss. v.*

*Slatery*, 523 F. Supp. 3d 985 (M.D. Tenn. 2021); *Am. Med. Ass'n v. Stenehjem*, 412 F. Supp. 3d 1134 (D.N.D. 2019).

However, when Colorado passed a statute prohibiting Abortion Pill Reversal, and New York attempted to prosecute Abortion Pill Reversal, the courts similarly issued First Amendment-based preliminary injunctions against those efforts. *See Nat'l Inst. of Fam. & Life Advocs. v. James*, No. 1:24-cv-514, 2024 WL 3904870 (W.D.N.Y. Aug. 22, 2024); *Bella Health & Wellness v. Weiser*, 699 F. Supp. 3d 1189 (D. Colo. 2023). The theme running through all cases was that the Free Speech clause prohibits government efforts to censor speech for or against Abortion Pill Reversal.

In September 2023, California Attorney General Rob Bonta decided to launch his own attack on Abortion Pill Reversal—his first lawsuit as part of his renewed emphasis on protecting reproductive rights following the issuance of *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022). Verif. FAC, ¶¶1, 5-13, 74-83. In that action, AG Bonta targeted Heartbeat International, Inc. and RealOptions, Inc. As stated above, Heartbeat is a trade organization for pro-life pregnancy resource centers that operates the Abortion Pill Reversal Network. RealOptions is a pro-life community health clinic based in the Bay Area, operating out of several locations. Verif. FAC, ¶¶9-10, 82-83; *see* Goyette Decl., Ex.A, Complaint. In the lawsuit, AG Bonta alleges that Heartbeat and RealOptions have violated California's Unfair Competition Law ("UCL") and False Advertising Law ("FAL") when they speak truthfully about Abortion Pill Reversal. *See* Goyette Decl., ¶3 & Ex.A (citing Cal. Bus. & Prof. Code §§ 17200, 17500).

The *People v. Heartbeat* Complaint contains several discrete categories of information that AG Bonta contends are fraudulent to repeat either on websites or in individual interactions with patients. *See* Goyette Decl., Ex.A, ¶¶97, 100-01. These include: (1) that Abortion Pill Reversal is "effective" at "revers[ing]" a medical abortion, leading to thousands of lives saved; (2) that the standard Abortion Pill Reversal protocol has been shown to have a 64-68% success rate and no increased risk

of birth defects (via primarily the 2018 Delgado study); and (3) that Abortion Pill Reversal may still be effective in non-standard situations (such as more than 72-hours after taking mifepristone, or after taking misoprostol or methotrexate). The Complaint also alleges that it is fraudulent to fail to mention (4) that Abortion Pill Reversal may lead to life-threatening bleeding. *See id.* The Complaint alleges that Heartbeat and RealOptions made these misrepresentations on their websites, in individual interactions with clients or patients, and on pro-life podcasts. *See id.* at ¶¶49-95.

The Complaint does not allege that any woman has been deceived or harmed by Heartbeat's or RealOptions's purely charitable speech about Abortion Pill Reversal, and thus does not seek restitution or damages. *See* Verif. FAC, ¶¶99-101. Rather, the Complaint solely seeks civil penalties for unfair business practices and misleading advertising—up to $5,000 per incident. *See* Cal. Bus. & Prof. Code §§ 17206(a), 17500. Weighing against a lenient fine is a defendant's choice to continue with his allegedly illegal conduct during the litigation. *San Francisco v. Sainez*, 77 Cal. App. 4th 1302, 1316 (2000) (referencing $9.5 million fine).

### E.    The Chilling of COLFS's Constitutional Rights

As stated above, COLFS's medical director George Delgado originally developed the concept of Abortion Pill Reversal. Verif. FAC, ¶¶32, 43. Thus, unsurprisingly, COLFS has personally participated in approximately 100 successful Abortion Pill Reversal attempts. Verif. FAC, ¶51. COLFS also discusses Abortion Pill Reversal on its websites. This includes generic statements such as that "[t]he abortion pill can be reversed," Goyette Decl., Ex.B, "Types of Abortion" Page; Ex.C, "Abortion Pill Reversal" Page, and pages with success stories—which necessarily imply effectiveness of the protocol. Goyette Decl., Ex.D, "Stacy's Testimony" Page. COLFS also frequently discusses Abortion Pill Reversal in other contexts, such as its annual Gala. *See* Goyette Decl., Exs.E, F & G, Transcripts.

The websites also include more detailed information, such as the lack of increased risk of birth defects and the success rates. *See* Goyette Decl., Ex.H,

1  "Abortion Pill Rescue FAQs" Page. The websites also specifically request that women
2  still reach out if they are in a non-standard situation, because "[i]t may not be too late"
3  or "[y]ou may still be pregnant." Goyette Decl., Ex.H. Although COLFS does not
4  include any specific representations about non-standard situations on its websites,
5  "[c]onsistent with its underlying commitment to the dignity of every human life,
6  COLFS [has continued to] provide[] life-affirming medical care to every woman at risk
7  of miscarriage"—regardless of the cause or nature of the risk. Verif. FAC, ¶130. This
8  potentially subjects COLFS to ruinous fines. Verif. FAC, ¶101.

9      Worried that they too may be subject to civil enforcement actions, and unwilling
10 to cease offering to help women despite the threat of ruinous fines, various pro-life
11 pregnancy resource centers have filed lawsuits, including Plaintiff COLFS in San Diego
12 County and health clinics in Los Angeles County. *See* Dkt.1, Verif. Compl.; Dkt.11,
13 Notice of Related Case. Despite the threat represented by the *People v. Heartbeat*
14 litigation, COLFS is religiously mandated to continue helping women. Thus, COLFS
15 now moves for a preliminary injunction.

