Charles S. LiMandri, SBN 110841
  cslimandri@limandri.com
Paul M. Jonna, SBN 265389
  pjonna@limandri.com
Jeffrey M. Trissell, SBN 292480
  jtrissell@limandri.com
LiMANDRI & JONNA LLP
P.O. Box 9120
Rancho Santa Fe, CA 92067
Telephone: (858) 759-9930
Facsimile: (858) 759-9938

Thomas Brejcha, *pro hac vice**
  tbrejcha@thomasmoresociety.org
Peter Breen, *pro hac vice**
  pbreen@thomasmorsociety.org
THOMAS MORE SOCIETY
309 W. Washington St., Ste. 1250
Chicago, IL 60606
Tel: (312) 782-1680
*Application forthcoming

*Attorneys for Plaintiff Culture of Life
Family Services, Inc.*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CULTURE OF LIFE FAMILY SERVICES, INC. a California nonprofit corporation,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ATTORNEY GENERAL ROB BONTA, in his official capacity as the California Attorney General,<br><br>　　　　Defendant. | Case No.: 3:24-cv-1338-GPC-KSC<br><br>**DECLARATION OF PAUL M. JONNA, ESQ. IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Judge:　　Hon. Gonzalo P. Curiel<br>Location:　Courtroom: 2D<br>Date:　　February 7, 2025<br>Time:　　1:30 p.m.<br><br>Action Filed: July 30, 2024 |

I, Paul M. Jonna, Esq., declare and states as follows:

1.      I am an attorney at law duly licensed to practice in the State of California and in the Southern District of California. I am a Partner with LiMandri & Jonna LLP, and am counsel of record for Plaintiff Culture of Life Family Services, Inc. in this action. The matters discussed below are based on my own personal knowledge. I could and would testify to them if called upon to do so in court.

2.      Attached hereto as **Exhibit O** is a true and correct copy of Attorney General Rob Bonta's responses to Heartbeat International's Requests for Admission, dated November 26, 2024, as served in the Enforcement Action, *People v. Heartbeat*, No. 23-cv-44940 (Cal. Super. Ct., Alameda Cnty., Sep. 23, 2023), with the relevant answer, No. 4, highlighted green.

3.      Attached hereto as **Exhibit P** is a true and correct copy of Attorney General Rob Bonta's responses to Heartbeat International's Requests for Production, dated November 26, 2024, as served in the Enforcement Action, *People v. Heartbeat*, No. 23-cv-44940 (Cal. Super. Ct., Alameda Cnty., Sep. 23, 2023), with the relevant answer, No. 3, highlighted green.

4.      Attached hereto as **Exhibit Q** is a true and correct copy of Attorney General Rob Bonta's responses to Heartbeat International's Special Interrogatories, dated November 26, 2024, as served in the Enforcement Action, *People v. Heartbeat*, No. 23-cv-44940 (Cal. Super. Ct., Alameda Cnty., Sep. 23, 2023), with the relevant answers, Nos. 3 and 9, highlighted green.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct. Executed on January 3, 2025, in Rancho Santa Fe, California.

_____
Paul M. Jonna

Decl. of Paul M. Jonna, Esq. ISO
Plaintiff's Motion for Preliminary Injunction

**EXHIBIT O**

ROB BONTA
Attorney General of California
NELI N. PALMA (SBN: 203374)
Senior Assistant Attorney General
KARLI EISENBERG (SBN: 281923)
KATHLEEN BOERGERS (SBN: 213530)
Supervising Deputy Attorneys General
ERICA CONNOLLY (SBN: 288822)
HAYLEY PENAN (SBN: 313693)
LAUREN ZWEIER (SBN: 291361)
Deputy Attorneys General
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone:  (916) 210-7755
  Fax:  (916) 327-2319
  E-mail:  Erica.Connolly@doj.ca.gov

*Attorneys for Plaintiff*
  *People of the State of California*

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ALAMEDA

| | |
|---|---|
| **THE PEOPLE OF THE STATE OF CALIFORNIA,**<br><br>Plaintiff,<br><br>v.<br><br>**HEARTBEAT INTERNATIONAL, INC., REALOPTIONS, DOES 1-100, INCLUSIVE,**<br><br>Defendant. | Case No. 23CV044940<br><br>**PLAINTIFF PEOPLE OF THE STATE OF CALIFORNIA'S RESPONSES TO THE DEFENDANT HEARTBEAT INTERNATIONAL, INC.'S REQUESTS FOR ADMISSION, SET ONE**<br><br>Dept:      23<br>Judge:     The Honorable Michael M. Markman<br><br>Action Filed: September 21, 2023 |

PROPOUNDING PARTY:          Defendant Heartbeat International, Inc

RESPONDING PARTY(IES):     Plaintiff People of the State of California

SET NO.:                              ONE

1

PLAINTIFF PEOPLE OF THE STATE OF CALIFORNIA'S RESPONSES TO THE DEFENDANT HEARTBEAT
INTERNATIONAL, INC.'S REQUESTS FOR ADMISSION, SET ONE (23CV044940)

1    Pursuant to California Code of Civil Procedure Section 2033.210, et seq., Plaintiff People

2    of the State of California, by and through Attorney General Rob Bonta ("Plaintiff" or "the

3    People"), hereby responds and objects to Defendants Heartbeat International, Inc.'s ("HBI")

4    Requests for Admissions, Set One, as follows:

5    **PRELIMINARY STATEMENT**

6    The information provided in these responses is true and correct, according to the People's

7    best knowledge at this time, but this information is subject to future corrections for omissions,

8    errors, or mistakes.  The People reserves the right to produce evidence of any subsequently

9    discovered facts or interpretations thereof, and to amend, modify, or otherwise change the

10   responses, in accordance with applicable discovery rules.  The requests for admission are

11   reproduced exactly as drafted by HBI.  Without waiving any objections, the People responds as

12   follows:

13   **REQUEST FOR ADMISSION NO. 1:**

14   Admit that the topic of abortion is a controversial matter of public concern.

15   **RESPONSE TO REQUEST FOR ADMISSION NO. 1:**

16   Objection.  This request seeks information that is not relevant or proportional to any claim

17   or defense in this action in that the claims and defenses in this case are limited to the ability of

18   HBI to use in advertisements and commercial speech specific statements that HBI asserts are

19   truthful with regard to abortion pill reversal ("APR"), which, as defined by HBI, "means any

20   Abortion Pill Reversal protocol involving a pregnant woman taking progesterone to attempt to

21   counteract the effects of a chemical abortion, whether within 72 hours of taking mifepristone,

22   after 72 hours of taking mifepristone, after taking misoprostol, or after taking methotrexate."

23   (Compl. ¶¶96-101.)  The People further object this request is vague and ambiguous, particularly

24   with regard to the phrase "controversial matter of public concern" and as to the context of the

25   request, such as "controversial" to whom.  The People further object that this request calls for

26   speculation.

27   Based on these objections, the People does not respond to this request.

28

**REQUEST FOR ADMISSION NO. 2:**

Admit that the topic of a pregnant woman's right to consult health care professionals relating to decisions affecting her body, her pregnancy, and her choices relating to those matters is a controversial matter of public concern.

**RESPONSE TO REQUEST FOR ADMISSION NO. 2:**

Objection.  This request seeks information that is not relevant or proportional to any claim or defense in this action in that the claims and defenses in this case are limited to the ability of HBI to use in advertisements and commercial speech specific statements that HBI asserts are truthful with regard to APR.  (Compl. ¶¶96-101.)  This request is vague and ambiguous, particularly with regard to the phrase "controversial matter of public concern" and as to the context of the request, such as "controversial" to whom.  This request also calls for speculation and is compound.

Based on these objections, the People does not respond to this request.

**REQUEST FOR ADMISSION NO. 3:**

Admit that the topic of a pregnant woman's right to decide to bear a child is a controversial matter of public concern.

**RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

Objection.  This request seeks information that is not relevant or proportional to any claim or defense in this action in that the claims and defenses in this case are limited to the ability of HBI to use in advertisements and commercial speech specific statements that HBI asserts are truthful with regard to APR.  (Compl. ¶¶96-101.)  This request is vague and ambiguous, particularly with regard to the phrase "controversial matter of public concern" and as to the context of the request, such as "controversial" to whom.  This request also calls for speculation.

Based on these objections, the People does not respond to this request.

**REQUEST FOR ADMISSION NO. 4:**

Admit that you have no evidence of any complaints from APR patients related to APR treatment.

1   **RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

2          Objection.  This request is vague as to the terms "evidence." Without waiving this

3   objection, the People respond as follows: Admit.

4   **REQUEST FOR ADMISSION NO. 5:**

5          Admit that you have no evidence that any APR patient lacked informed consent to

6   undergo APR.

7   **RESPONSE TO REQUEST FOR ADMISSION NO. 5:**

8          Objection.  This request is vague as to the terms "evidence" and "informed consent."

9          To the extent that HBI's request includes documentary evidence showing that patients

10  who underwent APR did not have accurate, truthful information when they consented to undergo

11  the procedure, and without waiving these objections, the People responds as follows: Deny.

12  **REQUEST FOR ADMISSION NO. 6:**

13         Admit that no scientific or medical study credibly discredits APR.

14  **RESPONSE TO REQUEST FOR ADMISSION NO. 6:**

15         Objection.  This request is vague as to the phrase "credibly discredits."  This request is

16  also compound.

17         Without waiving these objections, the People responds as follows: Deny.

18  **REQUEST FOR ADMISSION NO. 7:**

19         Admit that APR increases the chances that a pregnancy will continue when administered

20  within 72 hours after a patient has taken mifepristone.

21  **RESPONSE TO REQUEST FOR ADMISSION NO. 7:**

22         Objection.  This request is vague in light of HBI's definition that APR "means any

23  Abortion Pill Reversal protocol involving a pregnant woman taking progesterone to attempt to

24  counteract the effects of a chemical abortion, whether within 72 hours of taking mifepristone,

25  after 72 hours of taking mifepristone, after taking misoprostol, or after taking methotrexate."

26         To the extent that HBI's request is admit that the administration of supplemental

27  progesterone within 72 hours of mifepristone-only administration increases the chances of

28  pregnancy continuation, the People respond as follows: Deny.

4

1  **REQUEST FOR ADMISSION NO. 8:**

2      Admit that progesterone is critical to the health and continuation of a pregnancy.

3  **RESPONSE TO REQUEST FOR ADMISSION NO. 8:**

4      Objection.  This request is vague and ambiguous as to the term "critical" and to the phrase

5  "health and continuation of a pregnancy."

6      To the extent that HBI's request is admit that progesterone is a hormone that is necessary

7  for the uterus and cervix to prepare for pregnancy, and without waiving these objections, the

8  People respond as follows: Admit.

9  **REQUEST FOR ADMISSION NO. 9:**

10      Admit that supplemental progesterone is a safe and effective treatment given to pregnant

11  women by their providers apart from APR protocols.

12  **RESPONSE TO REQUEST FOR ADMISSION NO. 9:**

13      Objection.  This request seeks information that is not relevant or proportional to any claim

14  or defense in this action in that the claims and defenses in this case are limited to the ability of

15  HBI to use in advertisements and commercial speech specific statements that HBI asserts are

16  truthful with regard to APR.  (Compl. ¶¶96-101.)  The safety of supplemental progesterone in

17  other treatments has no bearing on the safety of supplemental progesterone in the context of APR.

18  This request is also vague and ambiguous and is compound as there are numerous treatments

19  where providers might treat pregnant patients with supplemental progesterone and the "safety"

20  versus "effectiveness" of those treatments needs to be assessed on an individualized basis for

21  each patient.

22      Based on these objections, the People does not respond to this request.

23  **REQUEST FOR ADMISSION NO. 10:**

24      Admit that there is no evidence linking progesterone therapy to an increase in birth defects

25  in infants born after exposure to mifepristone in the first trimester.

26  **RESPONSE TO REQUEST FOR ADMISSION NO. 10:**

27      Objection.  This request is vague and ambiguous as to the phrases "progesterone therapy"

28  and "increase in birth defects."

5

To the extent that HBI's request is admit that there is no evidence linking APR to an increase in the rate of birth defects in infants born after exposure to mifepristone in the first trimester, and without waiving these objections, the People responds as follows: Admit that there is no credible scientific evidence about the effect of APR on the rate of birth defects for continued pregnancies.

**REQUEST FOR ADMISSION NO. 11:**

Admit that "severe bleeding" is not a risk associated with progesterone.

**RESPONSE TO REQUEST FOR ADMISSION NO. 11:**

Objection.  This request seeks information that is not relevant or proportional to any claim or defense in this action in that the claims and defenses in this case are limited to the ability of HBI to use in advertisements and commercial speech specific statements that HBI asserts are truthful with regard to APR.  (Compl. ¶¶96-101.)  The safety of supplemental progesterone in other contexts has no bearing on the safety of supplemental progesterone in the context of APR. This request is also vague and ambiguous as to "severe bleeding" and "associated with progesterone."

To the extent that HBI's request is admit that bleeding requiring medical intervention is not a known adverse effect of supplemental progesterone medications, and without waiving these objections, the People respond as follows: Deny.

**REQUEST FOR ADMISSION NO. 12:**

Admit that "severe bleeding" is a known risk associated with mifepristone.

**RESPONSE TO REQUEST FOR ADMISSION NO. 12:**

Objection.  This request is vague and ambiguous as to "severe bleeding" and "associated with mifepristone."

To the extent that HBI's request is admit that bleeding requiring medical intervention is a known adverse effect of the use of mifepristone as the first drug in the two-drug medication abortion regimen, and without waiving these objections, the People respond as follows: Admit that bleeding requiring medical intervention is a rare but possible adverse effect that can occur following the administration of the two-drug medication abortion regimen and that there is

1    limited evidence, specifically a 2019 U.C. Davis study, suggesting that use of mifepristone

2    without subsequent use of misoprostol could result in bleeding requiring medical intervention.

3    **REQUEST FOR ADMISSION NO. 13:**

4        Admit that the CREININ STUDY demonstrates the fact that mifepristone antagonization

5    with progesterone is a safe and effective treatment to increase the likelihood of the continuation

6    of a pregnancy.

7    **RESPONSE TO REQUEST FOR ADMISSION NO. 13:**

8        The People respond as follows: Deny.

9    **REQUEST FOR ADMISSION NO. 14:**

10        Admit that the progesterone group in the CREININ STUDY resulted in more ongoing

11    pregnancies than the placebo group at the conclusion of the study.

12    **RESPONSE TO REQUEST FOR ADMISSION NO. 14:**

13        Objection.  This request is vague and ambiguous, particularly as to the phrases

14    "progesterone group," "placebo group," and "ongoing pregnancies."

15        To the extent that HBI's request is admit that the number of patients administered

16    supplemental progesterone with continuing pregnancies when the CREININ STUDY was halted

17    is greater than the number of patients administered a placebo with continuing pregnancies when

18    the CREININ STUDY was halted, and without waiving these objections, the People respond as

19    follows: Admit.

20    **REQUEST FOR ADMISSION NO. 15:**

21        Admit that the CREININ STUDY shows that "severe bleeding" is a potential consequence

22    of mifepristone and not progesterone.

23    **RESPONSE TO REQUEST FOR ADMISSION NO. 15:**

24        Objection.  This request is vague and ambiguous, particularly as to the terms "shows" and

25    "severe bleeding."  This request is also compound.

26        To the extent that HBI's request is admit that the CREININ STUDY establishes that

27    bleeding requiring medical intervention is a side effect of mifepristone, and without waiving these

28    objections, the People responds as follows: Deny.

1  **REQUEST FOR ADMISSION NO. 16:**

2  　　Admit that Mitchell D. Creinin M.D., author of the CREININ STUDY, was a paid

3  consultant for Danco Laboratories, the U.S. manufacturer of mifepristone, at the time of the

4  study.

5  **RESPONSE TO REQUEST FOR ADMISSION NO. 16:**

6  　　The People responds as follows: Admit that as of at least 2019 and into the present time,

7  Dr. Creinin has received compensation as a consultant for Danco Laboratories for providing

8  medical advice to clinicians who contact Danco Laboratories with questions related to

9  mifepristone use and for advice to Danco Laboratories regarding mifepristone.

10  **REQUEST FOR ADMISSION NO. 17:**

11  　　Admit that YOU do not contend that using progesterone for continuation of pregnancy is a

12  fraudulent business practices apart from APR treatment.

13  **RESPONSE TO REQUEST FOR ADMISSION NO. 17:**

14  　　Objection.  This request contains a false premise in that the People have not alleged nor

15  contended that the use or provision of supplemental progesterone as part of APR is a fraudulent

16  business practice.  This request is also vague and ambiguous, especially as to the terms "APR

17  treatment" and "fraudulent business practice."

18  　　Without waiving these objections, the People responds as follows: Admit that the People

19  do not contend in this litigation that the provision or use of supplemental progesterone treatments

20  for the continuation of pregnancy, whether for APR or otherwise, is a "fraudulent business

21  practice" as used in Bus. & Prof. Code § 17200, et seq.

22  **REQUEST FOR ADMISSION NO. 18:**

23  　　Admit that YOU only contend that using progesterone for continuation of pregnancy is a

24  fraudulent business practices when used in APR treatment to counteract the effects of a chemical

25  abortion.