## LEGAL STANDARD

17     A plaintiff seeking a preliminary injunction must establish (1) that it is likely to
18 succeed on the merits, (2) that it is likely to suffer irreparable harm without injunctive
19 relief, (3) that the balance of harms tips in its favor, and (4) that a preliminary
20 injunction is in the public interest. *Fellowship of Christian Athletes v. San Jose Unified*
21 *Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 683-84 (9th Cir. 2023) ("*FCA*") (en banc) (citing
22 *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008)). The Ninth Circuit applies a
23 "sliding scale" approach such that "[w]hen the balance of equities tips sharply in the
24 plaintiff's favor, the plaintiff must raise only serious questions on the merits—a lesser
25 showing than likelihood of success." *Id.* (cleaned up). Showing the likelihood that a
26 First Amendment violation occurred by itself almost always warrants a preliminary
27 injunction, as deprivation of a constitutional right for any amount of time causes
28 irreparable injury and is against the public interest. *X Corp. v. Bonta*, 116 F.4th 888,

903-04 (9th Cir. 2024) ("[E]ven undeniably admirable goals must yield when they collide with the Constitution." (cleaned up)).

With respect to the equitable factors, "the injury need not have been inflicted when application is made"; rather, a showing of "irreparable injury *before trial* is an adequate basis" for granting of the motion. *Diamontiney v. Borg*, 918 F.2d 793, 795 (9th Cir. 1990) (emphasis added). Thus, the analysis is not whether there "is *immediate* danger," but whether the plaintiff may suffer irreparable harm before trial and a permanent injunction can be entered. *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1023 (9th Cir. 2016) (original emphasis).

## ARGUMENT

### I.    COLFS is Likely to Succeed on the Merits

"When evaluating likelihood of success on the merits, … [i]f the moving party is likely to succeed on each of several theories, the party's argument for preliminary relief is stronger than if the party has only one claim that is likely to be viable." *Does 1-11 v. Univ. of Colo.*, 100 F.4th 1251, 1267 (10th Cir. 2024). Thus, the court may "consider all of a moving party's potential paths to success on the merits." *Id.*; *cf. FCA*, 82 F.4th at 686 (addressing "all three" arguments).

"[T]he burdens at the preliminary injunction stage track the burdens at trial." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006). "Therefore, in the First Amendment context, the moving party bears the initial burden of making a colorable claim that its First Amendment rights have been infringed, or are threatened with infringement, at which point the burden shifts to the government to justify the restriction." *Cal. Chamber of Com. v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468, 478 (9th Cir. 2022). Here, as explained below, COLFS is likely to succeed on all of its claims.

///

///

///

**A.  Applying the UCL and FAL to COLFS's Provision of Abortion Pill Reversal Would Violate the Free Speech Clause.**

**1.  *Legal Background on the Free Speech Clause & the Commercial Speech Doctrine***

"The First Amendment, applicable to the States through the Fourteenth Amendment, prohibits laws that abridge the freedom of speech." *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 585 U.S. 755, 766 (2018) ("*NIFLA v. Becerra*"). "The framers … [saw] freedom of speech both as an end and as a means. An end because the freedom to think and speak is among our inalienable human rights. A means because the freedom of thought and speech is indispensable to the discovery and spread of political truth." *303 Creative LLC v. Elenis*, 600 U.S. 570, 584-85 (2023) (cleaned up). Thus, "speech concerning public affairs is more than self-expression; it is the essence of self-government," *Snyder v. Phelps*, 562 U.S. 443, 452 (2011), and restrictions on speech are "uniquely harmful to a free and democratic society." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 187 (2024).

The government "has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (citation omitted). Such regulations "are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests," i.e., strict scrutiny. *Id.* However, commercial speech is subject to lesser scrutiny. *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 566 (1980). "Commercial speech is 'usually defined as speech that does no more than propose a commercial transaction.'" *X Corp.*, 116 F.4th at 901 (quoting *United States v. United Foods, Inc.*, 533 U.S. 405, 409 (2001)). "Courts view this definition as just a starting point, however, and instead try to give effect to a 'common-sense distinction' between commercial speech and other varieties of speech." *Id.* (quoting *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1115 (9th Cir. 2021)). Thus the "crux" when determining whether speech is commercial is whether "economic benefit was the primary purpose for speaking." *Ariix*, 985 F.3d at 1117.

Further, "speech [does not] retain[] its commercial character when it is inextricably intertwined with otherwise fully protected speech." *NetChoice, LLC v. Bonta*, 113 F.4th 1101, 1120 (9th Cir. 2024) (quoting *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 796 (1988)).

"Where the facts present a close question, 'strong support' that the speech should be characterized as commercial speech is found where [1] the speech is an advertisement, [2] the speech refers to a particular product, and [3] the speaker has an economic motivation." *X Corp.*, 116 F.4th at 900 (quoting *Hunt v. Los Angeles*, 638 F.3d 703, 715 (9th Cir. 2011)). But "[t]he mere fact that a business may earn revenue from its services is 'insufficient by itself' to render its opinions about those services 'commercial.'" *NetChoice*, 113 F.4th at 1120 (quoting *Bolger v. Youngs Drug Prod. Corp.*, 463 U.S. 60, 67 (1983)). Even if the speech is commercial, strict scrutiny applies when the government restricts speech "because of disagreement with the message it conveys." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 566-67 (2011).

### 2. Legal Background on Permissible Restrictions Under the Commercial Speech Doctrine

There are four potential tests for reviewing commercial speech: (1) no protection for fraudulent speech; (2) *Zauderer* rational basis review; (3) *Central Hudson* intermediate scrutiny; and (3) strict scrutiny. Each is discussed below.

#### a. Purely Fraudulent Speech.

First, "[i]f commercial speech is misleading or related to illegal activity, it is not entitled to [any] protection." *NetChoice*, 113 F.4th at 1119 (citing *Cent. Hudson*, 447 U.S. at 563-64). Stated differently, "pure commercial speech can be enjoined to the extent that it is fraudulent." *United States v. Schiff*, 379 F.3d 621, 626 (9th Cir. 2004). But this test only applies to "[c]ommercial statements that are actually or inherently misleading," not "[s]tatements that are only *potentially* misleading." *Express Oil Change, LLC v. Miss. Bd. of Licensure*, 916 F.3d 483, 488 (5th Cir. 2019).