26  **RESPONSE TO REQUEST FOR ADMISSION NO. 18:**

27  　　Objection.  This request contains a false premise in that the People have not alleged nor

28  contended that the use or provision of supplemental progesterone as part of APR is a fraudulent

8

1  business practice.  This request is also vague and ambiguous, especially as to the terms "APR

2  treatment" and "chemical abortion."

3          To the extent HBI's request is admit that the People contend that the use or provision of

4  supplemental progesterone as part of APR, defined as "any Abortion Pill Reversal protocol

5  involving a pregnant woman taking progesterone to attempt to counteract the effects of a

6  chemical abortion, whether within 72 hours of taking mifepristone, after 72 hours of taking

7  mifepristone, after taking misoprostol, or after taking methotrexate," is a "fraudulent business

8  practice" as used in Bus. & Prof. Code § 17200, et seq., and without waiving these objections, the

9  People responds as follows: Deny.

10  **REQUEST FOR ADMISSION NO. 19:**

11          Admit that the CREININ STUDY is the only medical or scientific study which questions

12  the safety and effectiveness of APR.

13  **RESPONSE TO REQUEST FOR ADMISSION NO. 19:**

14          Objection.  This request is vague and ambiguous, particularly as to the term "questions."

15  This request is also compound.

16          Without waiving these objections, the People respond as follows: Deny.

17  **REQUEST FOR ADMISSION NO. 20:**

18          Admit that mifepristone alone is not 100% effective in terminating pregnancy.

19  **RESPONSE TO REQUEST FOR ADMISSION NO. 20:**

20          The People respond as follows: Admit.

21  **REQUEST FOR ADMISSION NO. 21:**

22          Admit that requiring a woman to undergo an unwanted abortion is a severe invasion of her

23  liberty.

24  **RESPONSE TO REQUEST FOR ADMISSION NO. 21:**

25          Objection.  This request calls for speculation and seeks information that is not relevant or

26  proportional to any claim or defense in this action in that the claims and defenses in this case are

27  limited to the ability of HBI to use in advertisements and commercial speech specific statements

28  that HBI asserts are truthful with regard to APR.  (Compl. ¶¶96-101.)  This request also includes

9

1    a false premise, that the People's action for false and misleading advertising will lead to pregnant

2    individuals undergoing unwanted abortions.  This request is also vague and ambiguous,

3    particularly with regard to the phrase "unwanted abortion."

4        Based on these objections, the People does not respond to this request.

5    **REQUEST FOR ADMISSION NO. 22:**

6        Admit that DEFENDANT'S advocating for, and connecting women with practitioners of,

7    APR treatment is legally protected speech.

8    **RESPONSE TO REQUEST FOR ADMISSION NO. 22:**

9        Objection.  This request is vague and ambiguous, particularly as to the terms "advocating

10   for," "APR treatment," and "legally protected speech."  This request also seeks information that is

11   not relevant or proportional to any claim or defense in this action in that the claims and defenses

12   in this case are limited to the ability of HBI to use in advertisements and commercial speech

13   specific statements that HBI asserts are truthful with regard to APR.  Compl. ¶¶95-101.  This

14   request is also compound.

15       To the extent HBI's request is admit that HBI's eight statements that are listed in

16   Paragraphs 97 and 100 of the Complaint and are used in HBI's advertisements and commercial

17   speech for APR are protected under the First Amendment or the California Constitution, and

18   without waiving these objections, the People respond as follows: Deny.

19   **REQUEST FOR ADMISSION NO. 23:**

20       Admit that DEFENDANT'S use of the terms "reverse" and "reversal" when referring to

21   APR treatment is legally protected speech.

22   **RESPONSE TO REQUEST FOR ADMISSION NO. 23:**

23       Objection.  This request is vague and ambiguous, particularly as to the terms "use," "when

24   referring to APR treatment," and "legally protected speech."  This request also seeks information

25   that is not relevant or proportional to any claim or defense in this action in that the claims and

26   defenses in this case are limited to the ability of HBI to use in advertisements and commercial

27   speech specific statements that HBI asserts are truthful with regard to APR.  (Compl. ¶¶96-101.).

28   This request is also compound.

10

1   To the extent HBI's request is admit that HBI's use of the term "reverse" and "reversal" in

2   advertisements and commercial speech for APR is protected under the First Amendment or the

3   California Constitution, and without waiving these objections, the People respond as follows:

4   Deny.

5   **REQUEST FOR ADMISSION NO. 24:**

6   Admit that DEFENDANT'S claim that APR has a 64-68% success rate is legally

7   protected speech.

8   **RESPONSE TO REQUEST FOR ADMISSION NO. 24:**

9   Objection.  This request is vague and ambiguous, particularly as to the terms "claim" and

10   "legally protected speech."  This request also seeks information that is not relevant or

11   proportional to any claim or defense in this action in that the claims and defenses in this case are

12   limited to the ability of HBI to use in advertisements and commercial speech specific statements

13   that HBI asserts are truthful with regard to APR.  (Compl. ¶¶96-101.)  This request is also

14   compound.

15   To the extent HBI's request is admit that HBI's use of the claim that APR has a 64-68%

16   success rate in advertisements and commercial speech for APR is protected under the First

17   Amendment or the California Constitution, and without waiving these objections, the People

18   respond as follows: Deny.

19   **REQUEST FOR ADMISSION NO. 25:**

20   Admit that you have no evidence that DEFENDANT knew or should have known that its

21   speech related to APR was misleading.

22   **RESPONSE TO REQUEST FOR ADMISSION NO. 25:**

23   Objection.  This request is vague and ambiguous, particularly as to the term "speech related

24   to APR."  This request also seeks information that is not relevant or proportional to any claim or

25   defense in this action in that the claims and defenses in this case are limited to the ability of HBI

26   to use in advertisements and commercial speech specific statements that HBI asserts are truthful

27   with regard to APR.  (Compl. ¶¶96-101.)

28

1    To the extent that HBI's request is admit that the People do not have evidence that HBI

2    knew or should have known that the statements listed in the Complaint were false and misleading

3    when HBI used those statements in HBI's advertisements and commercial speech for APR, and

4    without waiving these objections, the People responds as follows: Deny.

5    **REQUEST FOR ADMISSION NO. 26**:

6    Admit that you targeted DEFENDANT for helping women who changed their minds

7    about continuing the process of their chemical abortion.

8    **RESPONSE TO REQUEST FOR ADMISSION NO. 26**:

9    Objection.  This request is vague and ambiguous, particularly as to the terms "targeted"

10   and "helping women."  This request also seeks information that is not relevant or proportional to

11   any claim or defense in this action in that the claims and defenses in this case are limited to the

12   ability of HBI to use in advertisements and commercial speech specific statements that HBI

13   asserts are truthful with regard to APR.  (Compl. ¶¶96-101.)

14   To the extent that HBI's request is admit that the People filed an enforcement action

15   against HBI because, according to HBI, it wants to help pregnant individuals who change their

16   mind about completing a medical abortion, and without waiving these objections, the People

17   respond as follows: Deny.

18   **REQUEST FOR ADMISSION NO. 27**:

19   Admit that DEFENDANT'S connection of women with APR practitioners is protected by

20   the REPRODUCTIVE PRIVACY ACT.

21   **RESPONSE TO REQUEST FOR ADMISSION NO. 27**:

22   Objection.  This request is vague and ambiguous, particularly as to "connection of women

23   with APR practitioners."  This request also seeks information that is not relevant or proportional

24   to any claim or defense in this action in that the claims and defenses in this case are limited to the

25   ability of HBI to use in advertisements and commercial speech specific statements that HBI

26   asserts are truthful with regard to APR.  (Compl. ¶¶96-101.)

27   To the extent HBI's request is admit that HBI's use of the eight specific statements

28   identified in the Complaint and used in HBI's advertisements and commercial speech for APR is

12

1    protected under the Reproductive Privacy Act, and without waiving these objections, the People

2    respond as follows: Deny.

3    **REQUEST FOR ADMISSION NO. 28:**

4        Admit that DEFENDANT'S speech related to its connection of women with APR

5    practitioners is protected by the REPRODUCTIVE PRIVACY ACT.

6    **RESPONSE TO REQUEST FOR ADMISSION NO. 28:**

7        Objection.  This request is vague and ambiguous, particularly as to "speech related to its

8    connection of women with APR practitioners."  This request also seeks information that is not

9    relevant or proportional to any claim or defense in this action in that the claims and defenses in

10   this case are limited to the ability of HBI to use in advertisements and commercial speech specific

11   statements that HBI asserts are truthful with regard to APR.  (Compl. ¶¶96-101.)

12       To the extent HBI's request is admit that HBI's use of the eight specific statements

13   identified in the Complaint and used in HBI's advertisements and commercial speech for APR is

14   protected under the Reproductive Privacy Act, and without waiving these objections, the People

15   respond as follows: Deny

16   **REQUEST FOR ADMISSION NO. 29:**

17       Admit that DEFENDANT receives no kickback or other payment for referring a pregnant

18   woman to a physician in the APR Network.

19   **RESPONSE TO REQUEST FOR ADMISSION NO. 29:**

20       Objection.  This request is vague and ambiguous, particularly as to the terms "kickback"

21   and "other payment."  This request is also compound.

22       To the extent HBI's request is admit that HBI receives no payment, including fundraising

23   contributions, in connection with referring pregnant individuals to physicians in the APR

24   network, and in light of the ongoing discovery process and without waiving these objections, the

25   People respond as follows: Deny.

26   **REQUEST FOR ADMISSION NO. 30:**

27       Admit that DEFENDANT has not represented that APR more than 72-hours after

28   ingestion of mifepristone has been the subject of scientific study.

1   **RESPONSE TO REQUEST FOR ADMISSION NO. 30:**

2        Objection.  This statement is vague and ambiguous, particularly as to the term

3   "represented."  This request also seeks information that is not relevant or proportional to any

4   claim or defense in this action in that the claims and defenses in this case are limited to the ability

5   of HBI to use in advertisements and commercial speech specific statements that HBI asserts are

6   truthful with regard to APR.  (Compl. ¶¶96-101.)

7        To the extent that HBI's request is admit that the statements at issue in the People's

8   Complaint do not include an allegation that HBI has made explicit statements in the APR-related

9   advertisements or commercial speech identified in the Complaint that APR administered more

10  than 72-hours after mifepristone administration has been the subject of scientific study, and in

11  light of the ongoing discovery process and without waiving these objections, the People respond

12  as follows: Admit.

13  **REQUEST FOR ADMISSION NO. 31:**

14       Admit that DEFENDANT has not represented that APR following ingestion of

15  misoprostol has been the subject of scientific study.

16  **RESPONSE TO REQUEST FOR ADMISSION NO. 31:**

17       Objection.  This statement is vague and ambiguous, particularly as to the term

18  "represented."  This request also seeks information that is not relevant or proportional to any

19  claim or defense in this action in that the claims and defenses in this case are limited to the ability

20  of HBI to use in advertisements and commercial speech specific statements that HBI asserts are

21  truthful with regard to APR.  (Compl. ¶¶96-101.)

22       To the extent that HBI's request is admit that the statements at issue in the People's

23  Complaint do not include an allegation that HBI has made explicit statements in the APR-related

24  advertisements or commercial speech identified in the Complaint that APR administered after

25  misoprostol administration has been the subject of scientific study, and in light of the ongoing

26  discovery process and without waiving these objections, the People respond as follows: Admit.

27  **REQUEST FOR ADMISSION NO. 32:**

28       Admit that DEFENDANT has not represented that APR following ingestion of

14

1    methotrexate has been the subject of scientific study.

2    **RESPONSE TO REQUEST FOR ADMISSION NO. 32:**

3    Objection.  This statement is vague and ambiguous, particularly as to the term

4    "represented."  This request also seeks information that is not relevant or proportional to any

5    claim or defense in this action in that the claims and defenses in this case are limited to the ability

6    of HBI to use in advertisements and commercial speech specific statements that HBI asserts are

7    truthful with regard to APR.  (Compl. ¶¶96-101.)

8    To the extent that HBI's request is admit that the statements at issue in the People's

9    Complaint do not include an allegation that HBI has made explicit statements in the APR-related

10   advertisements or commercial speech identified in the Complaint that APR administered after

11   methotrexate administration has been the subject of scientific study, and in light of the ongoing

12   discovery process and without waiving these objections, the People respond as follows: Admit.

13   **REQUEST FOR ADMISSION NO. 33:**

14   Admit that DEFENDANT does not sell its "APR Healthcare Professional Kit."

15   **RESPONSE TO REQUEST FOR ADMISSION NO. 33:**

16   The People respond as follows: Discovery remains ongoing. Based exclusively on HBI's

17   representation in its Answer (¶71), the People admit.

18   **REQUEST FOR ADMISSION NO. 34:**

19   Admit that DEFENDANT does not profit from nor seek a commercial benefit related to

20   the dissemination of its "APR Healthcare Professional Kit."

21   **RESPONSE TO REQUEST FOR ADMISSION NO. 34:**

22   Objection.  This request is vague and ambiguous, particularly as to the terms "does not

23   profit" and "seek a commercial benefit."  This request is also compound.

24   To the extent that HBI's request is admit that HBI receives no financial benefit, including

25   contributions from fundraising, in connection with its dissemination of the APR Healthcare

26   Professional Kit, and without waiving these objections, the People respond as follows: Deny.

27

28

1

2

3    Dated:  November 26, 2024                    Respectfully submitted,

4                                                ROB BONTA
                                                 Attorney General of California

5                                                KARLI EISENBERG
                                                 KATHLEEN BOERGERS

6                                                Supervising Deputy Attorneys General

7
                                                 */s Erica Connolly*

8                                                ERICA CONNOLLY
                                                 HAYLEY PENAN

9                                                LAUREN ZWEIER
                                                 Deputy Attorneys General

10
                                                 *Attorneys for the People of the State of*

11                                               *California*

12   SA2023303807
     67111617.docx

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF PEOPLE OF THE STATE OF CALIFORNIA'S RESPONSES TO THE DEFENDANT HEARTBEAT
INTERNATIONAL, INC.'S REQUESTS FOR ADMISSION, SET ONE (23CV044940)

1

**VERIFICATION**

2      I am a Senior Legal Assistant employed by the California Department of Justice, Office of

3  the Attorney General, through which the People of the State of California ("the People") has filed

4  this suit, and I am authorized to make this verification on behalf of the People.  I have read the

5  foregoing Plaintiff People of The State Of California's Responses to the Defendant Heartbeat

6  International, Inc.'s Requests For Admission, Set One and know its contents.  I am informed and

7  believe that the matters stated therein are true and on that ground certify or declare under penalty

8  of perjury under the laws of the State of California that the same are true and correct.

9

10      Executed on ___11/22/2024_____, in Sacramento, California.

11

12                                        *Wendy Harrison*
                                          _____

13                                        Wendy Harrison

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF SERVICE BY E-MAIL and U.S. MAIL

Case Name:  **People v. Heartbeat Int'l, Inc., et al.**
No.:        **23CV044940**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made.  I am 18 years of age or older and not a party to this matter.  I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service.  In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service with postage thereon fully prepaid that same day in the ordinary course of business.

On <u>November 26, 2024</u>, I served the attached **PLAINTIFF PEOPLE OF THE STATE OF CALIFORNIA'S RESPONSES TO THE DEFENDANT HEARTBEAT INTERNATIONAL, INC.'S REQUESTS FOR ADMISSION, SET ONE** by transmitting a true copy via electronic mail.  In addition, I placed a true copy thereof enclosed in a sealed envelope, in the internal mail system of the Office of the Attorney General, addressed as follows:

Paul Jonna
Jeff Trissell
LiMandri & Jonna LLP
P.O. Box 9120
Rancho Santa Fe, CA 92067
pjonna@limandri.com
jtrissell@limandri.com
*Attorneys for Heartbeat International & RealOptions*

Andrew Hollins
Ethan Reimers
650 Town Center Dr., Suite 700
Costa Mesa, CA 92626
ahollins@messner.com
ereimers@messner.com
*Attorneys for RealOptions*

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on November 26, 2024, at Los Angeles, California.

| | |
|---|---|
| Cheryll Tran | *CHERYLL TRAN* |
| Declarant | Signature |

SA2023303807

**EXHIBIT P**

1  ROB BONTA
   Attorney General of California
2  NELI N. PALMA (SBN: 203374)
   Senior Assistant Attorney General
3  KARLI EISENBERG (SBN: 281923)
   KATHLEEN BOERGERS (SBN: 213530)
4  Supervising Deputy Attorneys General
   ERICA CONNOLLY (SBN: 288822)
5  HAYLEY PENAN (SBN: 313693)
   LAUREN ZWEIER (SBN: 291361)
6  Deputy Attorneys General
     1300 I Street, Suite 125
7    P.O. Box 944255
     Sacramento, CA 94244-2550
8    Telephone:  (916) 210-7755
     Fax:  (916) 327-2319
9    E-mail:  Erica.Connolly@doj.ca.gov

10 *Attorneys for Plaintiff*
   *People of the State of California*

11

12              SUPERIOR COURT OF THE STATE OF CALIFORNIA

13                          COUNTY OF ALAMEDA

14

15

16

17 **THE PEOPLE OF THE STATE OF**          Case No. 23CV044940
   **CALIFORNIA,**
18                                          **PLAINTIFF THE PEOPLE OF THE**
                                Plaintiff,  **STATE OF CALIFORNIA'S**
19                                          **RESPONSES TO DEFENDANTS**
             v.                             **HEARTBEAT INTERNATIONAL, INC.'S**
                                            **AND REALOPTIONS, INC.'S**
20                                          **REQUESTS FOR PRODUCTION OF**
   **HEARTBEAT INTERNATIONAL, INC.,**       **DOCUMENTS, SET ONE**
21 **REALOPTIONS, DOES 1-100,**
   **INCLUSIVE,**                           Dept:        23
22                                          Judge:       The Honorable Michael M.
                               Defendants.               Markman
23                                          Action Filed:   September 21, 2023

24

25 PROPOUNDING PARTY(IES):     Defendants HEARTBEAT INTERNATIONAL, INC. and
                               REALOPTIONS, INC.