///

**b.    Zauderer *Rational Basis Review.***

Second, "laws that compel the disclosure of 'purely factual and uncontroversial' commercial speech, … are subject to a form of rational basis review," *NetChoice*, 113 F.4th at 1119, that is derived from *Zauderer v. Off. of Disciplinary Counsel of Supreme Ct. of Oh.*, 471 U.S. 626, 651 (1985), and was reaffirmed in *NIFLA v. Becerra*, 585 U.S. at 776-79. Although this review is "akin to a rational basis test," it is also distinct. *X Corp.*, 116 F.4th at 900 (quoting *Nat'l Ass'n of Wheat Growers v. Bonta*, 85 F.4th 1263, 1266 (9th Cir. 2023)). "The *Zauderer* test, as applied in *NIFLA*, contains three inquiries: whether the notice is (1) purely factual, (2) noncontroversial, and (3) not unjustified or unduly burdensome." *Am. Beverage Ass'n v. San Francisco*, 916 F.3d 749, 756 (9th Cir. 2019) (en banc). With respect to "purely factual," this inquiry "goes to the difference between a 'fact' and an 'opinion.'" *CTIA-Wireless Ass'n v. Berkeley*, 158 F. Supp. 3d 897, 904 (N.D. Cal. 2016) (citing *CTIA–Wireless Ass'n v. San Francisco*, 494 Fed. Appx. 752, 753-54 (9th Cir.2012)).

With respect to "controversial," "the topic of the disclosure and its effect on the speaker is probative of determining whether something is subjectively controversial." *Nat'l Ass'n of Wheat Growers*, 85 F.4th at 1277. By the "effect on the speaker," the test means that it is "controversial" to force a speaker "to convey a message fundamentally at odds with their businesses." *Id.* at 1278 (cleaned up). A "robust disagreement by reputable scientific sources" makes a claim controversial. *Cal. Chamber of Com.*, 29 F.4th at 478; *accord Nat'l Ass'n of Wheat Growers*, 85 F.4th at 1278 ("saying that something … has serious deleterious health effects—without a strong scientific consensus that it does—remains controversial.").

And with respect to "unduly burdensome," this analysis looks at whether the restriction "is unduly burdensome when balanced against its likely burden on protected speech." *Am. Beverage Ass'n*, 916 F.3d at 757. Unlike traditional rational basis review, the government "has the burden of proving that the warning is neither unjustified nor unduly burdensome." *Id.*; *accord NIFLA v. Becerra*, 585 U.S. at 777.

### c.    **Central Hudson** *Intermediate Scrutiny.*

Third, if the speech regulation is not purely factual, controversial, or unduly burdensome, "courts must apply a form of intermediate scrutiny by asking [1] 'whether the asserted governmental interest is substantial,' [2] 'whether the regulation directly advances the governmental interest asserted,' and [3] 'whether [the law] is not more extensive than is necessary to serve that interest.'" *NetChoice*, 113 F.4th at 1119 (quoting *Cent. Hudson*, 447 U.S. at 566). The government's "burden under this test is heavy, and the [government] cannot satisfy it by mere speculation or conjecture." *Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1176 (9th Cir. 2018) (cleaned up).

"[S]imply having a substantial interest does not validate the state's" regulation of speech. *Junior Sports Mags. Inc. v. Bonta*, 80 F.4th 1109, 1117 (9th Cir. 2023). Rather, "a state seeking to justify a restriction on commercial speech bears the burden to prove that its law directly advances that interest to a material degree." *Id.* "To satisfy its burden, California must provide evidence establishing that the harms it recites are real, and that its speech restriction will '*significantly*' alleviate those harms. *Id.* (cleaned up); *see also Retail Digital Network, LLC v. Prieto*, 861 F.3d 839, 851 (9th Cir. 2017) (en banc). Further, "a statute cannot meaningfully advance the government's stated interests if it contains exceptions that undermine and counteract those goals." *Yim v. Seattle*, 63 F.4th 783, 794 (9th Cir. 2023) (cleaned up). Thus, "[o]ne consideration in the direct advancement inquiry is underinclusivity." *Id.*

Even if the speech restriction serves a substantial interest, "the government [must] show a reasonable fit between the means and ends of the regulatory scheme, such that the 'suppression of speech ordinarily protected by the First Amendment is no more extensive than necessary to further the State's interest." *Junior Sports Mags.*, 80 F.4th at 1119 (cleaned up). So if the Government could achieve its interests in a manner that does not restrict speech, or that restricts less speech, the Government must do so." *Id.* (cleaned up). The restriction on speech "should not be

1  *overinclusive*," *Valle Del Sol Inc. v. Whiting*, 709 F.3d 808, 825 (9th Cir. 2013), so

2  "[i]n considering the fit between the legislature's ends and the means chosen to

3  accomplish those ends, the fit must not necessarily be the least restrictive means, but

4  reasonable and through a means narrowly tailored to achieve the desired objective."

5  *Yim*, 63 F.4th at 796 (cleaned up).

### d.    *Strict Scrutiny.*

7  Lastly, even if the speech is commercial, strict scrutiny applies when the

8  government restricts speech "because of disagreement with the message it conveys,"

9  *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 566-67 (2011), or seeks to "compels speech

10  with a particular message about controversial issues." *NetChoice*, 113 F.4th at 1121. To

11  satisfy "strict scrutiny," government policies must be "narrowly tailored to serve

12  compelling state interests." *Vidal v. Elster*, 602 U.S. 286, 293 (2024); *see X Corp.*, 116

13  F.4th at 900. Satisfaction of this test is rare, and requires "the gravest abuses,

14  endangering paramount interests." *Paul v. Watchtower Bible & Tract Soc. of N.Y., Inc.*,

15  819 F.2d 875, 882 (9th Cir. 1987). Typically, governments may suppress obscenity,

16  incitement to violence, and fighting words but little else, *see Brown v. Entm't Merchs.*

17  *Ass'n*, 564 U.S. 786, 790-91 (2011); *Tingley v. Ferguson*, 47 F.4th 1055, 1079-80 (9th

18  Cir. 2022), and it is the government that must satisfy the test—not the plaintiff. *See*

19  *NIFLA v. Becerra*, 585 U.S. at 774-75 (faulting government for lack of evidence).