26 RESPONDING PARTY(IES):      Plaintiff THE PEOPLE OF THE STATE OF
                               CALIFORNIA
27

28 SET NO.:                    ONE

                                          1

1    Pursuant to California Code of Civil Procedure Section 2031.210, et seq., Plaintiff People

2    of the State of California, by and through Attorney General Rob Bonta ("Plaintiff" or "the

3    People"), hereby responds and objects to Defendants Heartbeat International, Inc.'s ("HBI") and

4    RealOptions, Inc.'s ("RO") (collectively "Defendants") First Set of Requests for Production, as

5    follows:

6    **PRELIMINARY STATEMENT**

7    The People has not fully completed its discovery in this action or preparation for potential

8    motions and trial.  The People expressly reserves the right to change, amend, modify, or

9    supplement these responses in the event of error, mistake, or omission, and as the People

10   ascertains additional facts or obtains additional documents.  The People also reserves the right to

11   make any changes to these responses, if, at any time, additional or more accurate documents

12   become available, and to establish at a later date any additional facts that may be contained within

13   or discovered as a result of any additional documents.  Consistent with the People's responses

14   below, the People's rolling documents productions will identify the specific request number to

15   which the documents respond in compliance with the requirements of Code of Civil Procedure

16   section 2031.280, subd. (a).

17   **RESPONSES**

18   **REQUEST FOR PRODUCTION NO. 1:**

19   Produce all DOCUMENTS cited or referenced in YOUR COMPLAINT in this case.

20   **RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

21   Objection.  This request seeks documents protected by the attorney/client, work product,

22   trade secret, official information, and deliberative process privileges, including documents that

23   are privileged under Government Code sections 6254 and 6255.  This request seeks documents

24   not within the People's possession, custody, or control, that are publicly available or otherwise

25   equally available to Defendants, or are more appropriately obtained from other sources.

26   Subject to and without waiving these objections, and pursuant to the parties meet and

27   confer agreements, the People responds as follows:  the People agrees to produce on a rolling

28   basis all non-privileged documents in its possession, custody, or control that are explicitly cited or

2

1    referenced in the Complaint and that are not publicly available online.

2    **REQUEST FOR PRODUCTION NO. 2:**

3       Produce all DOCUMENTS identified in YOUR responses to interrogatories.

4    **RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

5       Objection.  This request seeks documents protected by the attorney/client, work product,

6    trade secret, official information, and deliberative process privileges, including documents that

7    are privileged under Government Code sections 6254 and 6255.  This request is overbroad and

8    unduly burdensome or expensive, taking into account the needs of the case, the amount in

9    controversy, the parties' relative access to relevant information, the parties' resources, the

10    importance of the discovery in resolving the issues, and whether the burden or expense of the

11    proposed discovery outweighs its likely benefit.

12       Subject to and without waiving the foregoing objections, the People responds as follows:

13    the People will produce on a rolling basis all responsive, non-privileged documents in its

14    possession, custody, or control that are identified in its responses to interrogatories.

15    **REQUEST FOR PRODUCTION NO. 3:**

16       Produce all DOCUMENTS consisting of complaints made by APR patients regarding

17    APR treatment which are known to YOU.

18    **RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

19       Objection.  This request seeks documents protected by the attorney/client, work product,

20    official information, trade secret, and deliberative process privileges, including documents that

21    are privileged under Government Code sections 6254 and 6255.  This request also seeks

22    documents protected by the privacy privilege in the California Constitution and health privacy

23    laws.

24       Subject to and without waiving the foregoing objections, the People respond as follows:

25    Following a reasonable search, the People do not believe it has any documents in its possession,

26    custody, or control that consist of complaints made by APR patients regarding APR treatment.

27    **REQUEST FOR PRODUCTION NO. 4:**

28       Produce all DOCUMENTS consisting of complaints made to the Crisis Pregnancy Center

3

1  webpage on the California Department of Justice website, located at https://oag.ca.gov/crisis-

2  pregnancy-center-complaint.

3  **RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

4       Objection.  This request is overbroad and not reasonably calculated to lead to the

5  discovery of admissible evidence, particularly because it is not limited to complaints related to

6  APR.  This request seeks documents protected by the attorney/client, work product, official

7  information, trade secret, and deliberative process privileges, including documents that are

8  privileged under Government Code sections 6254 and 6255.  This request seeks documents

9  protected by the privacy privilege in the California Constitution.

10       Based on these objections, the People will not respond to this request.

11  **REQUEST FOR PRODUCTION NO. 5:**

12       Produce all DOCUMENTS created by YOU or on YOUR behalf which in any way

13  memorialize your recollection of any events alleged in the COMPLAINT.

14  **RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

15       Objection.  This request seeks documents protected by the attorney/client, work product,

16  official information, trade secret, and deliberative process privileges, including documents that

17  are privileged under Government Code sections 6254 and 6255.

18       Subject to and without waiving the foregoing objections, the People responds as follows:

19  the People has no non-privileged documents in its possession, custody, or control that

20  memorialize recollections of any events alleged in the Complaint.

21  **REQUEST FOR PRODUCTION NO. 6:**

22       Produce all DOCUMENTS which substantiate any fact which YOU contend is relevant to

23  the misconduct alleged in YOUR COMPLAINT filed in this case.

24  **RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

25       Objection.  This request is overbroad and unduly burdensome or expensive, taking into

26  account the needs of the case, the amount in controversy, the parties' relative access to relevant

27  information, the parties' resources, the importance of the discovery in resolving the issues, and

28  whether the burden or expense of the proposed discovery outweighs its likely benefit.  This

4

1    request seeks documents protected by the attorney/client, work product, trade secret, official

2    information, and deliberative process privileges, including documents that are privileged under

3    Government Code sections 6254 and 6255. This request seeks documents not within the People's

4    possession, custody, or control, that are publicly available or otherwise equally available to

5    Defendants, or are more appropriately obtained from other sources.

6         Subject to and without waiving these objections, and pursuant to the parties meet and

7    confer agreements, the People responds as follows: the People agrees to produce on a rolling

8    basis all non-privileged documents in its possession, custody, or control that are responsive to this

9    request and that are not publicly available online.

10   **REQUEST FOR PRODUCTION NO. 7:**

11        Produce all DOCUMENTS and COMMUNICATIONS related to any investigations into

12   DEFENDANTS' businesses or practices.

13   **RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

14        Objection.  This request is not reasonably calculated to lead to the discovery of admissible

15   evidence because it seeks documents and communications unrelated to the allegations in the

16   Complaint.  This request is also overbroad and unduly burdensome or expensive, taking into

17   account the needs of the case, the amount in controversy, the parties' relative access to relevant

18   information, the parties' resources, the importance of the discovery in resolving the issues, and

19   whether the burden or expense of the proposed discovery outweighs its likely benefit.  This

20   request also seeks documents protected by the attorney/client, work product, official information,

21   trade secret, and deliberative process privileges, including documents that are privileged under

22   Government Code sections 6254 and 6255. This request also seeks documents not within its

23   possession, custody, or control or that are equally available to Defendants.  This request is also

24   vague and ambiguous, particularly as to the "business or practices."

25        Subject to and without waiving the foregoing objections, the People interprets this request

26   as seeking documents related to investigations into HBI and RO's use of the specific statements

27   identified in the People's Complaint as false and misleading that HBI and RO use in their

28   advertisements and commercial speech for APR.  In light of this interpretation and the ongoing

5

1    discovery process, the People responds as follows:  Following a reasonable, the People believe

2    that the only responsive, non-privileged documents in the People's possession, custody, or control

3    that are related to the allegations in the Complaint are already in Defendants' possession, custody,

4    or control, namely, subpoena requests to Defendants and communications about those requests

5    with Defendants.

6    **REQUEST FOR PRODUCTION NO. 8:**

7       Produce all COMMUNICATIONS between YOU and Dr. Mitchell Creinin related to

8    APR.

9    **RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

10      Objection.  This request seeks documents protected by the attorney/client, work product,

11    official information, trade secret, and deliberative process privileges, including documents that

12    are privileged under Government Code sections 6254 and 6255.  This request seeks documents

13    protected by the privacy privilege in the California Constitution.

14      Subject to and without waiving the foregoing objections, the People responds as follows:

15    the People will produce on a rolling basis all responsive, non-privileged communications with Dr.

16    Mitchell Creinin related to APR in the People's possession, custody, or control.

17    **REQUEST FOR PRODUCTION NO. 9:**

18      Produce all COMMUNICATIONS between YOU and Dr. Daniel Grossman related to

19    APR.

20    **RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

21      Objection.  This request seeks documents protected by the attorney/client, work product,

22    official information, trade secret, and deliberative process privileges, including documents that

23    are privileged under Government Code sections 6254 and 6255.

24      Subject to and without waiving the foregoing objections, the People responds as follows:

25    the People will produce on a rolling basis all responsive, non-privileged communications with Dr.

26    Daniel Grossman related to APR in the People's possession, custody, or control.

27    **REQUEST FOR PRODUCTION NO. 10:**

28      Produce all COMMUNICATIONS between YOU and Dr. Courtney Schreiber related to

6

1   APR.

2   **RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

3       Objection.  This request seeks documents protected by the attorney/client, work product,

4   official information, trade secret, and deliberative process privileges, including documents that

5   are privileged under Government Code sections 6254 and 6255.

6       Subject to and without waiving the foregoing objections, the People responds as follows:

7   the People will produce on a rolling basis all responsive, non-privileged communications with Dr.

8   Courtney Schreiber related to APR in the People's possession, custody, or control.

9   **REQUEST FOR PRODUCTION NO. 11:**

10      Produce all COMMUNICATIONS between YOU and Dr. Steven Joffe related to APR.

11  **RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

12      Objection.  This request seeks documents protected by the attorney/client, work product,

13  official information, trade secret, and deliberative process privileges, including documents that

14  are privileged under Government Code sections 6254 and 6255.

15      Subject to and without waiving the foregoing objections, the People responds as follows:

16  the People will produce on a rolling basis all responsive, non-privileged communications with Dr.

17  Steven Joffe related to APR in the People's possession, custody, or control.

18  **REQUEST FOR PRODUCTION NO. 12:**

19      Produce all COMMUNICATIONS between YOU and Dr. Brian M. Wildey related to

20  APR.

21  **RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

22      The People responds as follows: Following a reasonable search, the People believe it has

23  no documents responsive to this request.

24  **REQUEST FOR PRODUCTION NO. 13:**

25      Produce all COMMUNICATIONS between YOU and Dr. Thomas Cunningham related to

26  APR.

27  **RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

28      The People responds as follows: Following a reasonable search, the People believe it has

7

1    no documents responsive to this request.

2    **REQUEST FOR PRODUCTION NO. 14:**

3        Produce all COMMUNICATIONS between YOU and Dr. Rebecca Cohen related to APR.

4    **RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

5        The People responds as follows: Following a reasonable search, the People believe it has

6    no documents responsive to this request.

7    **REQUEST FOR PRODUCTION NO. 15:**

8        Produce all DOCUMENTS in your possession, custody, or control related to research

9    conducted by or on behalf of Danco Laboratories into the risks associated with taking the first

10    abortion pill, mifepristone, without taking the second pill, misoprostol.

11    **RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

12        Objection.  This request seeks documents equally available to Defendants as to the People.

13    This request is also vague and ambiguous, particularly as to the phrase "on behalf of" and "risks

14    associated with."

15        Subject to and without waiving the foregoing objections, the People responds as follows:

16    Following a reasonable search, the People believe that the only responsive document that the

17    People has in its possession, custody, or control is a document that Defendants provided in

18    support of their demurrers to the People's complaint (see Heartbeat International, Inc.'s Req. for

19    J. Notice in Supp. of Demurrer ("HBI RJN"), Ex. 43), and that the People has no other documents

20    responsive to this request.

21    **REQUEST FOR PRODUCTION NO. 16:**

22        Produce all COMMUNICATIONS in your possession, custody, or control between Dr.

23    Mitchell Creinin and Danco Laboratories related to the CREININ STUDY.

24    **RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

25        The People responds as follows: Following a reasonable search, the People believe it has

26    no documents responsive to this request.

27    **REQUEST FOR PRODUCTION NO. 17:**

28        Produce all COMMUNICATIONS and DOCUMENTS in your possession, custody, or

1  control that Danco Laboratories produced, commissioned, or cited related to research into risks

2  associated or considered to be potentially associated with Mifepristone and Misoprostol.

3  **RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

4  Objection.  This request seeks documents equally available to Defendants as to the

5  People.  This request is also vague and ambiguous, particularly as to the phrase "considered to be

6  potentially associated with."

7  Subject to and without waiving the foregoing objections, the People responds as follows:

8  Following a reasonable search, the People believe that the only responsive document that the

9  People has in its possession, custody, or control is a document that Defendants provided in

10  support of their demurrers to the People's complaint (see HBI RJN Ex. 43), and that the People

11  has no other documents responsive to this request.

12  **REQUEST FOR PRODUCTION NO. 18:**

13  Produce all COMMUNICATIONS between YOU and American College of Obstetricians

14  and Gynecologists ("ACOG") related to APR and the chemical abortion pills, mifepristone and

15  misoprostol.

16  **RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

17  Objection.  This request is not reasonably calculated to lead to the discovery of admissible

18  evidence, particularly as to communications with ACOG regarding mifepristone and misoprostol

19  unrelated to APR. This request is also overbroad and unduly burdensome or expensive, taking

20  into account the needs of the case, the amount in controversy, the parties' relative access to

21  relevant information, the parties' resources, the importance of the discovery in resolving the

22  issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

23  This request also seeks documents protected by the attorney/client, work product, official

24  information, trade secret, and deliberative process privileges, including documents that are

25  privileged under Government Code sections 6254 and 6255.

26  Subject to and without waiving the foregoing objections, the People respond as follows:

27  the People will produce on a rolling basis all responsive, non-privileged communications in its

28  possession, custody, or control between the People and ACOG related to APR and related to

9

1    mifepristone and misoprostol in the context of APR.

2    **REQUEST FOR PRODUCTION NO. 19:**

3          Produce all COMMUNICATIONS between YOU and American Medical Association

4    ("AMA") related to APR and the chemical abortion pills, mifepristone and misoprostol.

5    **RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

6          Objection.  This request is not reasonably calculated to lead to the discovery of admissible

7    evidence, particularly as to communications with ACOG regarding mifepristone and misoprostol

8    unrelated to APR.  This request also is overbroad and unduly burdensome or expensive, taking

9    into account the needs of the case, the amount in controversy, the parties' relative access to

10   relevant information, the parties' resources, the importance of the discovery in resolving the

11   issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

12   This request also seeks documents protected by the attorney/client, work product, official

13   information, trade secret, and deliberative process privileges, including documents that are

14   privileged under Government Code sections 6254 and 6255.

15         Subject to and without waiving the foregoing objections, the People respond as follows:

16   the People will produce on a rolling basis all responsive, non-privileged communications in its

17   possession, custody, or control between the People and the AMA related to APR and related to

18   mifepristone and misoprostol in the context of APR.

19   **REQUEST FOR PRODUCTION NO. 20:**

20         Produce all DOCUMENTS on which you are informed, believe, or contend that ACOG

21   and AMA relied upon in determining their respective opinions related to APR.

22   **RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

23         Objection.  This request seeks documents not within the People's possession, custody, or

24   control, that are publicly available or otherwise equally available to Defendants, or are more

25   appropriately obtained from other sources.

26         Subject to and without waiving the foregoing objections, the People responds as follows:

27   Following a reasonable search, the People does not believe it has any documents responsive to

28   this request.

1    **REQUEST FOR PRODUCTION NO. 21:**

2        Produce all DOCUMENTS and COMMUNICATIONS in your possession, custody, or

3    control related to any investigations into the 2018 DELGADO STUDY.

4    **RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

5        Objection.  This request is overbroad and unduly burdensome or expensive, taking into

6    account the needs of the case, the amount in controversy, the parties' relative access to relevant

7    information, the parties' resources, the importance of the discovery in resolving the issues, and

8    whether the burden or expense of the proposed discovery outweighs its likely benefit. This

9    request seeks documents protected by the attorney/client, work product, official information,

10   trade secret, and deliberative process privileges, including documents that are privileged under

11   Government Code sections 6254 and 6255. This request also seeks documents not within the

12   People's possession, custody, or control, that are publicly available or otherwise equally available

13   to Defendants, or are more appropriately obtained from other sources.  This request also is vague

14   and ambiguous, particularly as to the term "investigations."

15       Subject to and without waiving the foregoing objections, the People responds as follows:

16   the People will produce on a rolling basis all responsive, non-privileged communications in its

17   possession, custody, or control.

18   **REQUEST FOR PRODUCTION NO. 22:**

19       Produce all non-privileged DOCUMENTS in your possession, custody, or control related

20   to DEFENDANTS which are not being produced in response to other document requests.