20  Strict scrutiny is "the most demanding test known to constitutional law."

21  *Boerne v. Flores*, 521 U.S. 507, 534 (1997). Even when the government has identified a

22  problem, the restriction "must be actually necessary to the solution," for the

23  "government does not have a compelling interest in each marginal percentage point by

24  which its goals are advanced." *Brown*, 564 U.S. at 799, 803 n.9. The government may

25  not assert generally that it has an interest in preventing "serious mental, financial, and

26  emotional harm on [pregnant] individuals," but must show that denying an exception

27  here is actually necessary to achieve that goal. *Green v. Miss U.S.A., LLC*, 52 F.4th 773,

28  791-92 (9th Cir. 2022). Further, "because [the government] bears the risk of

1  uncertainty, ambiguous proof will not suffice." *Brown*, 564 U.S. at 799-800.

2  **3.    *Application of the Free Speech Principles***

3  Here, as stated above, AG Bonta contends that it is fraudulent to affirmatively

4  represent that: (1) Abortion Pill Reversal is effective; (2) the 2018 Delgado study shows

5  a 64-68% success rate and no increased risk of birth defects; and (3) that it may be

6  effective in non-standard situations. AG Bonta also contends that it is fraudulent to

7  offer Abortion Pill Reversal (4) without telling women that it is potentially life-

8  threatening. *See* §D, *supra*. If COLFS's speech is noncommercial, then the

9  government bears the burden of satisfying strict scrutiny. *X Corp.*, 116 F.4th at 903. If it

10  is commercial, then a lesser review is appropriate. However, as explained below, AG

11  Bonta's prosecution fails any level of review.

12  **a.    *COLFS's Speech Is Noncommercial and Regulating***
13  **     *It Fails Strict Scrutiny.***

14  COLFS's speech about APR is definitionally noncommercial. COLFS is a

15  religious nonprofit whose "mission … is to ensure that Christ-centered medical care

16  and pregnancy clinic services are available to all women regardless of ability to pay."

17  Verif. FAC, ¶21. Thus, COLFS provides numerous free services, including free

18  pregnancy care, and free APR treatment. Verif. FAC, ¶¶19, 51. COLFS's patients have

19  a right to hear COLFS's message about APR, *see Griswold v. Connecticut*, 381 U.S. 479,

20  482 (1965), and COLFS has standing to assert their interests. *See Eisenstadt v. Baird*,

21  405 U.S. 438, 443-46 (1972). COLFS's provision of APR is solely a charitable

22  enterprise devoted to providing needy women with necessary care. Verif. FAC, ¶¶4,

23  19, 21, 51. Thus, AG Bonta's attempt to restrict APR is subject to strict scrutiny.

24  Further, the commercial speech doctrine requires the content of the speech be

25  "uncontroversial," *NIFLA v. Becerra*, 585 U.S. at 769, because speech on

26  "controversial subjects" are "matters of profound value and concern to the public[,]

27  … "occup[y] the highest rung of the hierarchy of First Amendment values[,] and

28  merit[] special protection." *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council*

*31*, 585 U.S. 878, 913-14 (2018) (cleaned up) (quoting *Snyder*, 562 U.S. at 453). "[T]he boundaries of what constitutes speech on matters of public concern are not well defined." *Snyder*, 562 U.S. at 452. However, the Supreme Court has explained that "[s]peech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Id.* at 453 (cleaned up).

And even if the specific speech at issue is not a matter of public concern, strict scrutiny applies when the government is acting "because of disagreement with the message it conveys." *Sorrell*, 564 U.S. at 566-67. This can be shown where the government is "regulat[ing] based on actor," *Nat'l Inst. of Fam. & Life Advocs. v. Clark*, No. 2:23-cv-229, 2024 WL 3027983, at *9 (D. Vt., June 14, 2024), or when the government action "compels speech with a particular message." *NetChoice*, 113 F.4th at 1121 (citing *NIFLA v. Becerra*, 585 U.S. at 766).

Here, the general topic of abortion is one which the Supreme Court has repeatedly held is of concern to the community such that strict scrutiny always applies when the government attempts to restrict speech concerning it. *See, e.g.*, *NIFLA v. Becerra*, 585 U.S. at 769 ("abortion" is "anything but an 'uncontroversial' topic"); *Bigelow v. Virginia*, 421 U.S. 809, 822 (1975) (advertising for abortion contains "material of clear 'public interest'"). Further, Defendant Bonta has been stalwart both in his campaign to target pro-life pregnancy resource centers, Verif. FAC, ¶¶5-9, 74-83, and in his campaign to target only allegedly misleading pro-life speech—not misleading pro-abortion speech. Verif. FAC, ¶¶84-96.

The practical intuition that speech about abortion is special has also been applied by lower courts to protect, wholesale, the speech of both abortion providers and pro-life pregnancy resource centers, *Bernardo v. Planned Parenthood Fed'n of Am.*, 115 Cal. App. 4th 322, 343 (2004); *Nat'l Inst. of Fam. & Life Advocs. v. Raoul*, 685 F. Supp. 3d 688 (N.D. Ill. 2023), and directly in the context of attempts to restrict APR. *Nat'l Inst.*

1  *of Fam. & Life Advocs. v. James*, No. 1:24-cv-514, 2024 WL 3904870 (W.D.N.Y. Aug. 22,

2  2024) (enjoining AG James's prosecution of APR). This Court should do likewise.