21   **RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

22       Objection.  This request is not reasonably calculated to lead to the discovery of admissible

23   evidence, particularly because the request seeks documents unrelated to APR and the allegations

24   in the Complaint. This request is overbroad and unduly burdensome or expensive, taking into

25   account the needs of the case, the amount in controversy, the parties' relative access to relevant

26   information, the parties' resources, the importance of the discovery in resolving the issues, and

27   whether the burden or expense of the proposed discovery outweighs its likely benefit for the same

28   reason.  This request is also vague, ambiguous, and overbroad, particularly as to the phrase

1    "related to Defendants."  This request seeks publicly available documents or documents that are

2    equally available to Defendants.

3          Subject to and without waiving the foregoing objections, the People respond as follows:

4    the People will produce non-privileged documents that are related to the allegations against

5    Defendants in the Complaint to the extent not otherwise produced.

6

7    Dated:  November 26, 2024                          Respectfully submitted,

8                                                       ROB BONTA
                                                        The People of California
9                                                       KARLI EISENBERG
                                                        KATHLEEN BOERGERS
10                                                      Supervising Deputy Attorneys General

11

12                                                      */s/ Erica Connolly*
                                                        ERICA CONNOLLY
13                                                      HAYLEY PENAN
                                                        LAUREN ZWEIER
14                                                      Deputy Attorneys General

15                                                      *Attorneys for the People of the State of*
                                                        *California*
16    SA2023303807
17    67112267.docx

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF SERVICE BY E-MAIL and U.S. MAIL

Case Name:    **People v. Heartbeat Int'l, Inc., et al.**
No.:              **23CV044940**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made.  I am 18 years of age or older and not a party to this matter.  I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service.  In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service with postage thereon fully prepaid that same day in the ordinary course of business.

On <u>November 26, 2024</u>, I served the attached **PLAINTIFF THE PEOPLE OF THE STATE OF CALIFORNIA'S RESPONSES TO DEFENDANTS HEARTBEAT INTERNATIONAL, INC.'S AND REALOPTIONS, INC.'S REQUESTS FOR PRODUCTION OF DOCUMENTS, SET ONE** by transmitting a true copy via electronic mail. In addition, I placed a true copy thereof enclosed in a sealed envelope, in the internal mail system of the Office of the Attorney General, addressed as follows:

Paul Jonna
Jeff Trissell
LiMandri & Jonna LLP
P.O. Box 9120
Rancho Santa Fe, CA 92067
pjonna@limandri.com
jtrissell@limandri.com
*Attorneys for Heartbeat International & RealOptions*

Andrew Hollins
Ethan Reimers
650 Town Center Dr., Suite 700
Costa Mesa, CA 92626
ahollins@messner.com
ereimers@messner.com
*Attorneys for RealOptions*

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on November 26, 2024, at Los Angeles, California.

| Cheryll Tran | *CHERYLL TRAN* |
|---|---|
| Declarant | Signature |

SA2023303807

**EXHIBIT Q**

1  ROB BONTA
Attorney General of California
2  NELI N. PALMA (SBN: 203374)
Senior Assistant Attorney General
3  KARLI EISENBERG (SBN: 281923)
KATHLEEN BOERGERS (SBN: 213530)
4  Supervising Deputy Attorneys General
ERICA CONNOLLY (SBN: 288822)
5  HAYLEY PENAN (SBN: 313693)
LAUREN ZWEIER (SBN: 291361)
6  Deputy Attorneys General
  1300 I Street, Suite 125
7  P.O. Box 944255
Sacramento, CA 94244-2550
8  Telephone:  (916) 210-7755
Fax:  (916) 327-2319
9  E-mail:  Erica.Connolly@doj.ca.gov

10  *Attorneys for Plaintiff*
*People of the State of California*

11

12                SUPERIOR COURT OF THE STATE OF CALIFORNIA

13                          COUNTY OF ALAMEDA

14

15

16
17  **THE PEOPLE OF THE STATE OF CALIFORNIA,**                    Case No. 23CV044940

18                                    Plaintiff,   **PLAINTIFF THE PEOPLE OF THE STATE OF CALIFORNIA'S RESPONSES TO DEFENDANT**
19                v.                              **HEARTBEAT INTERNATIONAL, INC.'S SPECIAL INTERROGATORIES (SET ONE)**
20
21  **HEARTBEAT INTERNATIONAL, INC., REALOPTIONS, DOES 1-100, INCLUSIVE,**   Dept:        23
22                                               Judge:       Hon. Michael M. Markman
                                    Defendants.   Action Filed:   September 21, 2023
23

24
25  PROPOUNDING PARTY(IES):        Defendant HEARTBEAT INTERNATIONAL, INC.

26  RESPONDING PARTY(IES):         Plaintiff THE PEOPLE OF THE STATE OF CALIFORNIA

27  SET NO.:                       ONE

28

1    Pursuant to California Code of Civil Procedure Section 2031.210, et seq., Plaintiff People

2    of the State of California, by and through Attorney General Rob Bonta ("Plaintiff" or "the

3    People"), hereby responds and objects to Defendants Heartbeat International, Inc.'s ("HBI") First

4    Set of Special Interrogatories, as follows:

5    **PRELIMINARY STATEMENT**

6    The People has not yet fully completed the investigation of the facts relating to this case

7    and has not yet fully completed discovery in this action.  All of the responses contained herein are

8    based solely upon information and documents which are presently available to, and specifically

9    known by the People and disclose only those contentions which presently occur to the People.  It

10    is anticipated that further discovery, independent investigation, legal research and analysis will

11    supply additional facts and lead to additions, changes, and variations from the answers herein.

12    The following responses are given without prejudice to the right to produce evidence or

13    witnesses which the People may later discover.  The People accordingly reserves the right to

14    change any and all responses herein as additional facts are ascertained, witnesses identified and

15    legal research is completed.  The responses contained herein are made in good faith in an attempt

16    to supply as much factual information and as much specification of legal contention as is

17    presently known and should in no way prejudice the People in relation to further discovery and

18    proceedings.

19    **INTERROGATORY NO. 1:**

20    If YOU contend that APR is not an effective treatment for the continuation of a pregnancy,

21    state all bases for this contention, including by IDENTIFYING all medical and scientific studies

22    supporting the contention that APR is not an effective treatment for the continuation of a pregnancy.

23    **RESPONSE TO INTERROGATORY NO. 1:**

24    Objection.  This interrogatory seeks information that is not relevant or proportional to any

25    claim or defense in this action in that the claims and defenses in this case are limited to the ability

26    of HBI to use in advertisements and commercial speech specific statements that HBI asserts are

27    truthful with regard to APR.  (Compl. ¶¶96-101.)  This interrogatory is vague and ambiguous,

28    specifically as to the terms "effective treatment" and "APR," in light of HBI's definition that

2

PLAINTIFF THE PEOPLE OF THE STATE OF CALIFORNIA'S RESPONSES TO DEFENDANT HEARTBEAT INTERNATIONAL, INC.'S
SPECIAL INTERROGATORIES, SET ONE (23CV044940)

1   APR "means any Abortion Pill Reversal protocol involving a pregnant woman taking progesterone to

2   attempt to counteract the effects of a chemical abortion, whether within 72 hours of taking

3   mifepristone, after 72 hours of taking mifepristone, after taking misoprostol, or after taking

4   methotrexate."   This interrogatory seeks premature expert discovery.  (See Civ. Proc. Code §

5   2034.210 [providing method for simultaneous and mutual demand of expert witness

6   information].)

7          Subject to and without waiving the foregoing objections, the People interprets this

8   interrogatory to request the bases for the People's contention that APR, as defined by HBI, is not

9   likely to increase the chances of pregnancy continuation following mifepristone-only

10  administration, mifepristone and misoprostol administration, and methotrexate administration

11  and, in light of the ongoing discovery process, responds as follows:

12         While mifepristone in combination with misoprostol is a highly safe and effective method

13  of pregnancy termination, the effectiveness of mifepristone-alone administration for pregnancy

14  termination is highly debatable, given that most studies looking at its effectiveness used dosages

15  (600 mg) far larger than the current recommended dose (200 mg).  (See Daniel Grossman et al.,

16  *Continuing Pregnancy After Mifepristone and "Reversal" of First-Trimester Medical Abortion: A*

17  *Systematic Review* (2015) 92 Contraception 206-11.) According to one analysis, continued

18  pregnancies after mifepristone-only administration can range from 8% to 46%.  (See *Ibid.*)  In

19  other words, there is a significant chance that a pregnancy will continue after mifepristone-only

20  administration.

21         Despite the significant uncertainty regarding the rate of continued pregnancy following

22  mifepristone-only administration, the key article on which HBI relies for the accuracy of this

23  statement, the 2018 article by Dr. George Delgado, et al., *A Case Series Detailing the Successful*

24  *Reversal of the Effects of Mifepristone Using Progesterone* ("2018 Report"), adopted the

25  artificially low rate of 25% for continuing pregnancy after mifepristone-only administration.  (*Id.*

26  at pp.24-25.) By erroneously claiming that only 25% of pregnancies would continue after

27  mifepristone-only administration, the 2018 Report thereby also erroneously claimed that any rate

28  of pregnancy continuation above 25% must be due to supplemental progesterone, rather than to

3

1   the failure of mifepristone-only administration's failure to terminate the pregnancy.  (See Daniel

2   Grossman, Kari White, *Abortion "Reversal" – Legislating Without Evidence* (Oct. 18, 2018) 379

3   N. Eng. J. Med. 1491.)

4          The 2018 Report's methodology is also so flawed that, even without the artificially low

5   rate for continued pregnancies after mifepristone-only administration, the article does not support

6   that APR increases the chances of pregnancy continuation after mifepristone-only administration.

7   The 2018 Report was a "retrospective analysis" of the data of 754 patients, treated by 325

8   providers, with 207 patients excluded for a variety of reasons: 1) 38 patients were more than 72

9   hours post mifepristone or had ingested misoprostol; 2) 112 patients were lost contacts before 20

10  weeks of gestation; and 3) 57 patients chose to terminate their pregnancies.  (2018 Report at

11  p.25.)  A "retrospective analysis" does not provide evidence of causation showing the efficacy of

12  medical treatments, especially where, as here, the medical treatment occurs via 325 different

13  providers and lacks any controls to establish causation.  (See Opeyemi O. Daramola, John S.

14  Rhee, *Rating Evidence in Med. Literature* (Jan. 2011) 13 Am. Med. Assn. J. Ethics 1:46 ("Rating

15  Evidence").)  In addition, as the 2018 Report acknowledges, the 325 providers most likely

16  screened patients via ultrasound for live embryos, thereby resulting in large (but notably

17  unknown) proportion of the patients having pregnancies already likely to survive mifepristone-

18  only administration, thereby biasing the patient population toward "reversals."  (2018 Report at

19  p.29.)

20         Of the 547 patients included in the analysis, 257 of the patients either gave birth or were

21  lost contacts after 20 weeks and were included as "successes."  (*Id.* at pp.24-25.)  Those patients

22  received a wide variety of supplemental progesterone dosages and methods of administration,

23  ranging from 1) "high dose oral" to 2-6) "intramuscular" injections ranging from one to eleven-

24  plus injections to 7) oral capsules administered vaginally to 8) vaginal suppositories.  (*Id.* at p.27.)

25  The 2018 Report claimed an overall "reversal rate" of 48% with the "high dose oral" group

26  having a 68% "reversal rate" and the collective intramuscular injections having a 64% "reversal

27  rate."  (*Ibid.*)  Although the 2018 Report acknowledges that continued pregnancies were

28  correlated with later gestational ages, the article makes no connection between the various

4

1   dosages and methods of supplemental progesterone administration with gestational age.  (*Id.* at

2   pp.27-28.)

3           The 2018 Report suffers from additional flaws.  First, Dr. George Delgado ("Delgado"),

4   one of the article's primary authors, did not disclose his relationship with the hotline from which

5   the 2018 Report draws its data.  Along with a crisis pregnancy center of which Delgado was a

6   medical director, Culture of Life Family Services, Inc. ("COLFS"), Delgado started a website and

7   hotline following a 2012 case series about APR, as well as a network of medical providers willing

8   to provide APR ("Abortion Pill Reversal Network" or "APRN").  (See Am. Compl. ¶43, *Culture*

9   *of Life Family Servs., Inc. v. Bonta* (S.D. Cal. Nov. 15, 2024) No. 24-cv-1338-GPC-KSC, ECF

10  No. 19.)  For several years, including while Delgado was collecting data for the 2018 Report,

11  COLFS and Delgado used APR and the APRN to fundraise.  (*See* Decl. of William Goyette in

12  Support of Prelim. Inj. Mot. ¶7, Exs. E-G, *Culture of Life Family Servs., Inc. v. Bonta* (S.D. Cal.

13  Nov. 15, 2024) No. 24-cv-1338-GPC-KSC, ECF No. 21-4.)  Despite this clear financial conflict

14  of interest, Delgado made no disclosure about his interests in the APRN in the 2018 Report.

15          Second, the 2018 Report did not have Institutional Review Board ("IRB") approval,

16  despite the experimental nature of the treatment.  In fact, the University of San Diego, which

17  initially granted an IRB waiver, actually withdrew that waiver based on concerns that the original

18  version of the 2018 Report was "ambiguous, leading many readers to incorrectly conclude that

19  the University of San Diego's IRB had reviewed and approved the entire study" when it had not.

20  (*Study Claiming "Abortion Reversal" Is Safe and Effective Temporarily Withdrawn for Ethical*

21  *Issues* (July 17, 2018) Retraction Watch ("Retraction Watch Article"),

22  https://retractionwatch.com/2018/07/17/study-claiming-abortion-reversal-is-safe-and-effective-

23  temporarily-withdrawn-for-ethical-issues/.)

24          Third, Issues in Law and Medicine, the publication where the 2018 Report appeared, is

25  not a reputable medical journal.  Upon the University of San Diego's withdrawal of its IRB

26  waiver, Issues in Law and Medicine allowed Delgado, et al., merely to revise the methodology of

27  the 2018 Report and to republish the article, which undermines the journal's credibility.  (See

28  Declaration of Dr. Mitchell D. Creinin in Support of Atty. Gen. Rob Bonta's Opp. to Plts' Mot.

5

1   for Prelim. Inj. ("Creinin Decl.") ¶¶45 subp. (g), *NIFLA v. Bonta*, 2:24-cv-08468, ECF No. 32

2   (C.D. Cal. Nov. 4, 2024).)  In addition, at the time of the 2018 Report, Watson Bowes Research

3   Institute ("Watson Bowes") co-published the journal with the National Legal Center for the

4   Medically Dependent & Disabled, Inc.  (See Masthead, 33 Issues in Law & Medicine (Spring

5   2018) ("A peer-reviewed publication of the Watson Bowes Research Institute and the National

6   Legal Center for the Medically Dependent & Disabled, Inc.")  The Watson Bowes Research

7   Institute is an arm of the American Association of Pro-Life Obstetricians and Gynecologists with

8   the mission of "fostering a fair scientific appraisal of claims pertinent to life issues."  (See Am.

9   Assn. of Pro-Life Obstetricians & Gynecologists (2017) Form 990 at p.15.)  Given the

10  involvement of the Watson Bowes Research Institute, Issues in Law and Medicine had an anti-

11  abortion policy viewpoint.

12       In sum, the 2018 Report is the product of significant conflicts of interest and provides

13  nothing more than anecdotes.  It does not establish that supplemental progesterone is likely to

14  increase the chances of pregnancy continuation after mifepristone-only administration.

15       Nor do the other articles to which HBI points establish that its statements that APR

16  "increases the chances" of pregnancy continuation are accurate.  (See HBI Req. for J. Not. ("HBI

17  RJN"), Exs. 10-17.)  Animal studies and case studies do not establish causation between medical

18  treatment and outcome.  (Rating Evidence at p.48; Creinin Decl. ¶51-55.)  Accordingly, HBI's

19  reliance on animal studies and case studies to support that APR increases the chances of

20  pregnancy continuation is unavailing.

21       In addition to the flaws in the purported evidence underlying HBI's statements that APR

22  increases the chances of pregnancy continuation after mifepristone-only administration, credible

23  medical studies show that mifepristone is absorbed quickly within the first hour or two after

24  administration, with slow metabolization over the first 72 hours and then quicker metabolization

25  after 72 hours.  (See Oskari Heikinheimo et al., *The Pharmacokinetics of Mifepristone in Humans*

26  *Reveal Insights Into Differential Mechanisms of Antiprogestin Action*, 68 Contraception 421, 422

27  (2003); N. N. Sarkar, *Mifepristone: Bioavailability, Pharmacokinetics, and Use-Effectiveness*,

28  101 Eur. J. Obstetrics & Gynecology & Reprod. Biology 113, 114–15 (2002).)  Credible medical

6

1  studies also show that mifepristone binds preferentially and more tightly than progesterone to the

2  progesterone receptors in the uterus and cervix.  Regine Sitruk-Ware & Irving M. Spitz,

3  *Pharmacological Properties of Mifepristone: Toxicology and Safety in Animal and Human*

4  *Studies*, 68 Contraception 409, 410 (2003).  These studies undermine the theory underlying APR

5  and support that APR is unlikely to increase the chances of pregnancy continuation after

6  mifepristone-only administration.

7         In short, there is no evidence showing that APR increases the chances of pregnancy

8  continuation after mifepristone-only administration.