3      Looking at the strict scrutiny standard, as stated above, it requires an actual

4  problem in need of solving. *Brown*, 564 U.S. at 799, 803 n.9. AG Bonta cannot show

5  that any woman has been harmed by Abortion Pill Reversal—either monetarily or

6  physically. COLFS's provision of Abortion Pill Reversal is charitable and religiously

7  motivated, and no woman has ever suffered an adverse complication. Verif. FAC, ¶¶13,

8  19, 51, 69, 96, 116.[2] Thus, his only applicable asserted interest is in providing women

9  with "accurate, scientifically sound information about their options, including the risks

10  involved with those options." Goyette Decl., Ex.A, ¶2. But, as explained in the next

11  section, he cannot establish that COLFS's statements are false or that his contrary

12  opinions are true—or that even if they were false, that requiring COLFS to cease

13  speaking is narrowly tailored.

14          **b.**    ***COLFS's Speech Is Protected Regardless Under Both***

15                 ***Zauderer* and Central Hudson.**

16      Even if COLFS's speech were commercial, it would be protected. AG Bonta

17  wishes to characterize COLFS's speech as purely commercial and fraudulent, and

18  thereby completely unprotected under *Central Hudson*'s illegal speech test. *See*

19  § I.A.2.a, *supra*. But this test is limited to only the most obvious situations—like a

20  prohibition on solicitation of prostitution, *Erotic Serv. Provider Legal Educ. & Rsch.*

21  *Project v. Gascon*, 880 F.3d 450, 460 (9th Cir. 2018), because even indisputably false

22  statements are constitutionally protected in the absence of harm. *United States v.*

23  *Alvarez*, 567 U.S. 709, 719 (2012) (plurality); *Illinois v. Telemarketing Assocs., Inc.*, 538

24  U.S. 600, 620 (2003).

25      Nor can COLFS's speech be analyzed solely under *Zauderer* rational basis

26

27  [2] As explained in the expert declarations, the one study upon which AG Bonta

28  principally relies does not support the allegation that Abortion Pill Reversal is unsafe. Kraus Decl., ¶¶35, 40-42; Valley Decl., ¶¶40-48.

review, *see* § I.A.2.b, *supra*, because the topic of abortion is definitionally controversial, *NIFLA v. Becerra*, 585 U.S. at 769, and the scientific debate over Abortion Pill Reversal makes speech about it neither "purely factual" nor "uncontroversial." *Cal. Chamber of Com.*, 29 F.4th at 478; *cf. Bernardo*, 115 Cal. App. 4th at 348-49 (matters of "scientific debate" are matters of "opinion," and the First Amendment precludes penalizing statements of opinion).

Even under *Zauderer* rational basis review, the speech must be both justified and not unduly burdensome. *NIFLA v. Becerra*, 585 U.S. at 776-79 (California failed the *Zauderer* standard). But California has an extraordinarily robust protection for reproductive rights that extends to protect both patients and their doctors. As stated in the introduction, this right is not merely about the right to *prevent* procreation—but includes the right to have children as well. *Comm. to Def. Reprod. Rts.*, 29 Cal. 3d at 256; *Johnson*, 5 Cal. 4th at 101. And to ensure that this right is not collaterally attacked, California has passed a comprehensive immunity provision for doctors assisting pregnant women. Cal. Health & Saf. Code § 123467(b). In light of the science and California's explicit hands-off policy in the realm of reproductive rights, restricting Abortion Pill Reversal is both unjustified and unduly burdensome. *See* Verif. FAC, ¶¶29-42, 70-73; Kraus Decl., ¶¶33-44; Valley Decl., ¶¶27-62.

Although AG Bonta's prosecution of APR fails even the deferential *Zauderer* review, if the Court found COLFS's speech to be commercial (which it is not), then the Court must at least apply *Central Hudson* intermediate scrutiny, which requires: (1) a substantial government interest; (2) that is directly advanced by the regulation; and (3) not more restrictive than necessary to serve the interest. *NetChoice*, 113 F.4th at 1119. Because receiving Abortion Pill Treatment is legal, the government's asserted interest cannot be simply "dampen[ing] demand" for it. *See Junior Sports Mags.*, 80 F.4th at 1119; *accord 44 Liquormart Inc. v. Rhode Island*, 517 U.S. 484, 509-10 (1996) (plurality).

Rather, the interests must be in providing women with (1) accurate information regarding APR; and (2) protecting their safety. *See* Goyette Decl., Ex.A, ¶3. But

regulating COLFS's speech must actually further this interest. Because there is no evidence that any woman has ever been harmed by APR, Kraus Decl., ¶¶38-42; Valley Decl., ¶¶33-48, AG Bonta cannot possibly "provide evidence establishing that the harms [he] recites are real, and that [his] speech restriction will '*significantly*' alleviate those harms." *See Junior Sports Mags.*, 80 F.4th at 1117 (cleaned up).

Turning to the provision of accurate information, COLFS's evidence establishes that it would be false to tell women that Abortion Pill Reversal is ineffective, unstudied, and life-threatening. Kraus Decl., ¶¶33-44; Valley Decl., ¶¶27-62. But, in any event, the existence of a scientific debate precludes the AG from requiring that his interpretation of the evidence be deemed orthodox. "[C]ompelling sellers to warn consumers of a potential 'risk' never confirmed by any regulatory body… does not directly advance that interest." *Nat'l Ass'n of Wheat Growers*, 85 F.4th at 1283; *see also id.* at 1278 (citing *Cal. Chamber of Com.*, 29 F.4th 468, where defendant did not even attempt to satisfy intermediate scrutiny because doing so would "elevate[] one side of a legitimately unresolved scientific debate").[3] Nor is compelling COLFS to repeat AG Bonta's view narrowly tailored because he can simply "post information about [Abortion Pill Reversal] on [his] own website or conduct an advertising campaign." *Nat'l Ass'n of Wheat Growers*, 85 F.4th at 1283.