9         As to APR's effectiveness after mifepristone and misoprostol administration and

10  methotrexate administration, neither the 2018 Report nor any of the other articles to which HBI

11  points even tested APR in the context of treatment after misoprostol or methotrexate

12  administration.  In fact, according to its methodology, the 2018 Report excluded patients who had

13  ingested misoprostol in addition to mifepristone.  (2018 Report at p.25.)

14         In short, there is no evidence supporting that APR may be effective after misoprostol or

15  methotrexate administration.

16  **INTERROGATORY NO. 2:**

17         If YOU contend that APR is not a safe treatment for the continuation of a pregnancy, state all

18  bases for this contention, including by IDENTIFYING all medical and scientific studies supporting

19  the contention that APR is not a safe treatment for the continuation of a pregnancy.

20  **RESPONSE TO INTERROGATORY NO. 2:**

21         Objection.  This interrogatory seeks information that is not relevant or proportional to any

22  claim or defense in this action in that the claims and defenses in this case are limited to the ability

23  of HBI to use in advertisements and commercial speech specific statements that HBI asserts are

24  truthful with regard to APR.  (Compl. ¶¶96-101.)  This interrogatory is also vague and

25  ambiguous, especially as to the terms "safe treatment."  This interrogatory also seeks premature

26  expert discovery.  (See Civ. Proc. Code § 2034.210 [providing method for simultaneous and

27  mutual demand of expert witness information].)

28         Subject to and without waiving the foregoing objections, the People interprets this

1   interrogatory to request the bases for the People's contention that HBI's statements that APR can

2   only cause non-life-threatening side effects while omitting that APR can cause severe bleeding

3   are false and misleading and, in light of the ongoing discovery process, responds as follows:

4          Each of the flaws stated in Response to Interrogatory No. 1 ("Response No. 1")

5   undermines any support for HBI's claims that APR can only cause non-life-threatening side

6   effects.  In addition, the 2018 Report did not track health outcomes for any patient, whether or not

7   their pregnancy continued.  (See generally 2018 Report.)  Nor do studies regarding the safety of

8   supplemental progesterone outside the context of APR provide support for HBI's statements,

9   given that those studies do not address the specific circumstances of stopping medication abortion

10  after mifepristone-only administration and only then administering supplemental progesterone.  A

11  2019 attempted study at U.C. Davis in fact suggests that stopping medication abortion after

12  mifepristone-only administration can result in bleeding requiring medical intervention, thereby

13  suggesting that serious side effects may occur.  (See Mitchell D. Creinin, et al., *Mifepristone*

14  *Antagonization with Progesterone to Prevent Med. Abortion: A Randomized Controlled Trial*

15  (Jan. 2020) 135 Obstetrics & Gynecology 158 ("UC Davis Study").)

16  **INTERROGATORY NO. 3:**

17         IDENTIFY all complaints made by APR patients regarding APR treatment which are known

18  to YOU.

19  **RESPONSE TO INTERROGATORY NO. 3:**

20         Objection.  This interrogatory is vague and ambiguous, particularly as to the terms "APR

21  patients," and "APR treatment."  This interrogatory seeks information protected by the

22  attorney/client, official information, and deliberative process privileges, including documents that

23  are privileged under Government Code sections 6254 and 6255.  This interrogatory also seeks

24  information protected by the privacy privilege in the California Constitution and health privacy

25  laws.

26         Subject to and without waiving the foregoing objections, the People interprets this

27  interrogatory to request complaints from individuals who underwent APR, as defined by HBI,

28  and, in light of the ongoing discovery process, responds as follows:  After a reasonable search, the

8

1    People are unaware of any complaints made by individuals who underwent APR, as defined by

2    HBI.

3    **INTERROGATORY NO. 4:**

4        IDENTIFY all complaints made to the Crisis Pregnancy Center webpage on the California

5    Department of Justice website, located at https://oag.ca.gov/crisis-pregnancy-center-complaint.

6    **RESPONSE TO INTERROGATORY NO. 4:**

7        Objection.  This interrogatory seeks information protected by the attorney/client, work

8    product, official information, and deliberative process privileges, including documents that are

9    privileged under Government Code sections 6254 and 6255.  This interrogatory also seeks

10   information protected by the privacy privilege in the California Constitution and health privacy

11   laws.  This interrogatory is also overbroad and seeks information that is not relevant or

12   proportional to any claim or defense in this action in that it seeks information regarding

13   complaints not related to Defendants' statements regarding APR.

14       Based on these objections, the People does not respond to this interrogatory.

15   **INTERROGATORY NO. 5:**

16       If YOU contend that APR within 72 hours of taking mifepristone has not been shown to be a

17   safe and effective treatment for the continuation of a pregnancy, but progesterone is otherwise a safe

18   and effective treatment for the continuation of a pregnancy, please state all facts supporting this

19   contention, including by IDENTIFYING all medical and scientific studies supporting the contention.

20   **RESPONSE TO INTERROGATORY NO. 5:**

21       Objection.  This interrogatory seeks information that is not relevant or proportional to any

22   claim or defense in this action in that the claims and defenses in this case are limited to the ability

23   of HBI to use in advertisements and commercial speech specific statements that HBI asserts are

24   truthful with regard to APR.  (Compl. ¶¶96-101.)  The safety of supplemental progesterone in

25   other treatments has no bearing on the safety of supplemental progesterone in the context of APR.

26   This interrogatory is also vague and ambiguous, particularly as to the terms "safe" and

27   "effective."  This interrogatory is also compound as there are numerous treatments where

28   providers might treat pregnant patients with supplemental progesterone and the "safety" versus

9

1   "effectiveness" of those treatments needs to be assessed on an individualized basis for each

2   patient.  This interrogatory also seeks premature expert discovery.  (See Civ. Proc. Code §

3   2034.210 [providing method for simultaneous and mutual demand of expert witness

4   information].)  This interrogatory is also duplicative of Interrogatory Nos. 1 and 2.

5        Based on these objections, the People only responds to the portion of the interrogatory that

6   asks for the bases for the People's contentions that HBI's statements that APR does not increase

7   the chances of pregnancy continuation after mifepristone-only administration and that APR

8   causes only non-life-threatening side effects are false and misleading and on that basis, and in

9   light of the ongoing discovery process, responds as follows:  See the People's Responses to

10  Interrogatory Nos. 1 and 2.

11  **INTERROGATORY NO. 6:**

12       If YOU contend that a woman has a constitutional or statutory right to choose to terminate a

13  pregnancy but has no constitutional or statutory right to choose APR, please explain why.

14  **RESPONSE TO INTERROGATORY NO. 6:**

15       Objection.  This interrogatory seeks information that is not relevant or proportional to any

16  claim or defense in this action in that the claims and defenses in this case are limited to the ability

17  of HBI to use in advertisements and commercial speech specific statements that HBI asserts are

18  truthful with regard to APR.  (Compl. ¶¶96-101.)  This interrogatory also contains a false premise

19  in that the People have not alleged nor contended that pregnant individuals cannot receive

20  supplemental progesterone following mifepristone-only administration.  This interrogatory is also

21  vague and ambiguous, particularly as to the terms "constitutional or statutory right."  This

22  interrogatory is also compound.  This interrogatory also seeks legal conclusions.

23       Based on these objections, the People does not respond to this request.

24  **INTERROGATORY NO. 7:**

25       If YOU contend that a woman has a constitutional or statutory right to choose APR, but that

26  DEFENDANTS may not speak about APR, please explain why.

27  **RESPONSE TO INTERROGATORY NO. 7:**

28       Objection.  This interrogatory seeks information that is not relevant or proportional to any

10

1  claim or defense in this action in that the claims and defenses in this case are limited to the ability

2  of HBI to use in advertisements and commercial speech specific statements that HBI asserts are

3  truthful with regard to APR.  (Compl. ¶¶96-101.)  This interrogatory also contains a false premise

4  in that the People have not alleged nor contended that HBI or RO "may not speak about APR."

5  This interrogatory is also vague and ambiguous, particularly as to the terms "constitutional or

6  statutory right" and "speak about APR."  This interrogatory also seeks legal conclusions.

7        Subject to and without waiving the foregoing objections, the People only responds to the

8  portion of this interrogatory that seeks information about the People's position with regard to

9  HBI's APR-related speech.  The People interprets that portion of the interrogatory to inquire as to

10  the bases for the People's position that the Unfair Competition Law (Bus. & Prof. Code § 17200,

11  et seq.) ("UCL") and the False Advertising Law (Bus. & Prof. Code § 17500, et seq.) ("FAL")

12  prohibit HBI's use of the eight statements identified in the People's Complaint (see Compl. ¶¶97,

13  100) in advertising and commercial speech for APR.  In light of this interpretation and the

14  ongoing discovery process, the People responds as follows:

15        Both the UCL and the FAL prohibit the use of false and misleading statements in

16  advertisements and commercial speech intended to induce consumers to obtain a service or good.

17  (*Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939, 951.)  "[T]o state a claim under either the UCL or the

18  [FAL], based on false advertising or promotional practices, it is necessary only to show that

19  members of the public are likely to be deceived."  (*Ibid.*)  Each of the eight statements the People

20  identified in the Complaint are false and misleading, and HBI uses the statements in advertising

21  and commercial speech for APR.

22        A.    **The Statements Are False and Misleading**

23        In HBI's advertisements and commercial speech for APR, including on HBI's websites

24  www.abortionpillreversal.com ("APR Website") and www.heartbeatinternational.org/our-

25  work/apr ("HBI Website"); in HBI's policies and procedures for its employees and volunteers to

26  interact with potential patients on its hotline and online chat; in materials that HBI sends to

27  potential APR patients; and in its training kit for the APRN providers, including patient consent

28  forms for APR in various situations, HBI includes the following statements:

11

1      •  the use of the terms "reverse" or "reversal,"

2      •  that APR "has been shown to increase the chances of allowing the pregnancy to

3         continue" ("Effectiveness Statement");

4      •  that APR has a success rate of 64-68% ("Success Rate Statement");

5      •  that the rate of birth defects following APR "is less or equal to the rate in the

6         general population" ("Birth Defects Statement");

7      •  that APR may be effective beyond a 72-hour window following mifepristone

8         administration ("Timing Statement");

9      •  that APR may be effective following administration of misoprostol and

10        methotrexate ("Misoprostol/Methotrexate Statement");

11      •  that APR can cause only non-life-threatening side effects, when in fact APR can

12        cause severe, life-threatening bleeding ("Side Effects Statement"); and

13      •  that APR has "saved" "[t]housands of lives" ("Thousands of Lives Statement").

14     (Compl. ¶¶97, 100.)  Each of these statements is false and misleading.  (See *Planned*

15 *Parenthood of Tenn. & N. Miss. v. Slatery* (M.D. Tenn. 2021) 523 F.Supp.3d 985, 989 ["the

16 mandated 'reversal' message is misleading because it suggests progesterone therapy has reached

17 a level of safety and efficacy that is not supported by medical evidence"]; *All-Options, Inc. v.*

18 *Atty. Gen. of Ind*. (D. Ind. 2021) 546 F.Supp.3d 754, 766-68 [APR "medical studies, testimony

19 about biological principles, and physicians' clinical experiences . . . do[] not establish

20 causation"]; *Am. Med. Ass'n v. Stenehjem* (D.N.D. 2019) 412 F.Supp.3d 1134, 1150 [APR is

21 "unproven medical and scientific theory" and "devoid of credible scientific evidence"].)

22         **1.**    **"Reverse" and "Reversal" Are False and Misleading**

23     During pregnancy, the body already has massive amounts of progesterone, and yet

24 mifepristone is effective because it binds preferentially and more tightly to progesterone receptors

25 in the uterus and cervix than progesterone.  (Regine Sitruk-Ware & Irving M. Spitz (2003)

26 *Pharmacological Properties of Mifepristone: Toxicology and Safety in Animal and Human*

27 *Studies*, 68 Contraception 409, 410.)  The theory of APR—that adding even more progesterone to

28 the already-massive amounts the body is producing will somehow outcompete the mifepristone—

1    fails to account for the preferential and tighter bind of mifepristone.  (See George Delgado, Mary

2    Davenport, *Progesterone Use to Reverse the Effects of Mifepristone* (2012) 46 Pharmacotherapy

3    1723.)  Not even the theory of APR suggests that supplemental progesterone can unseat

4    mifepristone once it has bound more tightly and more preferentially to the progesterone receptors

5    in the uterus and cervix.  Accordingly, even the theory of APR does not support that supplemental

6    progesterone "reverses" mifepristone.

7            **2.**      **Statements that APR "Has Been Shown to Increase the Chances of Allowing the Pregnancy To Continue" Are False and Misleading**

8

9          In addition to the fact that there is no evidence that supplemental progesterone unseats or

10    "reverses" mifepristone, as explained in Response No. 1, *supra*, there is no evidence showing that

11    APR increases the chances of pregnancy continuation after mifepristone administration.

12            **3.**      **Statements that APR Has a 64-68% Rate of Success Are False and Misleading**

13

14          Each of the flaws stated in Response No. 1, *supra*, undermines any support for HBI's

15    claims that APR has a 64% to 68% success rate.  In addition, the 2018 Report claimed an overall

16    "reversal" rate of 48%.  (2018 Report at p.27.)  The 64% to 68% statistic appears to come from

17    the 2018 Report's claim that "high dose oral" administration of supplemental progesterone had a

18    68% "reversal" rate and that the collective "intramuscular" injection administration of

19    supplemental progesterone had a 64% "reversal" rate.  HBI's statements in the FAQs of the APR

20    Website, however, reflect that most patients will receive supplemental progesterone "orally or

21    vaginally" and only "possibly by intramuscular injection." (See APR Website, FAQ 4.)

22    According to the 2018 Report, vaginal supplemental progesterone had only a 32% to 39%

23    "reversal" rate.  (2018 Report at p.27.)

24          In short, there is no evidence supporting that APR has a 64% to 68% success rate, thereby

25    rendering HBI's Success Rate Statements false and misleading.

26

27

28

**4.     Statements that the Rate of Birth Defects Following APR "Is Less or Equal to the Rate in the General Population" Are False and Misleading**

Each of the flaws stated in Response No. 1, *supra*, undermines any support for HBI's claims that the rate of birth defects following APR is "less or equal to the rate in the general population." In short, there is no evidence supporting this statement, thereby rendering HBI's Birth Defects Statements false and misleading.

**5.     Statements that APR May Be Effective Beyond a 72-Hour Window Are False and Misleading**

Each of the flaws stated in Response No. 1, *supra*, undermines any support for HBI's claims that APR may be effective beyond a 72-hour window after mifepristone-only administration. In addition, neither the 2018 Report nor any of the other articles to which HBI points even tested APR in the context of treatment after the 72-hour window after mifepristone-only administration. In fact, according to its methodology, the 2018 Report excluded patients who had ingested mifepristone outside of the 72-hour window. (2018 Report at p.25.)

In short, there is no evidence supporting that APR may be effective more than 72 hours after mifepristone-only administration, thereby rendering HBI's Timing Statements false and misleading.

**6.     Statements that APR May Be Effective After Misoprostol or Methotrexate Administration Are False and Misleading**

Each of the flaws stated in Response No. 1, *supra*, undermines any support for HBI's claims that APR may be effective after misoprostol or methotrexate administration. In addition, neither the 2018 Report nor any of the other articles to which HBI points even tested APR in the context of treatment after misoprostol or methotrexate administration. In fact, according to its methodology, the 2018 Report excluded patients who had ingested misoprostol in addition to mifepristone. (2018 Report at p.25.)

In short, there is no evidence supporting that APR may be effective after misoprostol or methotrexate administration, thereby rendering HBI's Misoprostol/Methotrexate Statements false and misleading.

14

1    **7.    Statements that APR Can Only Cause Non-Life-Threatening Side
             Effects While Omitting that APR Can Cause Severe Bleeding Are
2            False and Misleading**

3    Each of the flaws stated in Response No. 2, *supra*, undermines any support for HBI's

4    claims that APR can only cause non-life-threatening side effects.  In short, there is no evidence

5    supporting that APR only causes non-life-threatening side effects, thereby rendering HBI's Side

6    Effects Statements false and misleading.

7    **8.    Statements that APR Has Saved "Thousands of Lives" Are False and
             Misleading**

8

9    Each of the flaws stated in Response No. 1, *supra*, undermines any support for HBI's

10   claims that APR increases the chances of pregnancy continuation after mifepristone-only

11   administration and, therefore, any support that APR has saved "thousands of lives."  To reach its

12   claim that APR has saved "thousands of lives," HBI adds together two figures: 1) continuing

13   pregnancies that HBI is able to track beyond 13 weeks after APR and 2) 64% of patients who

14   start APR but who HBI is unable to track to 13 weeks after APR.  (See Heartbeat Int'l, Inc. (Jor-

15   El Godsey) Dep. at 203:6-18, *Am. Med. Assn. v. Stenehjem* (D.N.D. Mar. 10, 2021) No. 1:19-cv-

16   00125-DLH-CRH ("Godsey Dep.").)   The 64% figure comes from the 2018 Report.  (*Ibid*.)  As

17   explained in Section A.3, *supra*, even the 2018 Report does not support that figure as the rate of

18   "reversal" for APR.  Additionally, neither of these figures look to pregnancy outcomes or

19   pregnant patient outcomes.

20   In short, there is no evidence supporting that APR has saved "thousands of lives," thereby

21   rendering HBI's Thousands of Lives Statements false and misleading.