### B. Applying the UCL and FAL to COLFS's Provision of Abortion Pill Reversal Would Violate the Free Exercise Clause.

#### 1. *Legal Background on the Free Exercise Clause*

"Throughout the ages men have suffered death rather than subordinate their allegiance to God to the authority of the State. Freedom of religion guaranteed by the First Amendment is the product of that struggle." *Girouard v. United States*, 328 U.S. 61, 68 (1946). The Free Exercise Clause "protects not only the right to harbor

---

[3] *See also Torrey v. Infectious Diseases Soc'y of Am.*, 86 F.4th 701, 704-05 (5th Cir. 2023); *ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490, 498 (2d Cir. 2013) (both discussing how scientific debate is constitutionally protected opinion).

religious beliefs inwardly and secretly. It does perhaps its most important work by protecting the ability of those who hold religious beliefs of all kinds to live out their faiths in daily life through 'the performance of (or abstention from) physical acts.'" *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 524 (2022) (quoting *Emp. Div. v. Smith*, 494 U.S. 872, 877 (1990)).

When government action burdens religious practice, "the government may not 'treat ... comparable secular activity more favorably than religious exercise.'" *FCA*, 82 F.4th at 686 (quoting *Tandon v. Newsom*, 593 U.S. 61, 62 (2021)). Stated differently, the existence of secular exemptions from government-created burdens, without offering a religious exemption, triggers strict scrutiny if the secular exemptions undermine the government's interests "in a similar or greater degree" than a religious exemption would. *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 543 (1993); *accord Fulton v. Philadelphia*, 593 U.S. 522, 534 (2021). Thus, government regulations are not generally applicable "whenever they treat *any* comparable secular activity more favorably than religious exercise." *Tandon*, 593 U.S. at 62. "It is no answer that a State treats some comparable … activities as poorly as or even less favorably than the religious exercise at issue." *Id.*

"[W]hether two activities are comparable for purposes of the Free Exercise Clause must be judged against the asserted government interest that justifies the regulation at issue." *Waln v. Dysart Sch. Dist.*, 54 F.4th 1152, 1159 (9th Cir. 2022) (quoting *Tandon*, 593 U.S. at 62). Thus, as example, if the government's interest is "health and safety," then it cannot grant exemptions for its own administrative needs while denying religious exemptions. Both those types of exemptions undermine "health and safety" and are therefore relevantly comparable. *See Bacon v. Woodward*, 104 F.4th 744, 752 (9th Cir. 2024). General applicability also "requires, among other things, that the laws be enforced evenhandedly," *Waln*, 54 F.4th at 1159, such that "selective enforcement favoring comparable secular activities" makes a regulation non-generally applicable. *FCA*, 82 F.4th at 689.

### 2.    *Application of the Free Exercise Principles.*

Here, COLFS is a religious nonprofit—a Catholic entity—whose provision of APR is required by its religious obligations. Verif. FAC, ¶¶4, 21, 130. Prohibiting COLFS from providing APR—which includes speaking truthfully about it—or imposing liability if it does so, is a burden on its religion. Self-evidently, liability for "tort damages" is a "direct burden on religion." *Paul v. Watchtower Bible & Tract Soc. of N.Y., Inc.*, 819 F.2d 875, 880 (9th Cir. 1987); *accord Molko v. Holy Spirit Ass'n*, 46 Cal. 3d 1092, 1117 (1988); *see Loffman v. Cal. Dep't of Educ.*, 119 F.4th 1147, 1165-69 (9th Cir. 2024) (discussing standards). To justify this burden on COLFS's religious exercise, Bonta must satisfy strict scrutiny for three independent reasons.

First, the general purpose of California's misleading advertising and fraudulent business practices statutes is to put a stop to commercial fraud. Their two primary purposes are "the preservation of fair business competition" and to prevent "injuries to consumers." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). Although California's business fraud statutes are broad, under *Tandon*, a single exemption for a "comparable secular activity" is enough to defeat general applicability. *Tandon*, 593 U.S. at 62. Here, however, the statutes expressly do not apply to "public entit[ies]" regardless of their "involvement in commercial activity." *Cal. Med. Ass'n, Inc. v. Univ. of Cal.*, 79 Cal. App. 4th 542, 551 & n.14 (2000) (citing Cal. Bus. & Prof. Code §§ 17201, 17506; Cal. Gov. Code § 811.2); *see also Trinkle v. Cal. State Lottery*, 71 Cal. App. 4th 1198, 1203-04 (1999) (rejecting policy argument that state is "competing" in business). Thus, hospitals operated by public universities can offer Abortion Pill Reversal, and engage in speech regarding it, with no fear of prosecution under Cal. Bus. & Prof. Code §§ 17200, 17500.

The statutes also only apply to *commercial* activity. *See O'Connor v. Superior Ct.*, 177 Cal. App. 3d 1013, 1019 (1986). Thus, they do not apply to political campaigns which send out fraudulent campaign advertisements, *Chavez v. Citizens for a Fair Farm Lab. Law*, 84 Cal. App. 3d 77, 79 n.2 (1978), or even use fraudulent election fundraising

practices. *Nat'l Comm. of Reform Party of U.S. v. Democratic Nat'l Comm.*, 168 F.3d 360, 363 (9th Cir. 1999). Even if COLFS's provision of APR treatment was "commercial," which it is not (*see* §I.A.3.a, *supra*), it is self-evidently sufficiently similar to non-commercial activities that are categorically exempted to be comparable to them. Both the government and political campaigns can engage in unfair competition and injure consumers, and so exemptions for them are relevantly comparable to exemptions for religious organizations, triggering strict scrutiny. *See Bella Health & Wellness v. Weiser*, 699 F. Supp. 3d 1189, 1212-13 (D. Colo. 2023).

Second, as applied against pro-life community health clinics, Defendant Bonta's alleged interest in utilizing these statutes to prohibit speech about Abortion Pill Reversal is to protect women from an allegedly deceptive and dangerous practice. *See* Verif. FAC, ¶131; *see* Dkt. 4-1, Memo. ISO Mot'n to Dismiss, p.10 ("No credible scientific evidence supports this theory or even that APR is safe."), p.11 ("The Attorney General has not sought to stop them from providing APR, only from making false and misleading statements about its efficacy and safety.").