22   **B.    HBI Uses The Statements in Advertisements and Commercial Speech for
             APR**

23

24   Each of HBI's uses of the eight false and misleading statements that are identified in the

25   People's Complaint qualifies as commercial speech.  (See Compl. ¶¶53-57, 60, 62-64, 67, 68-70,

26   71-86.)  For each of these uses, HBI's position that the restriction of these false and misleading

27   statements effectively would restrict the provision of APR underscores that HBI considers each of

28

1   these statements essential to the ability to advertise APR to potential patients.  (See Letter from

2   Paul Jonna, LiMandri & Jonna, Counsel for HBI, to Erica Connolly, Deputy Atty. Gen., Counsel

3   for the People (Oct. 27, 2023).)

4          Although direct economic motivation is not mandatory for speech to qualify as

5   commercial (see *Bolger v. Youngs Drug Prods. Corp.* (1983) 463 U.S. 60, 67 n.14), HBI has

6   economic motivation to promote APR that applies to each of these uses.  HBI uses its operation

7   of the APRN and its promotion of APR to fundraise, to sell trainings to its affiliates, and to

8   promote itself to crisis pregnancy centers ("CPCs") to start or continue their membership with

9   HBI.  (See, e.g., HBI RJN Ex. 2 ["Give Today" buttons on APR webpage of HBI Website];

10  https://www.heartbeatservices.org/resources/store/abortion-pill-rescue [selling "Abortion Pill

11  Rescue Network Training" for $119.95, "Abortion Pill Reversal: The Science, The Strategy, &

12  The Opposition" training for $19.95]; https://www.heartbeatservices.org/services-home/ [listing

13  APRN as "Ministry Solutions Designed for Pregnancy Help" to advertise membership to

14  affiliates].)

15          **1.    APR Website**

16          The APR Website is an advertisement for the APR protocol that seeks to persuade

17  pregnant individuals who have started medication abortion but may be having second thoughts to

18  undergo treatment with supplemental progesterone.  The appearance of the website makes clear

19  that it is an advertisement for APR, with the hotline number prominently displayed and with

20  numerous statements encouraging potential patients to contact HBI to begin APR, even on the

21  FAQs page.  (See HBI RJN Ex. 1 [APR Website].)  HBI also acknowledges on its website that by

22  undergoing APR potential patients are likely to engage in a commercial transaction, specifically

23  by paying directly or through their insurance companies for supplemental progesterone.  (*Id.* at

24  p.10.)

25          The APR Website includes the following false and misleading terms or statements in its

26  advertisements about APR: 1) "reverse" and "reversal"; 2) the Effectiveness Statement; 3) the

27  Success Rate Statement; 4) the Birth Defects Statement; 5) the Timing Statement; and 6) the Side

28

1   Effects Statement.  (*Ibid.*)  HBI uses each of these statements in an effort to persuade potential

2   patients to undergo APR by falsely and misleadingly claiming that APR is safe and effective.

3               **2.    HBI Website**

4        The APR webpage on the HBI Website advertises APR to potential patients, stating at the

5   top of the page that individuals can call the hotline or visit the APR Website.  (HBI RJN, Ex. 2.)

6   This webpage also solicits donations on the basis of HBI's APR activities, including its

7   advertisements of APR to potential patients.  (*Ibid.*)  The APR webpage on the HBI Website

8   includes the following false and misleading statements: 1) "reverse" and "reversal"; 2) the

9   Success Rate Statement; 3) the Birth Defects Statement; and 4) the Thousands of Lives

10  Statement.  HBI uses each of these statements to persuade potential patients to undergo APR and

11  to persuade potential donors to donate to HBI.

12              **3.    Hotline and Live Chat Scripts**

13       The hotline and live chat scripts that HBI instructs its employees and volunteers to use

14  when speaking with potential patients who contact HBI about APR constitute advertisements to

15  potential patients to undergo APR.  (See HBI RJN, Ex. 3 at pp. 8, 11 [nurse responsibilities

16  include "[c]ounsel contacts, according to established policies, procedures, and training, with the

17  intention of referring each contact to a life-affirming medical provider and/or pregnancy resource

18  center for further services."])  In those scripts, HBI instructs its employees to use the following

19  false and misleading statements: 1) term "reverse" and "reversal"; 2) the Birth Defects Statement;

20  3) the Success Rate Statement; 4) the Effectiveness Statement; and 5) the Side Effects Statement.

21  (*Id.* at pp. 23, 26-28.)  HBI instructs its employees to make each of these statements to potential

22  patients calling its APR hotline employees with the goal of influencing the patient's decision-

23  making about whether to undergo APR.  (*Id.* at pp. 8, 11, 32.)  In the scripts, HBI acknowledges

24  that by undergoing APR potential patients are likely to engage in a commercial transaction,

25  specifically by paying directly or through their insurance companies for supplemental

26  progesterone.  (*Id.* at p.16.)

27

28

### 4. APR Provider Training Kits

HBI's APR Healthcare Professional Kit provides materials for members of the APRN to continue advertising APR to patients referred to the providers.  (See HBI RJN, Ex. 4-A.)  HBI informs providers that patients "will have some general information about the APR Protocol" but that the provider is "assuming their care from this point forward."  (*Id.* at p.7.)  Along those lines, HBI provides Patient FAQs that the provider can use with patients.  (*Id.* at pp.14-17.)  In the kit, HBI also provides consent forms for providers to use with their patients, which are structured to persuade the patients to undergo APR.  (*Id.* at pp.19-30.)

In the Patient FAQs and the consent forms, HBI includes the following false and misleading statements:  1) the terms "reverse" and "reversal"; 2) the Timing Statement; 3) the Success Rate Statement; 4) the Effectiveness Statement; 5) the Birth Defects Statement; 6) the Side Effects Statement; and 7) the Misoprostol/Methotrexate Statement.  (*Id.* at pp.14-17, 19-30.)  HBI provides the Patient FAQs and the consent forms with these false and misleading statements to encourage APR providers to continue seeking to persuade patients to undergo APR.  In the Patient FAQs, HBI acknowledges that by undergoing APR potential patients are likely to engage in a commercial transaction, specifically by paying directly or through their insurance companies for supplemental progesterone.  (*Id.* at p.16.)

### 5. Media Appearances

In May 2020, HBI's Director of Medical Impact, Christa Brown, and HBI's Director of Communications and Marketing, Andrea Trudee, appeared on an episode of Ohio Right to Life: The Push for the Abortion Pill.  (HBI RJN, Ex. 5.)  Through their appearance, Brown and Trudee promoted APR and advertised it to potential patients by making unsupported statements about abortion medication, thereby suggesting that individuals undergoing a medication abortion should regret their decision and offering APR as a solution.  (*Id.* at pp.2:7-9, 14:25-17:3.)  Trudee encouraged potential patients to visit the APR Webpage and call the hotline or use the live chat.  (*Id.* at pp.15:18-16:5.)  As part of their advertising for APR, Brown and Trudee used the following false and misleading statements: 1) the terms "reverse" and "reversal" and 2) the Thousand Lives Statement.  (*Id.* at pp.2:6-9, 14:25-17:3.)

18

1    In September 2021, HBI's CEO, Jor-El Godsey, appeared on an episode of the Help Her

2    Be Brave podcast to advertise APR.  (HBI RJN, Ex. 6.)  Godsey encouraged patients to visit the

3    APR Webpage, to call the hotline, to visit a CPC because "just about every pregnancy center is

4    aware of" APR, or to "call optionline.org."  (*Id.* at pp.10:5-21, 13:2-3, 14:19-28.)  As part of his

5    APR advertisement, Godsey used the following false and misleading statements: 1) the terms

6    "reverse" and "reversal"; 2) the Success Rate Statement; and 3) the Thousands of Lives

7    Statement.  (*Id.* at pp.9:16-23.)

8    In sum, because each of the eight statements that the People identified are false and

9    misleading and because HBI uses each of the eight statements in its advertisements and

10    commercial speech for APR, these statements are prohibited under the UCL and FAL.

11    **INTERROGATORY NO. 8:**

12    If YOU contend that the CREININ STUDY is more credible than the 2018 DELGADO

13    STUDY, please explain why.

14    **RESPONSE TO INTERROGATORY NO. 8:**

15    Objection.  This interrogatory seeks premature expert discovery.  (See Civ. Proc. Code §

16    2034.210 [providing method for simultaneous and mutual demand of expert witness

17    information].)  This interrogatory also seeks information that is protected by the attorney/client

18    and work product privileges.  This interrogatory is also vague and ambiguous, particularly as to

19    the term "more credible."

20    Subject to and without waiving the foregoing objections, the People interpret this

21    interrogatory as requesting the bases for the People's position that the methodology of the 2018

22    Report is flawed, whereas the methodology of the UC Davis Study is not flawed and, in light of

23    the ongoing discovery process, responds as follows:

24    As explained in Response No. 1, *supra*, the 2018 Report has significant methodological

25    flaws; please see Response No. 1 for details about those flaws.

26    In contrast to those flaws, the UC Davis Study attempted a randomized controlled trial to

27    test the theory underlying APR.  The plan was to enroll 40 pregnant individuals who were

28    between 44 and 63 days of gestation, had an ultrasound to establish embryonic or fetal cardiac

19

1  activity, and were planning to have a surgical abortion.  (UC Davis Study at p.159.)  Using the

2  68% "reversal" rate and the 25% baseline of continuing pregnancy following mifepristone-only

3  administration (both from the 2018 Report), the UC Davis Study determined that 20 participants

4  for each group was the minimum number of participants necessary to estimate any efficacy

5  outcomes with statistical accuracy.  (*Id.* at p.160; Creinin Decl. ¶58; see also Jacob Shreffler,

6  Martin R. Huecker, *Type I and Type II Errors & Statistical Power* (Mar. 13, 2023) StatPearls,

7  https://www.ncbi.nlm.nih.gov/books/NBK557530/.)  The planned methodology was for the

8  participants to ingest 200 mg of mifepristone followed 24 hours later by double-blind

9  administration of either twice-daily doses of 200 mg of progesterone or placebos, with follow-up

10 appointments scheduled for three, seven, and fifteen days after progesterone/placebo

11 administration.  (*Id.* at p.159-60.)  The patients would have surgical abortions at the last

12 appointment.  (*Ibid.*)

13         This planned methodology established far more controls over the sample patient

14 population to effectively study whether there was causation between supplemental progesterone

15 and continuing pregnancy.  For example, by establishing the existence of fetal cardiac activity

16 *before* mifepristone administration rather than *after* mifepristone administration, the UC Davis

17 Study avoided biasing the sample by only including patients with already continuing pregnancies

18 after mifepristone-only administration.  Likewise, the UC Davis Study's plan eliminated the

19 variability of having 325 medical providers offering multiple variations of dosage and form of

20 administration of supplemental progesterone by planning to have the forty participants see the

21 same team of investigators who would use the same protocol.

22         The UC Davis Study, however, had to be cut short for safety reasons after three of the

23 twelve enrolled patients (two of whom had pulled out of the study due to side effects) suffered

24 bleeding requiring medical intervention.  (*Id.* at p.160.)  As noted above, however, the UC Davis

25 Study already had determined that 20 participants per group—40 participants total—were the

26 minimum necessary to show any meaningful results.  (*Id.* at p.159; Creinin Decl. ¶60.)  Results

27 for 10 participants—only a quarter of the minimum number necessary to show any meaningful

28 results—therefore does not provide statistically meaningful results showing causation between

20

1  supplemental progesterone and continued pregnancy.  (Creinin Decl. ¶60.)  The UC Davis Study

2  suggests that there are safety concerns related to APR, particularly as to bleeding requiring

3  medical intervention after mifepristone-only administration.  (UC Davis Study at p.161.)

4  **INTERROGATORY NO. 9:**

5      IDENTIFY all instances of which YOU are aware in which APR patients suffered adverse

6  effects as a result of APR.

7  **RESPONSE TO INTERROGATORY NO. 9:**

8      Objection.  This interrogatory seeks information that is not relevant or proportional to any

9  claim or defense in this action in that the claims and defenses in this case are limited to the ability

10  of HBI to use in advertisements and commercial speech specific statements that HBI asserts are

11  truthful with regard to APR.  (Compl. ¶¶96-101.)  This interrogatory also seeks premature expert

12  discovery.  (See Civ. Proc. Code § 2034.210 [providing method for simultaneous and mutual

13  demand of expert witness information].)  This interrogatory also seeks information that is

14  protected by the attorney/client and work product privileges.  This interrogatory is also vague and

15  ambiguous, especially as to the phrase "suffered adverse effects as a result of APR."

16      Subject to and without waiving the foregoing objections, the People interpret this

17  interrogatory as seeking information about patients who needed medical intervention following

18  any of the steps that are part of the APR protocol considered in the 2018 Report, specifically

19  mifepristone-only administration followed by administration of supplemental progesterone in any

20  form and in any dosage, and, in light of the ongoing discovery process, responds as follows:  In

21  the UC Davis Study, three patients suffered bleeding requiring medical intervention after

22  mifepristone-only administration but without misoprostol administration.  (UC Davis Study at

23  p.160.)  Two of the patients received a placebo after mifepristone-only administration; one patient

24  received supplemental progesterone after mifepristone-only administration.  (*Ibid.*)

25  **INTERROGATORY NO. 10:**

26      IDENTIFY all PERSONS that YOU anticipate calling or will call as witnesses at trial and

27  provide a summary of each PERSON'S anticipated testimony.

28

21

1  **RESPONSE TO INTERROGATORY NO. 10:**

2      Objection.  This interrogatory seeks premature expert discovery.  (See Civ. Proc. Code §

3  2034.210 [providing method for simultaneous and mutual demand of expert witness

4  information].)  This interrogatory also seeks information that is protected by the attorney/client

5  and work product privileges.

6      Subject to and without waiving the foregoing objections, and in light of the ongoing

7  discovery process, the People responds as follows: The People does not yet know what witnesses

8  it plans to call at trial.

9  **INTERROGATORY NO. 11:**

10      Provide a summary of anticipated testimony for each expert YOU plan to call at trial.

11  **RESPONSE TO INTERROGATORY NO. 11:**

12      The People objects to this interrogatory because it seeks information protected by the

13  attorney work-product and attorney-client privileges.  The People also object to this interrogatory

14  because it seeks premature expert discovery.  (See Civ. Proc. Code § 2034.210 [providing method

15  for simultaneous and mutual demand of expert witness information].)

16      Based on the foregoing objections, the People does not respond to this interrogatory.

17  **INTERROGATORY NO. 12:**

18      If YOU contend that either DEFENDANT misrepresents or misleadingly implies that APR

19  after a patient has taken misoprostol, methotrexate, or more than 72-hours after taking mifepristone,

20  have been the subject of scientific study, please explain why.

21  **RESPONSE TO INTERROGATORY NO. 12:**

22      Objection.  This interrogatory is compound and seeks answers to twelve different

23  inquiries.  This interrogatory also seeks premature expert discovery.  (See Civ. Proc. Code §

24  2034.210 [providing method for simultaneous and mutual demand of expert witness

25  information].)  This interrogatory is also vague and ambiguous, particularly the term "scientific

26  study" and is confusing in light of HBI's definition of APR.

27      Subject to and without waiving the foregoing objections, the People interpret this

28  interrogatory to request the following: 1) whether the People contend that HBI misrepresents that

22

there are medical studies of supplemental progesterone administration after misoprostol administration and the bases for that contention; 2) whether the People contend HBI misleadingly implies that there are medical studies of supplemental progesterone administration after misoprostol administration and the bases for that contention; 3) whether the People contend that RO misrepresents that there are medical studies of supplemental progesterone administration after misoprostol administration and the bases for that contention; 4) whether the People contend RO misleadingly implies that there are medical studies of supplemental progesterone administration after misoprostol administration and the bases for that contention; 5) whether the People contend HBI misrepresents that there are medical studies of supplemental progesterone administration after methotrexate administration and the bases for that contention; 6) whether the People contend HBI misleadingly implies that there are medical studies of supplemental progesterone administration after methotrexate administration and the bases for that contention; 7) whether the People contend RO misrepresents that there are medical studies of supplemental progesterone administration after methotrexate administration and the bases for that contention; 8) whether the People contend RO misleadingly implies that there are medical studies of supplemental progesterone administration after methotrexate administration and the bases for that contention; 9) whether the People contend HBI misrepresents that there are medical studies of supplemental progesterone administration after more than 72 hours following mifepristone-only administration and the bases for that contention; 10) whether the People contend HBI misleadingly implies that there are medical studies of supplemental progesterone administration after more than 72 hours following mifepristone-only administration and the bases for that contention; 11) whether the People contend RO misrepresents that there are medical studies of supplemental progesterone administration after more than 72 hours following mifepristone-only administration and the bases for that contention; 12) whether the People contend RO misleadingly implies that there are medical studies of supplemental progesterone administration after more than 72 hours following mifepristone-only and the bases for that contention.

Because HBI has already made 34 special interrogatories and because HBI has not sought court approval for additional special interrogatories, the People responds only to two of these

1  twelve different interrogatories, specifically: 1) whether the People contend that HBI

2  misrepresents that there are medical studies of supplemental progesterone administration after

3  misoprostol administration and the bases for that contention; 2) whether the People contend HBI

4  misleadingly implies that there are medical studies of supplemental progesterone administration

5  after misoprostol administration and the bases for that contention.  Based on this interpretation

6  and in light of the ongoing discovery process, the People respond as follows:

7      1)    The statements at issue in the People's Complaint do not include an allegation that

8  HBI made explicit statements in its APR-related advertisements or commercial speech identified

9  in the Complaint that there are medical studies of supplemental progesterone administered after

10  misoprostol administration.