Yet Planned Parenthood makes false statements regarding the Abortion Pill and Abortion Pill Reversal. Specifically, Planned Parenthood makes the categorically false statement that Abortion Pill Reversal has never "been tested for safety, effectiveness, or the likelihood of side effects." Planned Parenthood also misleads women about the safety, efficacy, and side-effects of the Abortion Pill. Verif. FAC, ¶¶84-96. Because these statements could similarly subject women to a dangerous and deceptive practice, they are relevantly comparable to COLFS's statements regarding APR. Yet Defendant Bonta has not sought to enforce Cal. Bus. & Prof. Code §§ 17200, 17500, against Planned Parenthood, making the statutes not generally applicable. *See Soos v. Cuomo*, 470 F. Supp. 3d 268, 282-83 (N.D.N.Y. 2020); *Masterpiece Cakeshop v. Colo. C.R. Comm'n*, 584 U.S. 617, 647-54 (2018) (Gorsuch, J., concurring).

Third, Defendant Bonta's attempted restriction on truthful speech about the safety, efficacy, and side-effects of Abortion Pill Reversal will have the cumulative and

practical effect of restricting provision of that service. But APR is nothing more than progesterone, and there are a multitude of off-label uses of progesterone, which has been widely prescribed to women—including pregnant women—for more than 50 years. Yet California makes no attempt to regulate the off-label use of progesterone (or any other drug) in any other circumstance. That omission renders California's attempted restriction of APR not generally applicable. *See Bella Health & Wellness v. Weiser*, 699 F. Supp. 3d 1189, 1212-13 (D. Colo. 2023).

Finally, for the same reasons as stated above, restricting COLFS's provision of Abortion Pill Reversal fails intermediate scrutiny, and so necessarily fails strict scrutiny. *See* § I.A.3, *supra*.

### C.    Applying the UCL and FAL to COLFS's Provision of Abortion Pill Reversal Would Violate Substantive Due Process.

#### 1.    *Legal Background on the Right of Procreation*

Under the Fourteenth Amendment, "[n]o State shall … deprive any person of life, *liberty*, or property, without due process of law." U.S. Const. amend. XIV, § 1 (emphasis added). This protection for liberty includes certain rights that are "older than the Bill of Rights—older than our political parties, older than our school system." *Griswold v. Connecticut*, 381 U.S. 479, 486 (1965). Thus, "the Framers of the Constitution believed that there are additional fundamental rights, protected from governmental infringement, which exist alongside those fundamental rights specifically mentioned in the [Bill of Rights]." *Id.* at 488 (Goldberg, J., concurring). As the Ninth Circuit recognized a hundred years ago, some rights are simply "given by the Almighty for beneficent purposes." *Farrington v. Tokushige*, 11 F.2d 710, 713 (9th Cir. 1926) (quoting *Berea Coll. v. Kentucky*, 211 U.S. 45, 67 (1908) (Harlan, J., dissenting)).

Under this protection of liberty, every American has the right "to marry, establish a home and bring up children." *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923). "Marriage and procreation are fundamental to the very existence and survival of the race" and thus "one of the basic civil rights of man." *Skinner v. Oklahoma*, 316 U.S.

535, 541 (1942). "Marriage is a coming together for better or for worse, hopefully enduring, and intimate to the degree of being sacred." *Griswold*, 381 U.S. at 486.

Because this constellation of rights complement each other, "[t]he [Supreme] Court has recognized these connections by describing the varied rights as a unified whole: '[T]he right to 'marry, establish a home and bring up children' is a central part of the liberty protected by the Due Process Clause.'" *Obergefell v. Hodges*, 576 U.S. 644, 668 (2015) (quoting *Zablocki v. Redhail*, 434 U.S. 374, 384 (1978)) (original alterations). In protecting this constellation of rights, the Supreme Court has explained that overbroad regulations may need to be struck down. Legitimate regulation "may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms," for example, by "allow[ing] the police to search the sacred precincts of marital bedrooms for telltale signs of the use of contraceptives." *Griswold*, 381 U.S. at 485-86. Thus, "[i]f the right of privacy means anything, it is the right of the individual, married or single, to be free from *unwarranted governmental intrusion* into matters so fundamentally affecting a person as the decision whether to bear or beget a child." *Eisenstadt v. Baird*, 405 U.S. 438, 453 (1972) (emphasis added).[4]

The Fourteenth Amendment also protects the right to refuse "unwanted medical treatment," *Cruzan v. Mo. Dep't of Health*, 497 U.S. 261, 278 (1990) (citing *Jacobson v. Massachusetts*, 197 U.S. 11, 24-30 (1905)), and the right "to bodily integrity." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) (citing *Rochin v. California*, 342 U.S. 165 (1952)). This right protects against "'forced medical treatment' for the recipient's benefit." *Health Freedom Def. Fund, Inc. v. Carvalho*, 104 F.4th 715, 725 (9th Cir. 2024) (quoting district court). The right to procreative choice cannot meaningfully be

---

[4] In its most recent major discussion of these rights, the Court reaffirmed them, stating that "our conclusion … does not undermine them in any way" since they did not concern "the critical moral question posed by" "what the law at issue in this case regards as the life of an 'unborn human being.'" *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 256-57 (2022); *see also id.* at 295 ("It is hard to see how we could be clearer" that *Dobbs* does not "cast doubt" on *Eisenstadt*).

exercised alone. Thus, it also includes the "right to decide independently, *with the advice of [her] physician*, to acquire and to use needed medication." *Whalen v. Roe*, 429 U.S. 589, 603 (1977) (emphasis added). The government cannot restrict procreative choice by directing its action towards the "physician's role," *Griswold*, 381 U.S. at 482, by interfering with "[t]he woman's right to receive medical care in accordance with her licensed physician's best judgment and the physician's right to administer it." *Doe v. Bolton*, 410 U.S. 179, 197 (1973).