11      2)    HBI's policies and procedures for the employees and volunteers who respond to

12  calls and chats on the hotline and live chat connected to the APR Website assumes that those

13  employees and volunteers will tell potential patients that supplemental progesterone may be

14  effective in pregnancy continuation following misoprostol administration.  (See HBI RJN, Ex. 3

15  at p.32 ["If the client indicates she would like to receive a referral to an APR Network Provider

16  for abortion pill reversal treatment, the appropriate consent is sent to her: 'Mifepristone

17  Agreement', 'Mifepristone & Misoprostol Agreement', or 'Methotrexate Agreement' for an

18  electronic signature."].)

19      In its APR Healthcare Professional Kit, HBI encourages APRN providers to administer

20  supplemental progesterone after misoprostol administration, stating "for women who have taken

21  the first and second drugs of the medical abortion regimen, mifepristone on day one and

22  misoprostol (Cytotec) 12-48 hours later, progesterone may be beneficial to support the pregnancy

23  even though it is not an antidote to misoprostol."  (*Id.* Ex. 4 at p.11.)  HBI also includes in that kit

24  a consent form to be provided to patients who have taken both mifepristone and misoprostol,

25  which includes the same statement.  (*Id.* Ex. 4 at p.27.)

26      HBI's statements imply to potential patients that supplemental progesterone may increase

27  the chances of pregnancy continuation even after misoprostol administration.  By making that

28  misleading implication, HBI is also indirectly implying to patients that there is medical evidence,

1  such as credible medical studies, that support its statements about progesterone increasing the

2  chances of pregnancy continuation.

3  **INTERROGATORY NO. 13:**

4      IDENTIFY all medical and scientific studies supporting YOUR knowledge of supplemental

5  progesterone risks.

6  **RESPONSE TO INTERROGATORY NO. 13:**

7      Objection.  This interrogatory seeks information that is not relevant or proportional to any

8  claim or defense in this action in that the claims and defenses in this case are limited to the ability

9  of HBI to use in advertisements and commercial speech specific statements that HBI asserts are

10  truthful with regard to APR.  (Compl. ¶¶96-101.)  The safety of supplemental progesterone in

11  other treatments has no bearing on the safety of supplemental progesterone in the context of APR.

12  This interrogatory is also vague and ambiguous and is compound as there are numerous

13  treatments where providers might treat pregnant patients with supplemental progesterone and the

14  "safety" versus "effectiveness" of those treatments needs to be assessed on an individualized

15  basis for each patient.  This interrogatory also seeks premature expert discovery and seeks

16  information protected by the attorney/client and work product privileges.  (See Civ. Proc. Code §

17  2034.210 [providing method for simultaneous and mutual demand of expert witness

18  information].)  This interrogatory is also compound.

19      Subject to the foregoing objections,  and in light of the ongoing discovery process, the

20  People responds as follows: See the People's Response to Defendants Heartbeat International,

21  Inc.'s and RealOptions, Inc.'s Requests for Production of Documents, Set One ("HBI RFPs"),

22  Request for Production No. 6.

23  **INTERROGATORY NO. 14:**

24      Please explain the basis by which YOU determine what makes a medical or scientific study

25  "credible."

26  **RESPONSE TO INTERROGATORY NO. 14:**

27      Objection.  This interrogatory is compound.  This interrogatory is also overbroad, unduly

28  burdensome, and oppressive in that it seeks an explanation of all possible bases about the

qualities that determine any study's credibility.  This interrogatory also seeks premature expert discovery.  (See Civ. Proc. Code § 2034.210 [providing method for simultaneous and mutual demand of expert witness information].)  This interrogatory is also vague and ambiguous, specifically as to term "credible."

Subject to and without waiving the foregoing objections, the People interpret this interrogatory to seek the People's criteria regarding the strength or weakness of a medical or scientific study in establishing causation between a proposed medical treatment and an effective response in patients, and in light of the ongoing discovery process, the People responds as follow:

According to the article *Rating Evidence in Medical Literature* in the American Medical Association Journal of Ethics, the following table provides a scale of medical evidence from strongest to weakest:

Table 1. Modified presentation of the Oxford Centre for Evidence-Based Medicine levels of evidence [5].

| Grade of Recommendation | Level of Evidence | Type of Study |
|---|---|---|
| A | 1a | SR (with homogeneity) of RCTs and of prospective cohort studies |
| | 1b | Individual RCT with narrow confidence interval, prospective cohort study with good followup |
| | 1c | All or none studies, all or none case series |
| B | 2a | SR (with homogeneity) of cohort studies |
| | 2b | Individual cohort study |
| | 2c | Outcomes research, ecological studies |
| | 3a | SR of case control studies, SR of 3b and better studies |
| | 3b | Individual case control study, nonconsecutive cohort study |
| C | 4 | Case series/case report, poor quality cohort studies |
| D | 5 | Expert opinion, bench research |

SR: systematic review; RCT: randomized controlled trial.

(Rating Evidence at p.47.)

Randomized controlled trials ("RCTs") are "the gold standard in modern medicine for determining the efficacy of a treatment" because "participants are similar and have equal chances of being assigned to an intervention group, a control group, or a placebo group."  (*Ibid.*)  RCTs, especially "double-blind" RCTs where investigators and subjects are both blinded to the treatment, "go through rigorous measures to eliminate bias, but they tend to be expensive and time-consuming."  (*Ibid.*)  The planners of the UC Davis Study intended it to be double-blind

26

1    RCT.

2         Case series, which are "articles written about a series of patients with a specific

3    diagnosis," are considered a weak form of evidence of causation "because of associated bias, lack

4    of random sampling, the absence of controls or a comparison group, and heterogeneity of

5    subjects." (*Id.* at p.48.)  The 2018 Report and the other articles involving humans that HBI has

6    cited in support of its APR statements are case series.

7    **INTERROGATORY NO. 15:**

8         If YOU contend that Heartbeat International's speech regarding APR on its websites is

9    commercial speech, state all bases for this contention.

10   **RESPONSE TO INTERROGATORY NO. 15:**

11        Objection.  To the extent this interrogatory seeks information related to statements by HBI

12   that are not challenged in this lawsuit, it seeks information that is not relevant or proportional to

13   any claim or defense in this action.  This interrogatory also seeks information that is protected by

14   the attorney/client and work-product privileges.  This interrogatory is also vague and ambiguous,

15   particularly the terms "speech regarding APR," "websites," and "commercial speech."

16        Subject to and without waiving the foregoing objections, the People interprets this

17   interrogatory to ask for the bases for the People's contention that the statements identified in the

18   People's Complaint as false and misleading (see Compl. ¶¶97, 100) that appear on the APR

19   Website and HBI Website are used as "commercial speech," as that phrase is used regarding

20   speech protections under the U.S. and California Constitution (see, e.g., *Serova v. Sony Music*

21   *Entmt.* (2022) 13 Cal.5th 859, 873-74.).  In light of the ongoing discovery process, the People

22   responds as follows:

23        See Response No. 1 Section B.1-2.

24   **INTERROGATORY NO. 16:**

25        If YOU contend that Heartbeat International's speech on the Abortion Pill Reversal hotline

26   and livechat is commercial speech, state all bases for this contention.

27   **RESPONSE TO INTERROGATORY NO. 16:**

28        Objection.  To the extent this interrogatory seeks information related to statements by HBI

27

1    that are not challenged in this lawsuit, it seeks information that is not relevant or proportional to

2    any claim or defense in this action.  This interrogatory also seeks information that is protected by

3    the attorney/client and work-product privileges.  This interrogatory is also vague and ambiguous,

4    particularly the terms "speech on the Abortion Pill Reversal hotline and livechat" and

5    "commercial speech."

6          Subject to and without waiving the foregoing objections, the People interprets this

7    interrogatory to ask for the bases for the People's contention that the statements identified in the

8    People's Complaint as false and misleading (see Compl. ¶¶97, 100) that appear in HBI's policies

9    and procedures for the hotline and live chat associated with the APR Website are used as

10   "commercial speech," as that phrase is used regarding speech protections under the U.S. and

11   California Constitution (see, e.g., *Serova*, 13 Cal.5th at p.873-74.).  In light of the ongoing

12   discovery process, the People responds as follows:

13         See Response No. 1 Section B.3.

14   **<u>INTERROGATORY NO. 17</u>:**

15         If YOU contend that Heartbeat International's speech in its APR Healthcare Professional Kit

16   is commercial speech, state all bases for this contention.

17   **<u>RESPONSE TO INTERROGATORY NO. 17</u>:**

18          Objection.  To the extent this interrogatory seeks information related to statements by

19   HBI that are not challenged in this lawsuit, it seeks information that is not relevant or proportional

20   to any claim or defense in this action.  This interrogatory also seeks information that is protected

21   by the attorney/client and work-product privileges.  This interrogatory is also vague and

22   ambiguous, particularly the terms "Heartbeat International's speech" and "commercial speech."

23         Subject to and without waiving the foregoing objections, the People interprets this

24   interrogatory to ask for the bases for the People's contention that the statements identified in the

25   People's Complaint as false and misleading (see Compl. ¶¶97, 100) that appear in HBI's APR

26   Healthcare Professional Kit are used as "commercial speech," as that phrase is used regarding

27   speech protections under the U.S. and California Constitution (see, e.g., *Serova*, 13 Cal.5th at

28   p.873-74.).  In light of the ongoing discovery process, the People responds as follows:

1    See Response No. 1 Section B.4.

2    **INTERROGATORY NO. 18:**

3    If YOU contend that Heartbeat International's speech through its employees' appearances on

4    the Help Her Be Brave and Pro-Life Ohio podcasts is commercial speech, state all bases for this

5    contention.

6    **RESPONSE TO INTERROGATORY NO. 18:**

7    Objection.  To the extent this interrogatory seeks information related to statements by HBI

8    that are not challenged in this lawsuit, it seeks information that is not relevant or proportional to

9    any claim or defense in this action.  This interrogatory also seeks information that is protected by

10   the attorney/client and work-product privileges.  This interrogatory is also vague and ambiguous,

11   particularly the terms "Heartbeat International's speech" and "commercial speech."

12   Subject to and without waiving the foregoing objections, the People interprets this

13   interrogatory to ask for the bases for the People's contention that the statements identified in the

14   People's Complaint as false and misleading (see Compl. ¶¶97, 100) that appear in HBI's APR

15   Healthcare Professional Kit are used as "commercial speech," as that phrase is used with

16   regarding to speech protections under the U.S. and California Constitution (see, e.g., *Serova*, 13

17   Cal.5th at 873-74.).  In light of the ongoing discovery process, the People responds as follows:

18   See Response No. 1 Section B.5.

19   **INTERROGATORY NO. 19:**

20   If YOU contend that speech regarding APR is not speech regarding a controversial matter of

21   public concern, please explain why.

22   **RESPONSE TO INTERROGATORY NO. 19:**

23   Objection.  This interrogatory seeks information that is not relevant or proportional to any

24   claim or defense in this action in that the claims and defenses in this case are limited to the ability

25   of HBI to use in advertisements and commercial speech specific statements that HBI asserts are

26   truthful with regard to APR.  (Compl. ¶¶96-101.)  This interrogatory is vague and ambiguous,

27   particularly with regard to the phrase "controversial matter of public concern" and as to the

28   context of the request, such as "controversial" to whom.  This interrogatory also calls for

29

1   speculation.

2       Based on these objections, the People does not respond to this interrogatory.

3   **INTERROGATORY NO. 20:**

4       If YOU contend that Heartbeat International does not have a common interest, as understood

5   by Civ. Code § 47(c), with members of its Abortion Pill Reversal Network, please explain why.

6   **RESPONSE TO INTERROGATORY NO. 20:**

7       Objection.  To the extent this interrogatory seeks information related to statements by HBI

8   that are not challenged in this lawsuit, it seeks information that is not relevant or proportional to

9   any claim or defense in this action.  This interrogatory also seeks information that is protected by

10  the attorney/client and work-product privileges.  This interrogatory also seeks a legal conclusion.

11  This interrogatory is also vague and ambiguous, particularly as to the "common interest" that HBI

12  claims with "members of its Abortion Pill Reversal Network."  This interrogatory also asks about

13  information that is exclusively within the possession, custody, or control of HBI.  This

14  interrogatory is also overly broad because it is not limited as to time period.

15      Subject to and without waiving the foregoing objections, the People interprets this

16  interrogatory to ask about the People's position with regard to HBI's claim that the so-called

17  "common interest privilege" applies to the statements identified in the People's Complaint as

18  false and misleading.  The People further interpret this interrogatory to ask only about HBI's

19  claim that HBI shares a "common pro-life interest with its own affiliates" (HBI Reply to

20  Demurrer at p.6:1-2), which is the only "common interest" that HBI has identified.  In light of

21  this interpretation and the ongoing discovery process, the People responds as follows:

22      HBI intends for the statements identified in the People's Complaint to be widely

23  disseminated to persuade potential patients to undergo APR (see Response No. 1 Section B),

24  thereby precluding application of the common interest privilege.  (*Hawran v. Hixson* (2012) 209

25  Cal.App.4th 256, 287 ["[W]idely disseminated" statements "defeat the privilege's purpose."].)

26  Even if a common interest existed, the privilege does not apply to statements made with "actual

27  malice," which "is established … by showing that the defendant lacked reasonable grounds for

28  belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's

30

1    rights." (*Bikkina v. Mahadevan* (2015) 241 Cal.App.4th 70, 91.)

2           The statements are false and misleading (see Response No. 1 Section A), which HBI

3    knew.  In HBI's press release announcing that it was acquiring the APRN from Delgado

4    and COLFS, HBI acknowledged the criticisms of APR.  (Press Release, Heartbeat Int'l,

5    Inc., Life-Saving Abortion Pill Reversal Network, Hotline, Change Hands (Apr. 12, 2018).)

6           In 2019, HBI intervened in a lawsuit by the American Medical Association against

7    North Dakota regarding its legislation mandating that abortion providers disclose

8    information about APR to patients.  (Heartbeat Int'l, Inc.'s Mot. to Intervene, *Am. Med.*

9    *Assn. v. Stenehjem* (D.N.D. Aug. 30, 2019) No. 19-cv-125, ECF No. 93.)  In that case, the

10   district court issued a preliminary injunction order outlining how APR is not supported by

11   credible science.  (*Stenehjem*, 412 F.Supp.3d at 1150 ("The affidavits submitted by the

12   Plaintiffs' expert witnesses further support the fact the 'abortion reversal' protocol is devoid

13   of scientific support, misleading, and untrue.").

14          In 2021, HBI released another press release criticizing Google's removal of HBI's "ads

15   promoting the Abortion Pill Reversal hotline" after the Center for Countering Digital Hate

16   published a report referencing several credible sources outlining that APR lacked scientific

17   support.  (Press Release, Heartbeat Int'l, Inc., Pro-Life Network that Manages Abortion Pill

18   Rescue Network Calls Out Report Google Used to Ban Life-Saving Ads (Sept. 16, 2021); Center

19   for Countering Digital Hate, *Endangering Women for Profit: How Facebook and Google Sell Ad*

20   *Space for Dangerous Medical Misinformation about So-Called Abortion "Reversals"* (Sept. 21,

21   2021), https://counterhate.com/research/endangering-women-for-profit/.)  And the APRN

22   Medical Director, Brent Boles, posted an entry on the HBI website addressing Google's removal

23   of APR advertisements.  (Brent Boles, *Google's Actions Against Abortion Pill Reversal*,

24   www.heartbeatservices.org (Sept. 2021).

25          In short, the common interest privilege does not apply to the statements identified in the

26   People's Complaint.

27   **INTERROGATORY NO. 21:**

28          If YOU contend that RealOptions' speech regarding APR on its website is commercial

31

1    speech, state all bases for this contention.

2    **RESPONSE TO INTERROGATORY NO. 21:**

3        Objection.  To the extent this interrogatory seeks information related to statements by RO

4    that are not challenged in this lawsuit, it seeks information that is not relevant or proportional to

5    any claim or defense in this action.  This interrogatory also seeks information that is protected by

6    the attorney/client and work-product privileges.  This interrogatory is also vague and ambiguous,

7    particularly the terms "speech regarding APR," "website," and "commercial speech."

8        Subject to and without waiving the foregoing objections, the People interprets this

9    interrogatory to ask for the bases for the People's contention that the statements identified in the

10   People's Complaint as false and misleading (see Compl. ¶¶97, 100) that appear on

11   www.realoptions.net ("RO Website") are used as "commercial speech," as that phrase is used

12   regarding speech protections under the U.S. and California Constitution (see, e.g., *Serova*, 13

13   Cal.5th at 873-74.).  In light of the ongoing discovery process, the People responds as follows:

14       The RO Website is an advertisement for the APR protocol that seeks to persuade pregnant

15   individuals who have started medication abortion but may be having second thoughts to undergo

16   treatment with supplemental progesterone at RO.  The appearance of the website makes clear that

17   it is an advertisement for APR, with the hotline number prominently displayed and with

18   numerous statements encouraging potential patients to contact RO to begin APR.  (See HBI RJN

19   Ex. 7 [RO Website].)  RO also acknowledges on its website that by undergoing APR potential

20   patients are likely to engage in a commercial transaction, specifically by paying directly or

21   through their insurance companies for supplemental progesterone.  (*Id.* at p.2.)