"[W]here a decision as fundamental as that whether to bear or beget a child is involved, regulations imposing a burden on it may be justified only by compelling state interests, and must be narrowly drawn to express only those interests." *Carey v. Population Servs., Int'l*, 431 U.S. 678, 686 (1977); *accord Am. Acad. of Pediatrics v. Lungren*, 16 Cal. 4th 307, 340-41 (1997). In other words, "[w]hen a fundamental right is at stake, the Government can act only by narrowly tailored means that serve a compelling state interest," i.e., "strict scrutiny." *Dep't of State v. Muñoz*, 602 U.S 899, 910 (2024).

### 2. *Application of the Substantive Due Process Principles*

Here, the purpose of Abortion Pill Reversal is to help a woman maintain her pregnancy and carry her child to term. Verif. FAC, ¶¶29-42. It involves a woman refusing additional medical treatment (misoprostol), which is a constitutionally protected choice, *Health Freedom Def. Fund*, 104 F.4th at 725, and then choosing to take supplemental progesterone to help her fetus survive. And although the majority of Substantive Due Process cases deal with prevention of procreation, *Griswold*, 381 U.S. 479, *Eisenstadt*, 405 U.S. 438, at 443-46, or the right merely to be free from forced sterilization, *Skinner*, 316 U.S. 535, "[i]t takes no great leap of logic to see that within the cluster of constitutionally protected choices that includes the right to have access to contraceptives, there must be included within that cluster the right to submit to a medical procedure that may bring about, rather than prevent, pregnancy." *Lifchez v. Hartigan*, 735 F. Supp. 1361, 1377 (N.D. Ill. 1990).

1    At this stage, the Attorney General cannot merely claim that APR is dangerous
2  or deceptive. Rather, strict scrutiny "must be applied to state regulations that burden
3  an individual's right [of procreative choice] by substantially limiting access to the
4  means of effectuating that decision as is applied to state statutes that prohibit the
5  decision entirely." *Carey*, 431 U.S. at 688. Thus, the Supreme Court has not hesitated
6  to carefully scrutinize government regulations that "fail[] as a reasonable regulation for
7  the protection of maternal health," *Planned Parenthood of Central Mo. v. Danforth*, 428
8  U.S. 52, 79 (1976), by looking at the "impressive evidence," that certain reproductive
9  health procedures "may be performed [] safely." *Akron v. Akron Ctr. for Reprod. Health,
10 Inc.*, 462 U.S. 416, 437 (1983). The safety and efficacy of APR is to be addressed at the
11 strict scrutiny stage. *See Planned Parenthood Ariz., Inc. v. Humble*, 753 F.3d 905, 913
12 (9th Cir. 2014) ("The same is true for laws purporting to protect women's health:
13 they 'must be calculated' to advance women's health, 'not hinder it.'"); *see also, e.g.,
14 Planned Parenthood of Wis., Inc. v. Schimel*, 806 F.3d 908, 919 (7th Cir. 2015); *Planned
15 Parenthood Ass'n of Utah v. Matheson*, 582 F. Supp. 1001, 1007 (D. Utah 1983). And,
16 as stated above, the Attorney General cannot satisfy intermediate scrutiny—let alone
17 strict scrutiny. *See* § I.A.3, *supra*.

## II.   THE OTHER INJUNCTION FACTORS FAVOR PLAINTIFF

19   In seeking a preliminary injunction, a plaintiff must also establish: (2) irreparable
20 injury, (3) that the balance of hardships favors the plaintiff, and (4) that the public
21 interest favors an injunction. *FCA*, 82 F.4th at 683-84. In suits against the government,
22 the last two factors—"the balance of equities and the public interest—merge." *Id.* at
23 695 (quotations omitted). And "when a party has established likelihood of success on
24 the merits of a constitutional claim—particularly one involving a fundamental right—
25 the remaining … factors favor enjoining the likely unconstitutional law." *Junior Sports
26 Mags.*, 80 F.4th at 1120. After all, a moment's deprivation of a constitutional right
27 constitutes irreparable injury, *see Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S.
28 14, 19 (2020), and is never in the public interest, *see Baird v. Bonta*, 81 F.4th 1036,

1040 (9th Cir. 2023). Here, for the reasons stated in Section I, Plaintiff has met its burden to establish "a colorable First Amendment claim," *FCA*, 82 F.4th at 694-95, and thus has necessarily satisfied the remaining factors.

## III.    The Court Should Dispense with a Bond Requirement

Finally, the federal rules provide that a preliminary injunction may be issued only if the plaintiff posts an appropriate bond. Fed. R. Civ. P. 65(c). Even so, this Court has discretion over whether any security is required and, if so, the amount. *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003). There is "long-standing precedent that requiring nominal bonds is perfectly proper in public interest litigation," especially "where requiring security would effectively deny access to judicial review." *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1126 (9th Cir. 2005) (collecting cases).

Here, the Court should waive any bond requirement because enjoining Defendant Bonta from unconstitutionally chilling pro-life speech will not financially affect him. A bond would, however, be burdensome on an already burdened Plaintiff under these circumstances. *See, e.g.*, *Frankel v. Univ. of Cal.*, No. 2:24-cv-4702, 2024 WL 3811250, at *8 (C.D. Cal. Aug. 13, 2024) ("Courts have issued preliminary injunctions without requiring security based on likelihood of success of prevailing on a First Amendment claim") (cleaned up); *Bible Club v. Placentia-Yorba Linda Sch. Dist.*, 573 F. Supp. 2d 1291, 1302 n.6 (C.D. Cal. 2008) (waiving requirement of student group to post a bond where case involved "the probable violation of [the club's] First Amendment rights" and minimal damages to the District of issuing injunction).

## CONCLUSION

For the foregoing reasons, Plaintiff COLFS respectfully requests that this Court grant the above motion in full, granting it a preliminary injunction.

///

///

///

Memo. of Points & Authorities ISO
Plaintiff's Motion for a Preliminary Injunction

1

2
Respectfully submitted,

LiMANDRI & JONNA LLP

3

4
Dated: November 15, 2024        By:

Charles S. LiMandri

5
Paul M. Jonna

6
Jeffrey M. Trissell

7
Attorneys for Plaintiff Culture of Life Family
Services, Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

26