22       The RO Website includes the following false and misleading terms or statements in its

23   advertisements about APR: 1) "reverse" and "reversal"; 2) the Effectiveness Statement; 3) the

24   Success Rate Statement; and 4) the Timing Statement.  (*Id.* at pp.2-3)  RO uses each of these

25   statements in an effort to persuade potential patients to undergo APR by falsely and misleadingly

26   claiming that APR is safe and effective.

27   **INTERROGATORY NO. 22:**

28       If YOU contend that RealOptions' speech regarding APR in its informed consent forms is

32

1    commercial speech, state all bases for this contention.

2    **RESPONSE TO INTERROGATORY NO. 22:**

3         Objection.  To the extent this interrogatory seeks information related to statements by RO

4    that are not challenged in this lawsuit, it seeks information that is not relevant or proportional to

5    any claim or defense in this action.  This interrogatory also seeks information that is protected by

6    the attorney/client and work-product privileges.  This interrogatory is also vague and ambiguous,

7    particularly the terms "speech regarding APR" and "commercial speech."

8         Subject to and without waiving the foregoing objections, the People interprets this

9    interrogatory to ask for the bases for the People's contention that the statements identified in the

10   People's Complaint as false and misleading (see Compl. ¶¶97, 100) that appear in consent forms

11   that RO uses for patients who are considering undergoing APR (see HBI RJN, Ex. 9 at pp.1-3)

12   are used as "commercial speech," as that phrase is used regarding speech protections under the

13   U.S. and California Constitution (see, e.g., *Serova*, 13 Cal.5th at 873-74.).  In light of the ongoing

14   discovery process, the People responds as follows:

15        The consent forms that RO uses for its patients considering APR are structured to

16   persuade the patients to undergo APR.  (HBI RJN, Ex. 9 at pp.1-3.)  In the consent forms, RO

17   includes the following false and misleading statements: 1) the terms "reverse" and "reversal" and

18   2) the Side Effects Statement.  (*Ibid.*)  RO includes these false and misleading statements in the

19   consent forms to encourage patients to undergo APR.

20   **INTERROGATORY NO. 23:**

21        If YOU contend that restricting speech about APR treatment is not subject to strict scrutiny

22   review under Cal. Const., art. I, § 1, please explain why.

23   **RESPONSE TO INTERROGATORY NO. 23:**

24        Objection.  This interrogatory seeks information that is not relevant or proportional to any

25   claim or defense in this action in that the claims and defenses in this case are limited to the ability

26   of HBI to use in advertisements and commercial speech specific statements that HBI asserts are

27   truthful with regard to APR.  (Compl. ¶¶96-101.)  This interrogatory also seeks information

28   protected by the attorney/client and work-product privileges.  This request also seeks a legal

33

1    conclusion.  This interrogatory is also vague and ambiguous, particularly as to the phrases

2    "restricting speech" and "APR treatment."

3    　　　Subject to and without waiving the foregoing objections, the People interprets this

4    interrogatory to ask for the People's position regarding why strict scrutiny review under Cal.

5    Const., art. I, § 1 does not apply to the specific statements identified in the People's Complaint

6    (Compl. ¶¶97, 100) that HBI and RO use in their advertisements and commercial speech for APR.

7    In light of this interpretation and the ongoing process of discovery, the People respond as follows:

8    　　　False and misleading commercial speech has no protection under the U.S. or California

9    Constitutions.  (*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.* (1980) 447 U.S.

10   557, 563  ["[T]here can be no constitutional objection to the suppression of commercial messages

11   that do not accurately inform the public about lawful activity."]; *Kasky v. Nike, Inc.* (2002) 27

12   Cal.4th 939, 959 [California "Constitution does not prohibit the imposition of sanctions for

13   misleading commercial advertisements."].)  The statements identified in the People's Complaint

14   are false and misleading.  See Response No. 1 Section A for details.  HBI uses those statements in

15   commercial speech.  See Response No. 1 Section B for details.  RO uses those statements in

16   commercial speech.  See Responses to Interrogatory Nos. 21 and 22 for details.  Accordingly,

17   strict scrutiny does not apply in this case.

18   **INTERROGATORY NO. 24:**

19   　　　If YOU contend that restricting provision of APR treatment is not subject to strict scrutiny

20   review under Cal. Const., art. I, § 1, please explain why.

21   **RESPONSE TO INTERROGATORY NO. 24:**

22   　　　Objection.  This interrogatory seeks information that is not relevant or proportional to any

23   claim or defense in this action in that the claims and defenses in this case are limited to the ability

24   of HBI to use in advertisements and commercial speech specific statements that HBI asserts are

25   truthful with regard to APR.  (Compl. ¶¶96-101.)  This interrogatory also contains a false premise

26   in that the People have not alleged nor contended that pregnant individuals cannot receive

27   supplemental progesterone following mifepristone-only administration.  This interrogatory also

28   seeks information protected by the attorney/client and work-product privileges.  This

34

1    interrogatory also seeks a legal conclusion.  This interrogatory also is vague and ambiguous,

2    particularly as to the terms "restricting" and "provision of APR treatment"

3        Based on these objections, the People do not respond to this interrogatory.

4    **INTERROGATORY NO. 25:**

5        If YOU contend that protecting women from APR due to lack of evidence of efficacy and

6    safety satisfies strict scrutiny, please explain why.

7    **RESPONSE TO INTERROGATORY NO. 25:**

8        Objection.  This interrogatory seeks information that is not relevant or proportional to any

9    claim or defense in this action in that the claims and defenses in this case are limited to the ability

10   of HBI to use in advertisements and commercial speech specific statements that HBI asserts are

11   truthful with regard to APR.  (Compl. ¶¶96-101.)  This interrogatory also contains a false premise

12   in that the People have not alleged nor contended that pregnant individuals cannot receive

13   supplemental progesterone following mifepristone-only administration.  This interrogatory also

14   seeks information protected by the attorney/client and work-product privileges.  This

15   interrogatory also seeks a legal conclusion.  This interrogatory also is vague and ambiguous,

16   particularly as to the terms "protecting women from APR," "lack of evidence of efficacy and

17   safety," and "strict scrutiny."

18       Based on these objections, the People do not respond to this interrogatory.

19   **INTERROGATORY NO. 26:**

20       If YOU contend that requiring physicians to tell women that APR may be "life threatening" is

21   supported by a compelling state interest which cannot be served by less intrusive, alternative means,

22   please explain why.

23   **RESPONSE TO INTERROGATORY NO. 26:**

24       Objection.  This interrogatory seeks information that is not relevant or proportional to any

25   claim or defense in this action in that the claims and defenses in this case are limited to the ability

26   of HBI to use in advertisements and commercial speech specific statements that HBI asserts are

27   truthful with regard to APR.  Compl. ¶¶ 95-101.  This interrogatory also seeks information

28   protected by the attorney/client and work-product privileges.  This interrogatory also seeks a legal

35

1    conclusion.  This interrogatory also contains a false premise in that the People have not alleged

2    nor contended that physicians must tell patients that APR may be "life threatening"; the People

3    have alleged only that HBI's and RO's statements that APR has only non-life-threatening side

4    effects is false and misleading because HBI and RO omit that APR may also cause bleeding

5    requiring medical intervention.

6           Based on these objections, the People do not respond to this interrogatory.

7    **INTERROGATORY NO. 27:**

8           If YOU contend that limiting a pregnant woman's right to receive APR treatment in

9    accordance with her licensed physician's best judgement is supported by a compelling state interest

10   which cannot be served by less intrusive, alternative means, please explain why.

11   **RESPONSE TO INTERROGATORY NO. 27:**

12          Objection.  This interrogatory seeks information that is not relevant or proportional to any

13   claim or defense in this action in that the claims and defenses in this case are limited to the ability

14   of HBI to use in advertisements and commercial speech specific statements that HBI asserts are

15   truthful with regard to APR.  (Compl. ¶¶96-101.)  This interrogatory also contains a false premise

16   in that the People have not alleged nor contended that pregnant individuals cannot receive

17   supplemental progesterone following mifepristone-only administration.  This interrogatory also

18   seeks information protected by the attorney/client and work-product privileges.  This

19   interrogatory also seeks a legal conclusion.  This interrogatory is also vague and ambiguous,

20   particularly as to the terms "limiting a pregnant woman's right to receive APR treatment."

21          Based on these objections, the People does not respond to this request.

22   **INTERROGATORY NO. 28:**

23          If YOU contend that precluding a woman from receiving APR treatment is not a severe

24   invasion of her liberty, please explain why.

25   **RESPONSE TO INTERROGATORY NO. 28:**

26          Objection.  This interrogatory seeks information that is not relevant or proportional to any

27   claim or defense in this action in that the claims and defenses in this case are limited to the ability

28   of HBI to use in advertisements and commercial speech specific statements that HBI asserts are

36

1    truthful with regard to APR.  (Compl. ¶¶96-101.)  This interrogatory also contains a false premise

2    in that the People have not alleged nor contended that pregnant individuals cannot receive

3    supplemental progesterone following mifepristone-only administration.  This interrogatory also

4    seeks information protected by the attorney/client and work-product privileges.  This

5    interrogatory also seeks a legal conclusion.  This interrogatory is also vague and ambiguous,

6    particularly as to the terms "precluding a woman from receiving APR treatment" and "severe

7    invasion of her liberty."

8        Based on these objections, the People does not respond to this request.

9    **INTERROGATORY NO. 29:**

10       If YOU contend that abortion is not a controversial matter of public concern, please explain

11   why.

12   **RESPONSE TO INTERROGATORY NO. 29:**

13       Objection.  This interrogatory seeks information that is not relevant or proportional to any

14   claim or defense in this action in that the claims and defenses in this case are limited to the ability

15   of HBI to use in advertisements and commercial speech specific statements that HBI asserts are

16   truthful with regard to APR.  (Compl. ¶¶96-101.)  The People further object this interrogatory is

17   vague and ambiguous, particularly with regard to the phrase "controversial matter of public

18   concern" and as to the context of the request, such as "controversial" to whom.  The People

19   further object that this request calls for speculation.

20       Based on these objections, the People does not respond to this interrogatory.

21   **INTERROGATORY NO. 30:**

22       Please IDENTIFY any PERSONS that YOU are or will be relying on regarding the validity of

23   the 2018 DELGADO STUDY.

24   **RESPONSE TO INTERROGATORY NO. 30:**

25       Objection.  This interrogatory seeks premature expert discovery.  (See Civ. Proc. Code §

26   2034.210 [providing method for simultaneous and mutual demand of expert witness

27   information].)  This interrogatory also seeks information that is protected by the attorney work-

28   product and attorney-client privileges.

37

1    Based on these objections, the People does not respond to this request.

2    **INTERROGATORY NO. 31:**

3    Please state the opinions of the PERSONS that YOU are or will be relying on regarding the

4    validity of the 2018 DELGADO STUDY.

5    **RESPONSE TO INTERROGATORY NO. 31:**

6    Objection.  This interrogatory seeks premature expert discovery.  (See Civ. Proc. Code §

7    2034.210 [providing method for simultaneous and mutual demand of expert witness

8    information].)  This interrogatory also seeks information that is protected by the attorney work-

9    product and attorney-client privileges.

10    Based on these objections, the People does not respond to this request.

11    **INTERROGATORY NO. 32:**

12    Please state how the opinions of the PERSONS that YOU are or will be relying on regarding

13    the validity of the 2018 DELGADO STUDY were formed.

14    **RESPONSE TO INTERROGATORY NO. 32:**

15    Objection.  This interrogatory seeks premature expert discovery.  (See Civ. Proc. Code §

16    2034.210 [providing method for simultaneous and mutual demand of expert witness

17    information].)  This interrogatory also seeks information that is protected by the attorney work-

18    product and attorney-client privileges.

19    Based on these objections, the People does not respond to this request.

20    **INTERROGATORY NO. 33:**

21    If YOU COMMUNICATED with third-party PERSONS regarding the validity of APR or the

22    2018 DELGADO STUDY, please state the name, address, and telephone number of each of the

23    PERSONS with whom you COMMUNICATED.

24    **RESPONSE TO INTERROGATORY NO. 33:**

25    Objection.  This interrogatory seeks premature expert discovery.  (See Civ. Proc. Code §

26    2034.210 [providing method for simultaneous and mutual demand of expert witness

27    information].)  This interrogatory also seeks information that is protected by the attorney work-

28    product and attorney-client privileges.  This interrogatory also seeks information protected by the

38

privacy privilege in the California Constitution.  This interrogatory is also vague and ambiguous, particularly as to the terms "third-party PERSONS" and "validity of APR."  This interrogatory is also compound and includes at least two different inquiries.  This interrogatory is also overly broad because it is not limited as to time period.

Subject to and without waiving the foregoing objections, the People interprets this interrogatory to ask about 1) the People's communications before filing its Complaint with any individual who was not, at the time of the communication, an employee or agent of the People with regard to the allegations in the Complaint, specifically the statements identified in the People's Complaint as false and misleading that are used in HBI and RO's advertisements and commercial speech for APR; and 2) the People's communications before filing its Complaint with any individual who was not, at the time of the communication, an employee or agent of the People with regard to 2018 Report.  Because HBI has already made 35 special interrogatories (34 express special interrogatories plus the additional interrogatory included in Interrogatory No. 12) and because HBI has not sought court approval for additional special interrogatories, the People responds only to one of these two different interrogatories, specifically:  the People's communications before filing its complaint with any individual who was not, at the time of the communication, an employee or agent of the People with regard to the allegations in the Complaint, specifically the statements identified in the People's Complaint as false and misleading that are used in HBI and RO's advertisements and commercial speech for APR.

In light of this interpretation and the ongoing discovery process, the People respond as follows:

Prior to filing its complaint, the People communicated with Kelly Dermody and Tiseme Zegeye at Lieff Cabraser Heimann & Bernstein and Ruch Desai, Aisha Rich, and Alexander Rose at Fairmark Law.  The contact information for these individuals is publicly available.

**INTERROGATORY NO. 34:**

If YOU contend that DEFENDANTS have no evidence to claim a 64-68% success rate for APR treatment within 72 hours of taking mifepristone, please explain why.

1    **RESPONSE TO INTERROGATORY NO. 34:**

2         Objection.  This interrogatory seeks premature expert discovery.  (See Civ. Proc. Code §

3    2034.210 [providing method for simultaneous and mutual demand of expert witness

4    information].)  This interrogatory also seeks information that is protected by the attorney work-

5    product and attorney-client privileges.

6         Subject to and without waiving these objections, and in light of the ongoing discovery

7    process, the People responds as follows:

8         See Response No. 1 and Response No. 7 Section A.3.

9

10

11

12   Dated:  November 26, 2024                    Respectfully submitted,

13                                                ROB BONTA
                                                  The People of California
14                                                KARLI EISENBERG
                                                  KATHLEEN BOERGERS
15                                                Supervising Deputy Attorneys General

16

17                                                */s/ Erica Connolly*
                                                  ERICA CONNOLLY
18                                                HAYLEY PENAN
                                                  LAUREN ZWEIER
19                                                Deputy Attorneys General

20                                                *Attorneys for the People of the*
                                                  *State of California*
21
     SA2023303807
22   67112267.docx

23

24

25

26

27

28

1                                  **VERIFICATION**

2         I am a Senior Legal Assistant employed by the California Department of Justice, Office of

3 the Attorney General, through which the People of the State of California ("the People") has filed

4 this suit, and I am authorized to make this verification on behalf of the People.  I have read the

5 foregoing Plaintiff the People of the State of California's Responses to Defendant Heartbeat

6 International, Inc.'s Special Interrogatories, Set One and know its contents.  I am informed and

7 believe that the matters stated therein are true and on that ground certify or declare under penalty

8 of perjury under the laws of the State of California that the same are true and correct.

9

10         Executed on      11/22/2024             , in Sacramento, California.

11

12                                    *Wendy Harrison*

13                                    Wendy Harrison

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF SERVICE BY E-MAIL and U.S. MAIL

Case Name:   **People v. Heartbeat Int'l, Inc., et al.**
No.:            **23CV044940**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service with postage thereon fully prepaid that same day in the ordinary course of business.

On November 26, 2024, I served the attached **PLAINTIFF THE PEOPLE OF THE STATE OF CALIFORNIA'S RESPONSES TO DEFENDANT HEARTBEAT INTERNATIONAL, INC.'S SPECIAL INTERROGATORIES (SET ONE)** by transmitting a true copy via electronic mail. In addition, I placed a true copy thereof enclosed in a sealed envelope, in the internal mail system of the Office of the Attorney General, addressed as follows:

Paul Jonna
Jeff Trissell
LiMandri & Jonna LLP
P.O. Box 9120
Rancho Santa Fe, CA 92067
pjonna@limandri.com
jtrissell@limandri.com
*Attorneys for Heartbeat International & RealOptions*

Andrew Hollins
Ethan Reimers
650 Town Center Dr., Suite 700
Costa Mesa, CA 92626
ahollins@messner.com
ereimers@messner.com
*Attorneys for RealOptions*

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on November 26, 2024, at Los Angeles, California.

| Cheryll Tran | *CHERYLL TRAN* |
|---|---|
| Declarant | Signature |

SA2023303807